# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SERVAAS INCORPORATED,      )
      )
      Plaintiff,      )      **Case No. 09 CV 1862 (RWS)**
      )
      v.      )
      )
REPUBLIC OF IRAQ and      )
MINISTRY OF INDUSTRY OF THE      )
REPUBLIC OF IRAQ,      )
      )
      Defendants.      )
_____)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE REPUBLIC OF IRAQ MOTION TO DISMISS COMPLAINT

---

**MAGGS & McDERMOTT LLC**

Timothy B. Mills (TM-8693)
910 17th Street N.W., Suite 800
Washington, D.C. 20006
 (202) 457-8090 Telephone
 (202) 478-5081 Facsimile
*Lead Counsel for Defendant Republic of Iraq*
*(Pending Admission Pro Hac Vice Upon Filing of Pro Hac Vice Motion)*

**LAW OFFICES OF STEPHEN ALBRIGHT**

Stephen Albright (SA-4979)
368 Veterans Memorial Highway, 2nd Floor
Commack, New York 11725
 (631) 864-4967 Telephone
 (631) 864-4972 Facsimile
*Co-Counsel for Defendant Republic of Iraq*

3 August 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………… iv

I.      PRELIMINARY STATEMENT...…………………………………  1

        Summary of Grounds for Dismissal…..………………………….  1

        1.      Absence of Foreign Sovereign Immunities Act
                Subject Matter and In Personam Jurisdiction Over Each
                Iraqi Sovereign Defendant (Fed.R.Civ.P. 12(b)(1)-(2))..………  1

        2.      Absence of Legally Cognizable Claim to Enforce
                Against Iraq the French Court Money Judgment
                Entered Solely Against the Ministry of Trade in an
                Action Relating to An Arbitration to Which Iraq Was
                Not a Party (Fed.R.Civ.P. 12(b)(6)) ...…………………………  2

        3.      Absence of Subject Matter and *In Personam* Jurisdiction
                Over Iraqi Sovereign Defendants: Failure of the Complaint
                To Plead Legally-Sufficient Fact to Establish a Prima Facie
                Claim of Jurisdiction under the FSIA "Commercial Activities
                Exception to Foreign Sovereign Immunity
                (Fed.R.Civ.P. 12(b)(1)-(2)) ...……………………………………  3

        4.      Iraqi Assets in the United States Covered by U.N. Security
                Council Resolution and Executive Order 13364 Are
                Immune Against Any Attachment, Judgment, Decree, Lien
                Execution, Garnishment or Other Judicial Process of a U.S.
                Court.  Thus, the Complaint Fails to State a Claim Upon
                Which Relief May be Granted as to Such Iraqi Assets
                (Fed.R.Civ.P. 12(b)(6)) ...…………………………………..  4

        5.      To the Extent the Complaint Seeks Attachment or Execution
                Against Assets of the Iraqi Sovereign Defendants that Are
                Immune from Attachment or Execution Under FSIA
                §§ 1610 and 1611, the Complaint Must Be Dismissed for
                Failure to State a Claim Upon Which Relief May Be Granted
                (Fed.R.Civ.P. 12(b)(6)) ...…………………………………..  5

II.     APPLICABLE LAW...…………………………………… ……………  6

      A.      Motion to Dismiss for Lack of Subject Matter and
              *In Personam* Jurisdiction Under FSIA
              (Fed. R. Civ. P. 12(b)(1)-(2)) ...……………………………………… 6

      B.      Motion to Dismiss for Failure to State a Claim Upon
              Which Relief May be Granted
              (Fed. R. Civ. P. 12(b)(6)) ...……………………………………….. 8

III.     ARGUMENT...……………………………………… ……………………… 9

A.     The Court Lacks Subject Matter and *In Personam* Jurisdiction
       Over the Iraqi Sovereign Defendants Because Neither
       Defendant Has Waived Sovereign Immunity as to Any
       Action in Any U.S. Court...……………………………………… ………… 9

      1.      No Diversity of Jurisdiction Exists Over the Iraqi
              Sovereign Defendants...……………………………………….. 9

      2.      No Subject Matter or Personal Jurisdiction Exists
              Under the FSIA as to Any Iraqi Sovereign Defendant;
              Neither Iraqi Sovereign Defendant Has Waived
              Sovereign Immunity as to Any Action that Might Be
              Brought by Plaintiff Servaas in a U.S. Court...…………………… 9

B.     No Legally Cognizable Claim Exists Against Iraq as to
       Enforcement of the French Money Judgment Entered
       Against the Ministry of Industry; Iraq Was Not a Party
       to Either the Arbitration, the Legal Action Against the
       Ministry of Industry, or the Money Judgment Entered
       Against the Ministry of Industry...……………………………………… 15

C.     The Complaint Fails to Plead Legally-Sufficient Facts to
       Establish a Prima Facie Claim to FSIA Subject Matter and
       Personal Jurisdiction Over Any Iraqi Sovereign Defendants
       Under the "Commercial Activities" Exception to
       Foreign Sovereign Immunity...……………………………………… 16

D.     Iraqi Assets in the United States Are Immunized Against
       Attachment and Execution by U.N. Security Council
       Resolutions and by Executive Order 13364 that Prohibits and
       Makes Void Any U.S. Court Attachment, Judgment, Decree,
       Lien, Execution, Garnishment or Other Judicial Process
       Against Such Assets; Thus, the Complaint Must Be Dismissed
       for Failure to State a Claim Upon Which Relief May
       be Granted...……………………………………… ………………………… 16

E.      To the Extent the Complaint Seeks Attachment or Execution
Against Assets of the Iraqi Sovereign Defendants That Are
Immune from Attachment or Execution under
FSIA §§ 1610 AND 1611, the Complaint Must Be Dismissed
for Failure to State a Claim Upon Which Relief
May be Granted...………………………………… …………………… 22

IV.     CONCLUSION...………………………………… …………………… 23

Exhibits:

1.      United Nations Commission on International Trade, Status,
1958 – Convention on the Recognition and Enforcement of
Arbitral Awards

2.      U.N. Security Council Resolution 1483 (2003)

3.      Executive Order 13303, "Protecting the Development Fund for Iraq and Certain
Property in Which Iraq Has an Interest", 68 Fed. Reg. 31931-2
(May 29, 2003)

4.      Executive Order 13364 of 29 November 2004, "Modifying the
Protection Granted to the Development Fund for Iraq and Certain
Property in Which Iraq Has an Interest and Protecting the
Central Bank of Iraq", 69 Fed. Reg. 70177-8 (November 29, 2004)

5.      Presidential Notice of May 20, 2008—Continuation of the
National Emergency with Respect to the Stabilization of Iraq",
73 Fed. Reg. 26983-4 (May 21, 2008)

6.      U.N. Security Council Resolution 1859 (2008)

7.      Presidential Notice "Continuation of the National Emergency
with Respect to the Stabilization of Iraq,"
74 Fed. Reg. 23935 (May 21, 2009)

**TABLE OF AUTHORITIES**

**CASES:**                                                                                    Page

*Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995) ………     8

*Coleman v. Alcolac, Inc.* 888 F. Supp. 1388 (S.D. Tex. 1995) …………………     7

*APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003) ……………………. ………     6

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)……………………. …………..     3

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557  (2007)……………….……     3

*Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) ….     8

*Cabiri v. Government of the Republic of Ghana,*
165 F.3d 193, 196 (2d Cir.1999) ………………….……………………….……….     7

*Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) ………………….……… 8

*Chios Charm Shipping Co. v. Rionda,* 93 Civ. 6313 (SS),
1994 WL 132141, at *3 (S.D.N.Y.) ………………….……………….…………….     13, 15

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) ………………….………………… 8

*Gibbons v. Udaras na Gaeltachta,* 549 F. Supp. 1094, S(.D.N.Y. 1982) ……….     8

*Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir.1991) …….     13, 15

*Maritime Ventures Int'l Inc. v. Carribean Trading & Fidelity Ltd.,*
689 F.Supp. 1340, 1351 (S.D.N.Y., 1988) ………………….…………………….     11, 12

*Mills v. Polar Molecule Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993) …………….. 8

*Rein v. Socialist People's Libyan Arab Jamahiriya,*
995 F. Supp. 325 (E.D.N.Y. 1988) ………………….…………………….………     7

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,*
235 F.3d 738, 48 Fed. R. Serv. 3d 382 (2d Cir. 2000) …………………………. 7

*Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 611 (1992) …………….. 7, 9

*Ryder v. Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,*
748 F.2d 774, 779 (2d Cir. 1984) ……………….…………………….…………     8

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,*
*Kommanditgesellschaft v. Navimpex*, 989 F.2d 572, 576 (2d Cir. 1993) ............ 10, 12
13

*Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991) .............. 11

*Southway v. Central Bank of Nigeria*, 994 F. Supp. 1299 (D. Colo. 1998) .......... 8

*United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170 (1984) ........…....... 16

*Verlindin B.V. v. Central Bank of Nigeria,*, 488 F.Supp, 1284, 1302
(S.D.N.Y. 1980) ...…...........................................….......................... 11

*Virtual Countries, Inc. v. Republic of South Africa,*
300 F.3d 230, 236 (2d Cir. 2002) .................................…............... 7, 9

## STATUTES:

22 U.S.C. § 287c a).….......................................................... 4, 16
28 U.S.C. § 1330......…......................................................... 7
28 U.S.C. § 1332......…......................................................... 9
28 U.S.C. § 1601 *et seq.* .......…............................................ 1
28 U.S.C. § 1603(a) .......…................................................... 7
28 U.S.C. § 1604......…......................................................... 7, 9
28 U.S.C. § 1605......…......................................................... 7, 9
28 U.S.C. § 1605(a)(1) ......…................................................. 11
U.S.C. § 1607......…............................................................ 7, 9
28 U.S.C. § 1610......…......................................................... 5, 6, 22
28 U.S.C. § 1611......…......................................................... 5, 6, 22
50 U.S.C. 1622(d) ......…....................................................... 21
50 U.S.C. §§ 1701-1706......…................................................ 4, 16,
18

## RULES:

Federal Rule of Civil Procedure 8(a)(2) ......….............................. 3
Federal Rule of Civil Procedure 12(b) ......…................................. 9
Federal Rule of Civil Procedure 12(b)(1) ......…............................. 1, 2, 3,
4, 6, 16
Federal Rule of Civil Procedure 12(b)(2) ......…............................. 1, 2, 3,
4, 6, 16
Federal Rule of Civil Procedure 12(b)(6) ......…............................. 1, 2, 3,
4, 5, 6,
8, 15,
22

## TREATIES AND INTERNATIONAL CONVENTIONS

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958…………..…………. ………….……….……….………. .…………..…….. 10, 12

United Nations Commission on International Trade, Status, 1958 – Convention on the Recognition and Enforcement of Arbitral Awards….. 10

## UNITED NATIONS RESOLUTIONS

United Nations Security Council Resolution 1143 (1997) …………………….. 17, 18, 20

United Nations Security Council Resolution 1859 (2008) …………………….. 20, 21

## TREATISES OF LAW

Restatement (Second) of Judgments § 29 ……………….……….…………… 15

## ADMINISTRATIVE MATERIALS

E.O. 13303 (22 May 2003) ……… .………. .……………………..… .… .… 18, 21
E.O. 13315 (28 August 2003) …… .………. .……………………..… .… .… 19
E.O. 13350 (29 July 2004) ……… .………. .……………………..… .… .… 19, 21
E.O. 13364 (29 November 2004) ……… .………. .………………….… .… 4, 5, 17 19, 20, 21, 22
E.O. 13438 (17 July 2007) ………………………………………….……….… 19, 21
Presidential Notice of May 20, 2008 …………………….……………………… 20
Presidential Notice of May 19, 2009 …………………….……………………… 21

## I.	PRELIMINARY STATEMENT

Plaintiff Servaas Incorporated's ("Servaas") asks this Court to enter a federal court money judgment against both the Ministry of Industry of the Republic of Iraq, a political subdivision of the foreign sovereign Republic of Iraq ("Ministry of Industry") *and* against the foreign sovereign Republic of Iraq itself ("Iraq") (collectively, the "Iraqi Sovereign Defendants").

For the reasons summarized in this preliminary statement and fully established below, the Complaint should be dismissed with prejudice: (i) pursuant to Federal Rule of Civil Procedure (Fed.R.Civ.P.) 12(b)(1) and (2) for want of subject matter and *in personam* jurisdiction under the U.S. Foreign Sovereign Immunities Act, 28 U.S.C. 1601 et seq., over any Iraqi Sovereign Defendant; and (ii) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.	Summary of Grounds for Dismissal

The Court should dismiss the Complaint with prejudice for each and all of the following five separate and independent grounds.

### 1.	ABSENCE OF FOREIGN SOVEREIGN IMMUNITIES ACT SUBJECT MATTER AND IN PERSONAM JURISDICTION OVER EACH IRAQI SOVEREIGN DEFENDANT (Fed.R.Civ.P. 12(b)(1)-(2))

This Complaint in this action implicates a critically important – but well settled – issue under the U.S. Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1601 *et seq.*, under the undisputed facts of this case stated in the Complaint, no United States court possesses *either* subject matter or *in personam* jurisdiction over the Ministry of Industry of the Republic of Iraq ("Ministry of Industry") (a political subdivision of a foreign sovereign Republic of Iraq ("Iraq")) (the Ministry of Industry and Iraq collectively

referred to hereinafter as "Iraqi Sovereign Defendants") because neither Iraqi Sovereign

Defendant comes within any FSIA exception to foreign sovereign immunity.

Accordingly, on that ground alone the Complaint must be dismissed with prejudice as to

each Iraqi Sovereign Defendant. Federal Rule of Civil Procedure (Fed.R.Civ.P.) 12(b)(1)

and (2).

> **2. ABSENCE OF LEGALLY-RECOGNIZABLE CLAIM TO ENFORCEMENT AGAINST THE REPUBLIC OF IRAQ OF A FOREIGN MONEY JUDGMENT ENTERED IN AN ACTION AGAINST THE MINISTRY OF INDUSTRY TO WHICH IRAQ WAS NOT A PARTY (Fed.R.Civ.P. 12(b)(6))**

Without waiving any foreign sovereign immunities/jurisdictional defenses, Iraq

moves to dismiss the Complaint on a ground that is critically weighty for Iraq – and

presumably also for other foreign sovereigns: the Complaint asks this Court to recognize

and enforce a foreign money judgment against Iraq – wholly separate and aside from

plaintiff's claim for recognition and enforcement of the French court money judgment

existing *only* against the Ministry of Industry – even through there exists *no* foreign

money judgment against Iraq. As the Complaint itself states and thereby indisputably

establishes, *only* the Ministry of Industry – and *not* Iraq nor any other political

subdivision, agency or instrumentality of Iraq – was: (1) the *sole and exclusive* Iraqi party

to the contract, (2) the *sole and exclusive* Iraqi party to the arbitration proceeding for

breach of contract brought by Servaas before the International Chamber of Commerce

(ICC) in Paris France in accordance with the arbitration clause of the contract; (3) the

*sole and exclusive* Iraqi party to the French court proceeding initiated by Servaas arising

from the arbitration by which Servaas obtained a provisional money judgment and French

court seizure order against only the Ministry of Industry; and (4) the *sole and exclusive*

Iraqi party to the subsequent French court proceedings by which the Ministry of Industry, in its own name and of its own right, sought to overturn the previous French court rulings against the Ministry of Industry and return the case to arbitration before the ICC. Simply stated, because there exists no French court judgment against Iraq, the Complaint fails to state any claim upon which this Court can grant any relief against Iraq. Accordingly, the Complaint must be dismissed with prejudice as to Iraq, and without leave to amend. Fed.R.Civ.P. 12(b)(6).

> **3.      ABSENCE OF SUBJECT MATTER AND IN PERSONAM JURISDICTION OVER IRAQI SOVEREIGN DEFENDANTS: FAILURE TO PLEAD LEGALLY-SUFFICIENT FACTS TO ESTABLISH PRIMA FACIE CLAIM OF FSIA "COMMERCIAL ACTIVITIES" EXCEPTION TO THE FOREIGN SOVEREIGN IMMUNITY OF EACH IRAQI SOVEREIGN DEFENDANT (Fed.R.Civ.P. 12(b)(1)-(2))**

As a third issue, Plaintiff Servaas attempts to plead around these irremediable fatal defects by making a threadbare, conclusory jurisdictional allegation that subject matter and *in personam* jurisdiction under the FSIA jurisdiction exists because "the judgment to be recognized and enforced was based upon Defendants' commercial activity which caused a direct effect in the United States." Complaint at ¶ 4. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Plaintiff's Complaint fails to meet these standards; the Complaint is insufficient under the pleading standards established the Supreme Court because the Complaint does nothing more than tender "'naked assertions' devoid of 'further factual enhancement'". *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The Complaint – read as a whole (including the numbered paragraphs, the pray

for relief or the French court judgments that are incorporated into the Complaint by reference) is devoid of such "factual enhancement", and, thus, fails to satisfies the *Twombly* and *Iqbal* requirement that plaintiff must make sufficient *factual allegations* to support a jurisdictional claim that the conduct of either or both Iraqi Sovereign Defendant(s) brings either or both Iraqi Sovereign Defendant(s) within the commercial activities exception to foreign sovereign immunity. Therefore, this action cannot go forward. The Complaint must be dismissed on this separate and independent ground. Fed.R.Civ.P. 12(b)(1) and (2).

This fatal defect is so clearly and convincingly evident that not more need be said about this, nor will be said, here or in the discussion and argument below.

**4.      IRAQI ASSETS IN THE UNITED STATES COVERED BY U.N. SECURITY COUNCIL RESOLUTIONS AND EXECUTIVE ORDER 13364 ARE IMMUNE AGAINST ANY ATTACHMENT, JUDGMENT, DECREE, LIEN, EXECUTION, GARNISHMENT OR OTHER JUDICIAL PROCESS.  ACCORDINGLY, AS TO ANY SUCH ASSETS, THE COMPLAINT MUST BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. (Fed.R.Civ.P. 12(b)(6))**

As a fourth and independent grounds for dismissal (and wholly separate and aside from applicable immunities provided to the Iraqi Sovereign Defendants under the FSIA), the Complaint fails to state a claim upon which relief can be based because plaintiff seeks to enforce the French judgment against assets of Iraq, its political subdivisions, agencies and instrumentalities in the United States that two Presidents of the United States, Presidents Bush and Obama, -- acting by the authority vested in the President by the Constitution, and the laws of the United States, including the United Nations Participation Act, as amended, 22 U.S.C. § 287c (UNPA), and the International Emergency Economic Powers Act (IEEPA), 50 United States Code §§ 1701-1706 –

provides immunity for Iraqi Assets covered by Executive Order 13364 of 29 November 2004, "Modifying the Protection Granted to the Development Fund for Iraq and Certain Property in Which Iraq Has an Interest and Protecting the Central Bank of Iraq", 69 Fed. Reg. 70177-8. Executive Order 13364 immunizes all such Iraqi assets "against any attachment, judgment, decree, lien, execution, garnishment or other judicial process" of any U.S. Court.

Thus, any "attachment, judgment, decree, lien, execution, garnishment, or other judicial process" involving any Iraqi assets covered by Executive Order 13364 of November 29, 2004 is prohibited and, if issued, shall be void as a matter of law. Accordingly, the Complaint fails to state a claim upon which relief may be granted as against such assets, and, therefore, pursuant to Fed.R.Civ.P. 12(b)(6), the Complaint must be dismissed with prejudice to the extent that plaintiff seeks a judgment against any Iraqi assets that come within the scope of E.O. 13364.

     **5.     TO THE EXTENT THE COMPLAINT SEEKS ATTACHMENT OR EXECUTION AGAINST ASSETS OF THE IRAQI SOVEREIGN DEFENDANTS THAT ARE IMMUNE FROM ATTACHMENT OR EXECUTION UNDER FOREIGN SOVEREIGN IMMUNITIES ACT §§ 1610 AND 1611, THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND THEREFORE MUST BE DISMISSED. (Fed.R.Civ.P. 12(b)(6))**

As a fifth and independent grounds for dismissal, the Complaint also fails to state a claim upon which relief may be granted, and must be dismissed, because the Complaint does not identify any assets of the Ministry of Industry or Iraq that are not immune under either FSIA §§ 1610 and 1611, 28 U.S.C. §§ 1610-1611.

FSIA § 1610 provides certain exceptions to immunity of the assets for a foreign sovereign from attachment or execution. FSIA § 1611 expressly provides that those

certain types of assets of a foreign sovereign identified in FSIA § 1611 are immune from attachment and from execution.

The Complaint does not identify any assets of any of the Iraqi Sovereign Defendants that are *not* immune under FSIA §§ 1610 and 1611. Accordingly, without waiving any jurisdictional defenses that exist under either the FSIA or otherwise, each of the Iraqi Sovereign Defendants invoke the immunities provided by FSIA §§ 1610 and 1611.

In light of Iraqi Sovereign Defendants' invocation of such immunities, the Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted as to all such immune assets.

## II. APPLICABLE LAW

The following standards of review and rules of decision apply to the Court's determination of Republic of Iraq's motion to dismiss, and, in the alternative, for summary judgment.

### A. Motion to Dismiss for Lack of Subject Matter and *In Personam* Jurisdiction Under FSIA (Fed. R. Civ. P. 12(b)(1)-(2))

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). And, a case is properly dismissed for lack of *in personam* jurisdiction under Rule 12(b)(2).

A district court may refer to evidence outside the pleadings in resolving a Rule 12(b)(1) motion. *Id.* The party asserting jurisdiction has the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists," and that showing "is not made by drawing from the pleadings inferences favorable to [that party]." *APWU*

*v. Potter,* 343 F.3d 619, 623 (2d Cir.2003) (internal citations and quotation marks omitted).

The FSIA ... provides the sole basis for obtaining [subject matter] jurisdiction over a foreign sovereign in the United States." *Virtual Countries, Inc. v. Republic of South Africa,* 300 F.3d 230, 236 (2d Cir.2002) (alterations in original) (quoting *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 611, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)).  Under the FSIA, a foreign state is immune from the jurisdiction of the courts of the United States except as provided in 28 U.S.C. §§ 1605 to 1607. 28 U.S.C.A. § 1604 (West 1994). "Once the [party against which claims or counterclaims are asserted] presents a prima facie case that it is a foreign sovereign, the [party asserting the claims] has the burden of going forward with evidence showing that, under [the statutory] exceptions to the FSIA, immunity should not be granted[.]" *Cabiri v. Government of the Republic of Ghana,* 165 F.3d 193, 196 (2d Cir.1999).

Section 1330(a) of Title 28 provides that federal district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

It is also well settled that personal jurisdiction under the FSIA equals subject matter jurisdiction plus a valid service of process. *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,* 235 F.3d 738, 48 Fed. R. Serv. 3d 382 (2d Cir. 2000); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1988), *aff'd in part, dismissed in part on other grounds*, 162 F.3d 748 (2d Cir. 1998); *Coleman v.*

*Alcolac, Inc.* 888 F. Supp. 1388 (S.D. Tex. 1995). Thus under the FSIA, personal jurisdiction over a foreign sovereign defendant hinges not on the foreign state's contact with the United States but rather on whether the court has subject matter jurisdiction over the claim. *Southway v. Central Bank of Nigeria*, 994 F. Supp. 1299 (D. Colo. 1998), *aff'd and remanded*, 198 F.23d 1210 (10th Cir. 1999); *Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094, S(.D.N.Y. 1982).

**B.** **Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted (Fed. R. Civ. P. 12(b)(6))**

In deciding a Rule 12(b)(6) motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995); *Mills v. Polar Molecule Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Dismissal is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because a Rule 12(b)(6) motion is used to assess the legal feasibility of a complaint, a court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder v. Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). Rather, the court must limit its consideration to the facts that appear on the face of the complaint. *Id.; Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

However, when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56, and all parties shall be given reasonable opportunity to

present all material made pertinent to such a motion by Rule 56. *See* Fed. R. Civ. P. 12(b).

**III.    ARGUMENT**

**A.    The Court Lacks Subject Matter and *In Personam* Jurisdiction Over the Iraqi Sovereign Defendants Because Neither Defendant Has Waived Sovereign Immunity as to Any Action in Any U.S. Court**

**1.    NO DIVERSITY JURISDICTION EXISTS OVER THE IRAQI SOVEREIGN DEFENDANTS**

Plaintiff erroneously alleges that the Court "has original jurisdiction over the subject matter of this action "pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs." The Court should summarily dispose of plaintiff's invitation to clear error. 28 U.S.C. § 1332 provides no basis for jurisdiction for a U.S. court to exercise any jurisdiction over a foreign sovereign. As noted above:

> The FSIA ... provides the sole basis for obtaining [subject matter] jurisdiction over a foreign sovereign in the United States." *Virtual Countries, Inc. v. Republic of South Africa,* 300 F.3d 230, 236 (2d Cir.2002) (alterations in original) (quoting *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 611, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)). Under the FSIA, a foreign state is immune from the jurisdiction of the courts of the United States except as provided in 28 U.S.C. §§ 1605 to 1607. 28 U.S.C.A. § 1604 (West 1994).

**2.    NO SUBJECT MATTER OR PERSONAL JURISDICTION EXISTS UNDER THE FSIA AS TO ANY IRAQI SOVEREIGN DEFENDANT; NEITHER IRAQI SOVEREIGN DEFENDANT HAS WAIVED SOVEREIGN IMMUNITY AS TO ANY ACTION THAT MIGHT BE BROUGHT IN A U.S. COURT BY PLAINTIFF SERVAAS**

Plaintiff Servaas' claim of Federal court FSIA jurisdiction over the Iraqi Sovereign Defendants is belied by the following judicial admissions in the Complaint, facts set forth in this Memorandum of Law of which the Court properly may take judicial notice, and well-established principles of law:

● On or about 8 August 1989, the Ministry of Industry entered into a defense/military and/or commercial contract with Servaas, but did so *only* in its own name, and on its own behalf, and *not* in the name of or on behalf of Iraq or any other political subdivision, agency or instrumentality of Iraq (hereinafter, the "Contract"). *See* Complaint Exhibit 1 (Paris Commercial Court Summary Order as of April 16, 1991) and Exhibit 2 (English translation, Paris Commercial Court Summary Order as of April 16, 1991, p.2).

● On the date that Servaas and the Ministry of Industry entered into contract (and continuing through the present) it was known by the Government of Iraq (and such knowledge thus includes the knowledge of the political subdivisions of Iraq, inclusive of the Ministry of Industry) that: (a) Iraq was not then and is not now a Contracting Party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "New York Convention"); and (b) the United States is a Contracting Party to the New York Convention. *See* United Nations Commission on International Trade, Status, 1958 – Convention on the Recognition and Enforcement of Arbitral Awards (appended as Exhibit 1 to this Memorandum) (found at and reprinted from: http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html).

● Thus, in light of Iraq's status as a foreign sovereign not a Contracting Party to the New York Convention, it follows as a matter of law that the Ministry of Industry, by agreeing to an arbitration provision in the Contract that provides for arbitration of disputes before the International Chamber of Commerce, Paris, France ("ICC"), did *not* waive the foreign sovereign immunity of the Ministry of Industry as to any legal actions or claims conceivably could be brought in any United States court

arising from the contract (inclusive of any claim to enforce an ICC arbitration award or any French court judgment arising out of or relating to arbitration claims made by Servaas. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex*, 989 F.2d 572, 576 (2d Cir. 1993) (FSIA applies; a foreign sovereign and its political subdivisions, agencies and instrumentalities enjoy sovereign immunity unless conduct falls within one of the statutory exceptions to sovereign immunity; federal courts have been virtually unanimous in holding that the implied waiver provision of [FSIA] Section 1605(a)(1) must be construed narrowly." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991) (citations omitted); "courts within this [2d] Circuit have noted that if the language of the legislative history was applied literally, a foreign government would be subject to the United States's jurisdiction simply because it agreed to have the contract governed by another country's laws, or agreed to arbitrate in a country other than itself, even though the agreement made no reference to the United States. Such an interpretation of § 1605(a)(1)'s "implicit waiver" exception would vastly increase the jurisdiction of the federal courts over matters involving sensitive foreign relations. *Seetransport*, 989 F.2d 577, *citing Maritime Ventures Int'l Inc. v. Carribean Trading & Fidelity Ltd.*, 689 F.Supp. 1340, 1351 (S.D.N.Y., 1988); *Verlindin B.V. v. Central Bank of Nigeria*,, 488 F.Supp, 1284, 1302 (S.D.N.Y. 1980) (Weinfeld, J., *aff'd on other grounds*, 647 F.2d 320 (2d Cir. 1981), rev'd 461 U.S. 480, 103 S.Ct. 1962 (1983);  consequently, courts within this [2d] Circuit have concluded that sovereign immunity is not waived in the courts of this country simply because a sovereign entered into a contract that named a third country for arbitration or designated the laws of a third nation to govern the interpretation of the contract. *See, e.g.,*

*Maritime Ventures Int'l Inc.*, 689 F.Supp. at 1351; *Verlindin*, 488 F.Supp. at 1300-02; unlike the Ministry of Industry and Iraq, a foreign sovereign that has become a Contracting State to the New York Convention has waived sovereign immunity for itself, its political subdivisions, agencies and instrumentalities for enforcement in U.S. courts of foreign arbitral awards and judgments of foreign courts arising out of claims brought to the ICC for arbitration, *see Seetransport*, 989 F.2d 578. Thus, the reverse applies as well: as a consequence of Iraq not being a Contracting Party to the 1958 New York Convention, neither the Ministry of Industry of Iraq has waived such sovereign immunity).

- As the *sole* Iraqi party to the Contract, *only* the Ministry of Industry (and *not* Iraq or any other political subdivision, agency or instrumentality of Iraq) agreed to the arbitration provision of the Contract (the "Arbitration Provision") providing that any Servaas contract-related claims must be brought to arbitration before the ICC. *See* Complaint Exhibit 1 (Paris Commercial Court Summary Order as of April 16, 1991) and Exhibit 2 (English translation, Paris Commercial Court Summary Order as of April 16, 1991, p.2).

- As a matter of international law, the Arbitration Provision constituted *strictly and only* a *limited* waiver of *only* the Ministry of Industry's sovereign immunity, and then *only* to the following scope and effect:

(a)     *Only* the Ministry of Industry is not immune from contract-related claims made by Servaas if those claims are presented by Servaas to the ICC pursuant to the Arbitration Provision (a non-party cannot be bound by an arbitration award unless it clearly and unambiguously demonstrates an intent to arbitrate the submitted dispute. *see*

*Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir.1991); *Chios Charm Shipping Co. V. Rionda*, 93 Civ. 6313(SS), 1994 WL 132141, at *3 (S.D.N.Y.1994).

(b)     The Ministry of Industry is subject to judicial proceedings brought by Servaas *in France only*, but only to the extent that such French judicial proceedings arising from the rights accorded by the Arbitration Clause – inclusive of the right of a French court to award and assist in the recovery of money arising from an arbitration claim made by Servaas pursuant to the arbitration clause of the contract, *as to France only*. *See Seetransport* 989 F.2d 576, 578 and authorities cited above in relation thereto.

(c)     The Ministry of Industry's waiver of sovereign immunity through the Arbitration Clause does not constitute either an express or implied waiver of the Ministry of Industry's sovereign immunity, or the sovereign immunity of Iraq or any other political subdivision, agency or instrumentality of Iraq, as to any legal actions whatsoever that Servaas might bring in U.S. courts to assist or aid in the enforcement of an ICC arbitration award or a French court money judgment against the Ministry of Industry arising out of an arbitration claim. *See Seetransport* 989 F.2d 576, 578 and authorities cited above in relation thereto.

●     Following the former Saddam Regime's invasion of Kuwait, Servaas terminated the Contract by notice made to the Ministry of Industry and made demand to the Ministry of Industry under the provisions of the Contract (which was acknowledged by the Ministry of Industry) for payment of the termination amount of $14,152,800. Servaas subsequently alleged that the Ministry of Industry (the *sole* Iraqi party to the Contract) breached the contract by failing to make payments that Servaas asserted came due under the Contract. *See* Complaint Exhibit 1 (Paris Commercial Court Summary

Order as of April 16, 1991) and Complaint Exhibit 2 (English translation, Paris Commercial Court Summary Order as of April 16, 1991, pp.3-4).

●     Servaas commenced arbitration before the International Chamber of Commerce ("ICC") in Paris, France, pursuant to the Arbitration Provision, only against the Ministry of Industry, as the sole party to the contract, pursuant to Arbitration Provision. *See* Complaint Exhibit 1 (Paris Commercial Court Summary Order as of April 16, 1991) and Complaint Exhibit 2 (English translation, Paris Commercial Court Summary Order as of April 16, 1991, pp. 1-4).

●     When the Ministry of Industry failed to name an arbitrator within the time required by the ICC rules of arbitration, Servaas commenced a French court action in the Paris Commercial Court seeking a provisional money judgment and enforcement order *only against* the Ministry of Industry, in aid of arbitration and enforcement of the rights accorded by the Arbitration Provision. The Ministry of Industry did not appear in that action, explaining later that it was unable to do so owing to the aftermath of the first Gulf War. On 16 April 1991, the Paris Commercial Court entered a provisional money judgment in the amount of $14,152,800, and a "freezing order". *See* Complaint Exhibit 1 (Paris Commercial Court Summary Order as of April 16, 1991) and Complaint Exhibit 2 (English translation, Paris Commercial Court Summary Order as of April 16, 1991, pp. 1-6). ●     Subsequently, the Ministry of Industry – and *not* Iraq or any other political subdivision, agency or instrumentality of Iraq – took appeals to the Paris Commercial Court and the Paris Court of Appeals solely and exclusively in its own name and on its own behalf, and not in the name of Iraq or any other political subdivision, agency or instrumentality of Iraq. *See* Complaint Exhibits 3-6.

Under these facts and principles of international law, it is clear that neither the Ministry of Industry nor Iraq waived sovereign immunity as to any action that might be commenced in a U.S. Court.

In light of the foregoing, the Complaint must be dismissed with prejudice for absence of FSIA subject matter and personal jurisdiction.

**B.      No Legally Cognizable Claim Exists Against Iraq as to Enforcement of the French Money Judgment Entered Against the Ministry of Industry; Iraq Was Not a Party to Either the Arbitration, the Legal Action Against the Ministry of Industry, or the Money Judgment Entered Against the Ministry of Industry (Fed.R.Civ.P. 12(b)(6))**

As set forth above in the citations to the judicial admissions made by plaintiff in the Complain, Iraq: (1) was *not* a party to the contract; (2) was not a party to the ICC arbitration; and (3) was *not* a party to any of the French judicial actions; and (4) accordingly, was *not* a party to the French court judgment.

The law here is clear:  a non-party cannot be bound by an arbitration award unless it clearly and unambiguously demonstrates an intent to arbitrate the submitted dispute. *See Gvozdenovic v. United Air lines, Inc.*, 933 F.2d 1105; *Chios Charm Shipping v. Rionda*, 93 Civ. 6313 (SS), 1994 WL 132141, at *3 (S.D.N.Y 1994).   And: "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."  *Parklane Hosiery*, 439 U.S. 322, 327, n.7, 99 S.Ct. 645 (1979); Restatement (Second) of Judgments § 29 Reporter's Note ("The proposition that a non-party cannot be found by a judgment, unless he is represented by a party or has interests that are derivative from a party, is a rule of Constitutional law.").  And, while the Due Process Clause of the Fifth Amendment does not apply to the Ministry of Industry or Iraq, the procedural protections

afforded to private parties in the *res judicata* and collateral estoppel context certainly

would apply to a government.  *See United States v. Stauffer Chem. Co.*, 464 U.S. 165,

170 (1984).

Accordingly the Complaint against Iraq must be dismissed.

**C.      The Complaint Fails to Plead Legally-Sufficient Facts to Establish a Prima
Facie Claim to Subject Matter and Personal Jurisdiction Over the Iraqi
Sovereign Defendants Under the FSIA "Commercial Activities" Exception to
Foreign Sovereign Immunity (Fed.R.Civ.P. 12(b)(1)-(2))**

As fully covered in the summary of grounds for dismiss in Section I, *infra*, no

more need be said: the Complaint is fatally defective on this ground, and, therefore, must

be dismissed in its entirety for want of FSIA subject matter and personal jurisdiction over

both Iraqi Sovereign Defendants.

**D.      Iraqi Assets in the United States Are Immunized Against Attachment and
Execution by U.N. Security Council Resolutions and by Executive Order
13364 that Prohibits and Makes Void Any U.S. Court Attachment,
Judgment, Decree, Lien, Execution, Garnishment or Other Judicial Process
Against Such Assets.  Thus, the Complaint Must Be Dismissed for Failure to
State a Claim Upon Which Relief May be Granted. (Fed.R.Civ.P. 12(b)(6))**

As a fourth and independent grounds for dismissal (and wholly separate and aside

from applicable immunities provided to the Iraqi Sovereign Defendants under the FSIA),

the Complaint fails to state a claim upon which relief can be based because plaintiff seeks

to enforce the French judgment against assets of Iraq, its political subdivisions, agencies

and instrumentalities in the United States that two Presidents of the United States,

Presidents Bush and Obama, -- acting by the authority vested in the President by the

Constitution, and the laws of the United States, including the United Nations

Participation Act, as amended, 22 U.S.C. § 287c (UNPA), and the International

Emergency Economic Powers Act (IEEPA), 50 United States Code §§ 1701-1706 –

provides immunity for Iraqi Assets covered by Executive Order 13364 against any attachment, judgment, decree, lien, execution, garnishment or other judicial process of any U.S. Court.  protection against attachment and execution for Iraqi assets that plaintiff seeks to execute against pursuant to the judgment that plaintiff has requested from this court.

On May 22, 2003, at the instigation of members United States and the United Kingdom, the U.N. Security Council passed UN Security Council Resolution 1483, (S/RES 1483 (2003) to, among other things, provide protections and immunities throughout the world for Iraqi assets, as follows:

> The Security Council, . . . *[a]cting* under Chapter VII of the Charter of the United Nations,
>
> \*       \*       \*
>
> 20.     *Decides* that all export sales of petroleum, petroleum products, and natural gas from Iraq following the date of the adoption of this resolution shall be made consistent with prevailing international market best practices, to be audited by independent public accountants reporting to the International Advisory and Monitoring Board referred to in paragraph 12 above in order to ensure transparency, and *decides further* that, except as provided in paragraph 21 below, all proceeds from such sales shall be deposited into the Development Fund for Iraq until such time as an internationally recognized, representative government of Iraq is properly constituted;
>
> \*       \*       \*
>
> 22.     *Noting* the relevance of the establishment of an internationally recognized, representative government of Iraq and the desirability of prompt completion of the restructuring of Iraq's debt as referred to in paragraph 15 above, **further *decides* that, until December 31, 2007,** unless the Council decides otherwise, **petroleum, petroleum products, and natural gas originating in Iraq shall be immune, until title passes to the initial purchaser from legal proceedings against them and not be subject to any form of attachment, garnishment, or execution, and that all States shall take any steps that may be necessary under their respective domestic legal systems to assure this protection, and that proceeds and obligations arising from sales thereof, as well as the Development Fund for Iraq, shall enjoy privileges and immunities equivalent to those enjoyed by the United Nations except that the abovementioned**

**privileges and immunities will not apply with respect to any legal proceeding in which recourse to such proceeds or obligations is necessary to satisfy liability for damages assessed in connection with an ecological accident, including an oil spill, that occurs after the date of adoption of this resolution;**

23.     *Decides* that all Member States in which there are:

(a)     funds or other financial assets or economic resources of the previous Government of Iraq or its state bodies, corporations, or agencies, located outside Iraq as of the date of this resolution, or

(b)     funds or other financial assets or economic resources that have been removed from Iraq, or acquired, by Saddam Hussein or other senior officials of the former Iraqi regime and their immediate family members, including entities owned or controlled, directly or indirectly, by them or by persons acting on their behalf or at their direction, shall freeze without delay those funds or other financial assets or economic resources and, unless these funds or other financial assets or economic resources are themselves the subject of a prior judicial, administrative, or arbitral lien or judgment, immediately shall cause their transfer to the Development Fund for Iraq, it being understood that, unless otherwise addressed, claims made by private individuals or non-government entities on those transferred funds or other financial assets may be presented to the internationally recognized, representative government of Iraq; and *decides further* that all such funds or other financial assets or economic resources shall enjoy the same privileges, immunities, and protections as provided under paragraph 22 . . ..

S/RES 1483 (2003) at ¶¶ 20, 22-23 (appended as Exhibit 2 to this Memorandum of Law).

Immediately thereafter on May 22, 2003, by Executive Order 13303, President Bush declared a national emergency protecting the Iraqi Assets International Emergency Economic Powers Act (50 U.S.C. 1701–1706) (IEEPA). The President took this action "to deal with the unusual and extraordinary threat to the national security and foreign policy of the United States posed by obstacles to the orderly reconstruction of Iraq, the restoration and maintenance of peace and security in the country, and the development of political, administrative, and economic institutions in Iraq." *See* E.O. 13303, "Protecting the Development Fund for Iraq and Certain Property in Which Iraq Has an Interest", 68 Fed. Reg. 31931-2 (May 29, 2003), appended as Exhibit 3 to this Memorandum of Law.

In Executive Order 13315 of August 28, 2003, Executive Order 13350 of July 29, 2004, Executive Order 13364 of November 29, 2004, Executive Order 13438 of July 17, 2007 President Bush modified the scope of the national emergency declared in Executive Order 13303 and amended the steps taken pursuant to it.

The President's Executive Order 13364 of 29 November 2004 provided protections for Iraqi Assets as follows:

> I find that the threat of attachment or other judicial process against the Central Bank of Iraq constitutes one of these obstacles. I further determine that, consistent with United Nations Security Council Resolutions 1483 of May 22, 2003, and 1546 of June 8, 2004, the steps taken in Executive Order 13303 to deal with the national emergency declared therein need to be limited so that such steps do not apply with respect to any final judgment arising out of a contractual obligation entered into by the Government of Iraq, including any agency or instrumentality thereof, after June 30, 2004, and so that, with respect to Iraqi petroleum and petroleum products and interests therein, such steps shall apply only until title passes to the initial purchaser.

> ''**Section 1.** (a) Except as provided in section 1(b) of this order, and unless licensed or otherwise authorized pursuant to this order, **any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is prohibited and shall be deemed null and void with respect to the following:**
> **(i)      the Development Fund for Iraq;**
> **(ii)     all Iraqi petroleum and petroleum products, and interests therein, but only until title passes to the initial purchaser, and proceeds, obligations, or any financial instruments of any nature whatsoever arising from or related to the sale or marketing thereof, and interests therein, in which any foreign country or a national thereof has any interest, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons; and**
> **(iii)    any accounts, assets, investments, or any other property of any kind owned by, belonging to, or held by the Central Bank of Iraq, or held, maintained, or otherwise controlled by any financial institution of any kind in the name of, on behalf of, or otherwise for the Central Bank of Iraq.**
> (b)      The prohibition in section 1(a) of this order shall not apply with respect to any final judgment arising out of a contractual obligation entered into by the Government of Iraq, including any agency or instrumentality thereof, after June 30, 2004.

Executive Order 13364 of 29 November 2004, "Modifying the Protection Granted to the Development Fund for Iraq and Certain Property in Which Iraq Has an Interest and Protecting the Central Bank of Iraq", 69 Fed. Reg. 70177-8 (appended as Exhibit 4 to this Memorandum of Law).

On May 18, 2008, the President determined that the obstacles to the orderly reconstruction of Iraq, the restoration and maintenance of peace and security in the country, and the development of political, administrative, and economic institutions in Iraq continue to pose an unusual and extraordinary threat to the national security and foreign policy of the United States and declared that the national emergency declared on May 22, 2003, and the measures adopted on that date, August 28, 2003, July 29, 2004, November 29, 2004, and July 17, 2007, to deal with that emergency must continue in effect beyond May 22, 2008, through May 21, 2009. *See* Presidential Notice of May 20, 2008—Continuation of the National Emergency with Respect to the Stabilization of Iraq", 73 Fed. Reg. 26983-4 (May 21, 2008) (appended as Exhibit 5 to this Memorandum of Law).

On December 22, 2008, UN Security Council adopted UN Security Council Resolution 1859 (S/RES/1859 (2008) that extended through December 21, 2009, the protections for Iraqi assets in the Development Fund for Iraq that previously were established by paragraph 20 of Security Council Resolution 1483 (2003):

> The Security Council, *[a]cting* under Chapter VII of the Charter of the United Nations,
>
> 1.      *Decides* to extend until 31 December 2009 the arrangements established in paragraph 20 of resolution 1483 (2003) for the depositing into the Development Fund for Iraq of proceeds from export sales of petroleum, petroleum products and natural gas and the arrangements referred to in paragraph 12 of resolution 1483 (2003) and paragraph 24 of resolution 1546 (2004) for the monitoring of the

Development Fund for Iraq by the International Advisory and Monitoring Board and further decides that, subject to the exception provided for in paragraph 27 of resolution 1546 (2004), <u>the provisions of paragraph 22 of resolution 1483 (2003) shall continue to apply until that date, including with respect to funds and financial assets and economic resources described in paragraph 23 of that resolution. . . .</u>

*See* S/RES 1859 (2008) at ¶ 1 (Appended as Exhibit 6 to this Memorandum of Law).

On May 19, 2009, President Obama issues a Presidential Notice "Continuation of the National Emergency with Respect to the Stabilization of Iraq" "continuing for 1 year the national emergency with respect to the stabilization of Iraq", through May 21, 2010, providing as follows:

On May 22, 2003, by Executive Order 13303, the President declared a national emergency protecting the Development Fund for Iraq and certain other property in which Iraq has an interest, pursuant to the International Emergency Economic Powers Act (50 U.S.C. 1701–1706). The President took this action to deal with the unusual and extraordinary threat to the national security and foreign policy of the United States posed by obstacles to the orderly reconstruction of Iraq, the restoration and maintenance of peace and security in the country, and the development of political, administrative, and economic institutions in Iraq.

In Executive Order 13315 of August 28, 2003, Executive Order 13350 of July 29, 2004, Executive Order 13364 of November 29, 2004, and Executive Order 13438 of July 17, 2007 [pertaining to blocked assets, and therefore not relevant to this action], the President modified the scope of the national emergency declared in Executive Order 13303 and amended the steps taken pursuant to it.

Because the obstacles to the orderly reconstruction of Iraq, the restoration and maintenance of peace and security in the country, and the development of political, administrative, and economic institutions in Iraq continue to pose an unusual and extraordinary threat to the national security and foreign policy of the United States, the national emergency declared on May 22, 2003, and the measures adopted on that date, August 28, 2003, July 29, 2004, November 29, 2004, and July 17, 2007, to deal with that emergency must continue in effect beyond May 22, 2009. Therefore, in accordance with section 202(d) of the National Emergencies Act (50 U.S.C. 1622(d)), I am continuing for 1 year the national emergency with respect to the stabilization of Iraq.

74 Fed. Reg. 23935 (May 21, 2009) (appended as Exhibit 7 to this Memorandum of Law).

Thus, any "attachment, judgment, decree, lien, execution, garnishment, or other judicial process" involving any Iraqi assets covered by Executive Order 13364 of November 29, 2004 is prohibited and, if issued, shall be void as a matter of law. Accordingly, the Complaint fails to state a claim upon which relief may be granted as against such assets, and, therefore, pursuant to Fed.R.Civ.P. 12(b)(6), the Complaint must be dismissed with prejudice to the extent that plaintiff seeks a judgment against any Iraqi assets that come within the scope of E.O. 13364.

**E. To the Extent the Complaint Seeks Attachment or Execution Against Assets of the Iraqi Sovereign Defendants That Are Immune from Attachment or Execution under FSIA §§ 1610 and 1611, the Complaint Must Be Dismissed for Failure to State a Claim Upon Which Relief May be Granted. (Fed.R.Civ.P. 12(b)(6))**

The sum and substance of this ground of dismissal has been sufficiently stated in the summary of grounds for dismissal at Section I of this Memorandum, *infra*. It bears repeating that to the extent that any assets of any of the Iraqi Sovereign Defendants are present in the U.S. (which has not been established), assets for which immunity exists under FSIA §§ 1610 and 1611 cannot be attached or executed upon by plaintiff.

Thus, to the extent that plaintiff claims through the Complaint any entitlement to attach or execute against such assets, the Complaint must be dismissed for failure to state a claim upon which relief may be granted.

## V.    CONCLUSION

The Iraqi Sovereign Defendants respectfully urge the Court to find and rule that,

for the foregoing reasons, the Complaint shall be dismissed with prejudice as to all Iraqi

Sovereign Defendants.

Dated: August 3, 2009


Respectfully submitted,

### MAGGS & McDERMOTT LLC

By:_____/s/_Timothy B. Mills_____
            Timothy B. Mills (TM-8693)
            910 17th Street N.W., Suite 800
            Washington, D.C. 20006
            (202) 457-8090 Telephone
            (202) 478-5081 Facsimile

*Lead Counsel for Defendants*
*the Ministry of Trade or the Republic of Iraq and*
*the Republic of Iraq*
*(Admission Pro Hac Vice Pending Presentation of*
*Pro Hac Vice Motion)*

### LAW OFFICES OF STEPHEN ALBRIGHT

By:_____/s/ Stephen Albright___
            Stephen Albright (SA-4979)
            368 Veterans Memorial Highway, 2nd Floor
            Commack, New York 11725
            (631) 864-4967 Telephone
            (631) 864-4972 Facsimile

*Co- Counsel for Defendants*
*the Ministry of Trade or the Republic of Iraq and*
*the Republic of Iraq*

**EXHIBIT 1**

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**United Nations Commission on International Trade, Status
1958 – Convention on the Recognition and Enforcement of Arbitral Awards**

**EXHIBIT 2**

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**U.N. Security Council Resolution 1483 (2003)**

**EXHIBIT 3**

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**Executive Order 13303**
**"Protecting the Development Fund for Iraq and Certain Property**
**in Which Iraq Has an Interest"**
**68 Fed. Reg. 31931-2 (May 29, 2003)**

<u>**EXHIBIT 4**</u>

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**Executive Order 13364 of 29 November 2004
"Modifying the Protection Granted to the Development Fund for Iraq and Certain
Property in Which Iraq Has an Interest and Protecting the Central Bank of Iraq"
69 Fed. Reg. 70177-8 (November 29, 2004)**

**EXHIBIT 5**

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**Presidential Notice of May 20, 2008**
**"Continuation of the National Emergency with Respect to the Stabilization of Iraq"**
**73 Fed. Reg. 26983-4 (May 21, 2008)**

**EXHIBIT 6**

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**U.N. Security Council Resolution 1859 (2008)**

**EXHIBIT 7**

**TO IRAQI SOVEREIGN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT:**

**Presidential Notice**
**"Continuation of the National Emergency with Respect to the Stabilization of Iraq,"**
**74 Fed. Reg. 23935 (May 21, 2009)**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August 2009, I electronically transmitted the attached documents:

> MEMORANDUM OF LAW IN SUPPORT OF
> DEFENDANTS REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY
> OF THE REPUBLIC OF IRAQ MOTION TO DISMISS COMPLAINT
>
> and Exhibits 1through 7 thereto

to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant counsel for plaintiff:

> John A. Piskora (JAP-1224)
> Loeb & Loeb
> 345 Park Avenue
> New York, NY 10154
> 212-407-4000
> Email: jpiskora@loeb.com

> /s/ Stephen Albright