UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
SERVAAS INCORPORATED,                                  :
                                                       :
                      Plaintiff,                       :
                                                       :   09 CV 1862
            v.                                         :
                                                       :
REPUBLIC OF IRAQ and MINISTRY OF                       :
INDUSTRY OF THE REPUBLIC OF IRAQ,                      :
                                                       :
                      Defendants.                      :
                                                       :
-------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW
### <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>


LOEB & LOEB LLP
John A. Piskora (JP-1224)
345 Park Avenue
New York, NY 10154
Main: (212) 407-4000
Fax: (212) 407-4990

*Attorneys for Plaintiff*
*SerVaas Incorporated*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS RELEVANT TO THE MOTION ....................................... 4

    A.    The Facts Set Forth In Plaintiff's Complaint and Attached Exhibits ................... 4

    B.    Additional Factual Showing Concerning Defendants' Commercial Acts ............ 7

ARGUMENT .................................................................................................................. 11

I.    This Court Has Subject Matter Jurisdiction Pursuant to the FSIA. ................... 11

    A.    The Complaint Adequately Alleges the "Commercial Activity" Exception to Foreign Sovereign Immunity ......................................... 12

    B.    The Evidence Submitted Establishes That the "Commercial Activity" Exception to Sovereign Immunity Is Applicable Here ....................... 16

II.    This Court Has Personal Jurisdiction Over Defendants Pursuant to the FSIA .............. 18

III.    SerVaas Has Stated a Claim for Recognition of a Foreign Judgment. ........................ 19

    A.    Applicable Standard on Motion to Dismiss Pursuant to Rule 12(b)(6) ............. 19

    B.    The Allegations of the Complaint State a Cause of Action for Recognition of a Foreign Money Judgment ......................................... 20

    C.    SerVaas Has Stated A Cause of Action As Against the Republic of Iraq ......... 21

    D.    Defendants' Claim That Their Assets Are Immune From Execution Is Premature and Irrelevant to the Issue of Whether Plaintiff Has Stated A Cause of Action For Recognition of a Foreign Money-Judgment ..................... 23

IV.    In The Event Any Aspect of Defendants' Motion Is Granted, Plaintiff Seeks Leave to Amend Its Complaint. .................................................................. 24

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

### CASES

Aurelius Capital Partners, LP v. Republic of Argentina,
2009 WL 755231 (S.D.N.Y. March 12, 2009) ............................................................15-16, 22

Aurelius Capital Partners, LP v. Republic of Argentina,
2009 WL 910783 (S.D.N.Y. April 3, 2009) ..........................................................................23

Baglab Ltd. v. Johnson Matthey Bankers Ltd.,
665 F. Supp. 289 (S.D.N.Y. 1987) .......................................................................................13

Bolt Elec., Inc. v. City of New York,
53 F.3d 465 (2d Cir. 1995) ...................................................................................................19

Commercial Bank of Kuwait v. Rafidain Bank,
15 F.3d 238 (2d Cir. 1994) ...................................................................................................16

Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation,
361 F.3d 676 (2d Cir. 2004) ...........................................................................................15, 21

Conley v. Gibson,
355 U.S. 41 (1957) ................................................................................................................19

Daliberti v. Republic of Iraq,
97 F. Supp. 2d 38 (D.D.C. 2000) ..........................................................................................13

Dresden Bank AG v. Haque,
161 F. Supp. 2d 259 (S.D.N.Y. 2001) ..................................................................................20

Emarat Maritime LLC v. Shandong Yantai Marine Shipping,
2009 WL 1024317 (S.D.N.Y. April 15, 2009) ................................................................11, 18

Empresa Generadora de Electricidad Itabo, S.A. v. Corporacion Dominicana de
Empresas Electricas Estateles, 2005 WL 1705080 (S.D.N.Y. July 18, 2005) ................11, 18

E*Trade Fin. Corp. v. Deutsche Bank AG,
420 F. Supp. 2d 273 (S.D.N.Y. 2006) ..................................................................................25

First City, Texas-Houston, N.A. v. Rafidain Bank,
281 F.3d 48 (2d Cir. 2002) ..............................................................................................18, 22

First National City Bank v. Banco Para El Comercio Exterior de Cuba,
462 U.S. 611 (1983) ..............................................................................................................21

*Freedom Party of New York v. New York State Board of Elections,*
77 F.3d 660 (2d Cir. 1996) ............................................................................24

*Garb v. Republic of Poland,* 207 F. Supp. 2d 16 (E.D.N.Y. 2002), *vacated and remanded on other grounds,* 72 Fed. Appx. 850 (2d Cir. 2003) ......................................22

*Geisler v. Petrocelli,*
616 F.2d 636 (2d Cir. 1980) ...........................................................................19

*Hamm v. United States,*
483 F.3d 135 (S.D.N.Y. 2007) ........................................................................17

*Hilaturas v. Republic of Iraq,*
573 F. Supp. 2d 781 (S.D.N.Y. 2008) ........................................................14-17

*International Housing Ltd. v. Rafidain Bank Iraq,*
893 F.2d 8 (2d Cir. 1989) ...............................................................................12

*Kassner v. 2ⁿᵈ Avenue Delicatessen Inc.,*
496 F.3d 229 (2d Cir. 2007) ...........................................................................19

*Kato v. Ishihara,* 239 F. Supp. 2d 359 (S.D.N.Y. 2002),
*aff'd on other grounds* 360 F.3d. 106 (2d Cir. 2004)) ................................6, 13

*Malkentzos v. DeBuono,*
102 F.3d 50 (2d Cir. 1996) .............................................................................24

*Republic of Argentina v. Weltover, Inc.,*
504 U.S. 607 (1992) ..................................................................................6, 15

*Robinson v. Government of Malaysia,*
269 F.3d 133 (2d Cir. 2001) ...............................................................7, 13, 16

*Roeder v. Islamic Republic of Iran,*
333 F.3d 228 (D.C. Cir. 2003) ........................................................................22

*S.C. Chimexim S.A. v. Velco Enterprises Ltd.,*
1999 WL 223513 (S.D.N.Y. March 17, 1999) ..................................................20

*Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 989 F.2d 572 (2d Cir. 1993)..................................................20, 23-24

*Shnall v. Marine Midland Bank,*
225 F.3d 263 (2d Cir. 2000) .......................................................................6, 13

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002) .......................................................................................12

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria,*
    647 F.2d 300 (2d Cir. 1981) .................................................................15, 18

*Transatlantic Shiffahrtskontor Gmbh v. Shanghai Foreign Trade Corp.,*
    204 F.3d 384 (2d Cir. 2000) ........................................................................6

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.,*
    241 F.3d 135 (2d Cir. 2001) ......................................................................18

*Virtual Countries, Inc. v. Republic of South Africa,*
    300 F.3d 230 (2d Cir. 2002) ......................................................................11


                                                      Page(s)

**STATUTES**

New York CPLR § 5302 ...............................................................20, 24

New York CPLR § 5303 ...............................................................20

Fed. R. Civ. P. 8(f) .......................................................................19

Fed. R.Civ. P. 10(c) ....................................................................6

Fed. R.Civ. P. 12(b) ...................................................................*passim*

Fed. R. Civ. Pro. 15 ....................................................................24

28 U.S.C. § 1330 ...................................................................11, 18

28 U.S.C. § 1603(d) .................................................................15

28 U.S.C. § 1604 ......................................................................11

28 U.S.C. § 1605(2) ................................................................14

Plaintiff SerVaas Incorporated ("SerVaas") respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss. Therein, Defendants claim that this Court lacks subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and that the Complaint purportedly fails to state a legally viable claim for the recognition of a foreign money judgment. Defendants' arguments are wholly without merit.

As set forth below, this Court has jurisdiction over the Republic of Iraq ("Iraq") (the Ministry of Industry (the "Ministry"), a political subdivision of the Iraqi government, being an emanation or alter-ego thereof) based upon the FSIA's "commercial activity" exception to sovereign immunity. Moreover, even a cursory review of the Complaint reveals that SerVaas more than adequately alleged a cause of action for the recognition of a foreign money judgment. Defendants' assertion that Iraq's assets in the United States are purportedly "immune" from execution is incorrect, premature and wholly irrelevant in any event to the issue of the sufficiency of SerVaas' claim for recognition of a foreign money judgment.

Accordingly, Defendants' motion should be denied in the entirety.

## PRELIMINARY STATEMENT

At its core, this case concerns the pursuit of a deadbeat debtor – albeit one of the international governmental variety. In 1991, SerVaas (a U.S. corporation) obtained a money judgment issued by the Paris Commercial Court against the Ministry in the amount of $14,152,800.00, plus interest (the "Judgment"). To date, Iraq has failed to pay it.

Rather, Iraq challenged the Judgment in the French courts for years, losing at every turn and exhausting all appeals. The Judgment, which remains enforceable in France thru 2017, is final, conclusive, and non-appealable. During the course of enforcement efforts in the

European Union, where SerVaas legally seized hundreds of thousands of dollars of Iraqi assets in partial satisfaction of the Judgment, the sovereign "State of Iraq" executed an agreement in which it acknowledged the Judgment as one issued against it and "acknowledge[d] unconditionally" a debt owed to SerVaas. Notwithstanding the foregoing, Iraq has failed to pay the Judgment, or any part thereof. This action was commenced for the recognition of the Judgment in the United States pursuant to the Uniform Foreign Money-Judgments Recognition Act (New York C.P.L.R. §§ 5301 *et seq.*).

In a desperate attempt to delay the recognition and enforcement of the Judgment against Iraqi assets here, Defendants have moved to dismiss SerVaas' Complaint on a number of wholly baseless grounds. Defendants first argue that SerVaas has not adequately pleaded that this Court has subject matter jurisdiction pursuant to the FSIA. Defendants are flatly wrong. Not only does the Complaint provide that this Court has subject matter jurisdiction pursuant to the "commercial activities" exception to sovereign immunity under the FSIA, but the exhibits to the Complaint (including the Judgment) as well as the documents incorporated by reference therein (including the parties' commercial contract) more than adequately provide notice of Defendants' commercial activities and their direct effect in the United States. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction pursuant to the FSIA (personal jurisdiction being nothing more than subject matter jurisdiction and proper service) must be denied.

Defendants' arguments that SerVaas has purportedly not stated a claim for recognition of the Judgment similarly fail. SerVaas' Complaint more than adequately alleges each of the essential elements of a claim for recognition of a foreign judgment – *i.e.*, that

SerVaas is the holder of a foreign money judgment that is "final, conclusive and enforceable where rendered."

Defendant Republic of Iraq claims that no cause of action can be maintained against it because it was not a party to the Judgment, the French court proceedings, or the underlying commercial contract. Iraq is wrong. Not only did Iraq contractually agree that the Judgment is in fact enforceable as against it (in addition to the Ministry), but it is well-established under binding Supreme Court and Second Circuit precedent that the sovereign state of Iraq can be held liable for a judgment against one of its "political subdivisions."

The Court should similarly reject Defendants' contentions that SerVaas has not stated a claim for <u>recognition</u> of the Judgment because (according to Defendants) certain of Iraq's assets in the United States are purportedly "immune" from <u>enforcement</u>. The issue of whether a judgment may be enforced against Iraqi assets in the United States is wholly irrelevant to whether SerVaas has stated a claim for <u>recognition</u> of a foreign money judgment for the simple reason that the ability to enforce is not an element of a claim for recognition.

Moreover, the issue of enforcement is not currently a "live issue" before this Court – as SerVaas does not yet have a United States judgment to enforce, and has not otherwise sought to attach or seize any Iraqi assets here. Thus, a ruling at this stage as to the purported "immunity" of any Iraqi assets would constitute an impermissible advisory opinion. In any event, because (a) the "immunity" claimed by Defendants is limited and subject to exception; and (b) Defendants have not yet been required to disclose the totality of their U.S.-based assets, the issue of enforcement is entirely premature.

For each of the foregoing reasons, Defendants' motion to dismiss must be denied in its entirety.

## STATEMENT OF FACTS RELEVANT TO THE MOTION

### A.    The Facts Set Forth In Plaintiff's Complaint and Attached Exhibits

The following facts are alleged in the Complaint (attached as **Exhibit A** to the Declaration of Dr. Beurt SerVaas ("SerVaas Decl.") submitted herewith), set forth in the documentary evidence referred to therein or attached thereto, and/or are facts subject to judicial notice. As such, they are presumed true for purposes of Defendants' challenge to the Court's jurisdiction and the sufficiency of Plaintiff's claim:

Plaintiff SerVaas Incorporated ("Servaas") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. See SerVaas Decl., Exh. A (Cmplt.) at ¶ 2. Defendant Republic of Iraq ("Iraq") is a foreign sovereign state. Id. at ¶¶ 3-4; see also Defendants' Moving Brief, dated August 3, 2009 ("Mov. Br.") at 1. The Defendant Ministry of Industry of the Republic of Iraq (the "Ministry") is a political subdivision of the government of Iraq and, thus, represents the Iraqi sovereign state itself and/or the "alter ego" by which it acted. See SerVaas Decl., Exh. A (Cmplt.) at ¶ 3, Exh. 2 (Judgment) at 2 ("We hold that, the Ministry of Industry of the Republic of Iraq, being an emanation of the Republic of Iraq and having signed contracts with SERVAAS, Inc., the latter is within its rights in having applied to this Court.") (emphasis added); see also Mov. Br. at 1 (referring to Defendants collectively as the "Iraqi Sovereign Defendants"), id. at 10 (asserting that the "knowledge" of the government of Iraq would be imputed to the Ministry, as one of the government's "political subdivisions").

SerVaas initiated this action seeking the recognition, pursuant to the Uniform Foreign Money-Judgments Recognition Act (New York C.P.L.R. §§ 5301 et seq.), and later enforcement of a April 16, 1991 money judgment (the "Judgment") entered in France in favor of

SerVaas and against the Ministry in the amount of over $14,152,800 plus interest. See SerVaas Decl., Exh. A (Cmplt.) at ¶ 1, 7 and Exh. 2.

Between 1992 and 1996, Iraq appeared by counsel before numerous French courts seeking to have the Judgment set aside on various grounds. Id. at ¶¶ 8-10, 14, Exhs. 4, 6, 8. As set forth in the written court decisions related thereto, the French courts (including two appellate courts) rejected each and every one of Iraq's challenges and repeatedly confirmed the validity of the Judgment. Id. at ¶¶ 8-10, Exhs. 4, 6, 8. Critically, the French courts rejected Iraq's claim (renewed here) that it had not waived sovereign immunity. Id. at Exh. 6. The Judgment, which is now final and non-appealable, remains unsatisfied. SerVaas is the owner and holder of the Judgment, which remains enforceable under French law until 2017. Id. at ¶¶ 11, 16, 24.

The Judgment awarded SerVaas damages for the Ministry's breach (non-payment) following the termination of a written, commercial contract. Id. at ¶¶ 4, 6, Exh. 2 (Judgment) at 2 ("SERVAAS Inc., a company specializing in the manufacture, treatment, and handling of metals, seeks to recover from the Ministry of Industry of the Republic of Iraq, in compensation for the damage it suffered because of the breach of a contract ... for the supply of various equipment, machinery, and other ancillary material intended for a copper refinery plant ... for a total price of $40,602,000 United States dollars."); Exh. 4 (March 16, 1992 Order) at 2 ("... [T]he Presiding Judge of the Commercial Court of Paris ordered the Ministry of Industry of the Republic of Iraq to pay the American Company SERVAAS ... the sum of US $14,152,800 with statutory interest from April 5, 1991, following the termination of a contract for the supply of machinery for a copper scrap refinery in Iraq"). As set forth in the Judgment, the French court concluded that: "It is shown by the present documents that SERVAAS, Inc. made all of the

shipments of material and equipment which the contract required it to do." Id., Exh. 2 (Judgment) at 3.

The underlying agreement between the parties, (referenced in the Complaint as well as the Exhibits thereto and integral to SerVaas' claim herein (Id. at ¶¶ 4, 6, Exhs. 2, 4)),[1] was originally entered into on or about September 9, 1988 (see SerVaas Decl. Exh. B), amended by agreement executed on or about October 2, 1988 (see SerVaas Decl., Exh. C), and further amended by agreement dated August 8, 1989 and executed on August 10, 1989 (the "Contract") (see SerVaas Decl., Exh. D). The Contract became "final and binding" – even after its execution by the parties – only after "the appropriate governmental authority of Iraq" gave approval. Id., Exh. B (original contract) at § 5.1 and Art. 26; Exh. D (Contract) at § 5.1.

The Contract was of a general commercial nature, pursuant to which SerVaas provided Iraq with certain proprietary technology (for the removal of silicon from scrap artillery shells to facilitate the reclamation of commercially saleable copper therefrom), factory design plans, as well as extensive industrial equipment and machinery to operate the factory. Id., Exh. D (Contract) at 1 and §§ 1.4, 1.8-1.11, 1.14, 3.1-3.8, 10A.1.[2] Pursuant to the Contract, Iraq

---

[1]  On a motion to dismiss, "[t]he Court is limited to the factual allegations in plaintiff's … complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff[] had knowledge and relied on in bringing suit." Kato v. Ishihara, 239 F. Supp. 2d 359 (S.D.N.Y. 2002) (Berman, J.), aff'd on other grounds 360 F.3d. 106 (2d Cir. 2004); see also F.R.C.P. 10(c); Shnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000) (considering agreement and other documents that were "integral" to claim on motion to dismiss). In any event, Defendants concede that "[a] district court may refer to evidence outside the pleadings in resolving a Rule 12(b)(1) motion."); Mov. Br. at 6.

[2]  The Contract provided that the "Plant Objective" was that "… the Supplies and Services combined as a single plant on the Site shall be able to: (a) use [the Ministry's] available scrap of approximately 70,000 tons [of shell casings] to produce slabs or billets …; [and] (b) remove the silicon from the silicon brass scrap to .00 percent to produce slabs, billets, or ingots to be used with available scrap and/or virgin material, … to produce 70/30 brass …." Id., Exh. D (Contract) at 1.14.

shipped five tons of shell casings to SerVaas in the United States such that SerVaas could perfect its process for the removal of silicon from the brass shells. Id., Exh. D (Contract) at § 5.4. Following successful preliminary tests in the United States (id.), SerVaas shipped the requisite factory equipment and machinery from the United States to Iraq, together with the "ancillary material" (i.e., memoranda detailing the process for the removal of the silicon). Id., Exh. A (Cmplt.) at Exh. 2 (Judgment) at 3 ("... SERVAAS, Inc. made all of the shipments of material and equipment which the contract required it to do.").

In exchange for the technology, services and machinery provided by SerVaas, Iraq agreed to pay SerVaas $40,602,000.00 (plus transportation and living expenses for SerVaas employees engaged with the initial installation, training and operation of the factory). Id., Exh. D (Contract) at §§ 1.13, 4.3. To facilitate Iraq's payment obligations, Iraq opened an irrevocable letter of credit with a in the United States. Id., Exh. D (Contract) at § 5.2. Ultimately, however, Iraq failed to pay SerVaas for the equipment and machinery that SerVaas provided. Id., Exh. A (Cmplt.) at Exh. 2 (Judgment) at 3 ("[The Ministry] ... has never paid the sums which are due."); Exh. D (Contract) at § 5.3-5.10.

## B.    Additional Factual Showing Concerning Defendants' Commercial Acts[3]

The following facts, summarized here for the Court's convenience, are set forth in the accompanying declaration of Dr. Beurt SerVaas (with exhibits), the owner and principal of Plaintiff SerVaas:

---

[3]    In resolving Defendants' challenge to subject matter jurisdiction pursuant to Rule 12(b)(1), the Court "must" look beyond the pleadings and consider the factual submissions made by the parties. See Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001).

SerVaas, a United States corporation which has been doing business since 1966, specializes (together with its affiliated companies) in the commercial manufacture, processing, and handling of metals. See SerVaas Decl. at ¶ 3.

In September 1988 SerVaas entered into a commercial agreement with the Ministry. The parties agreement was amended and restated by agreements dated October 2, 1988 and August 8, 1989 (the "Contract"). See id. at ¶¶ 6-8, Exhs. B, C, D. Pursuant to the Contract, the Ministry agreed to pay SerVaas $40,602,000 in the United States (by irrevocable letter of credit established at a bank in the United States) in exchange for design plans, factory machinery and equipment, the proprietary "technology, know-how and technical documents," and certain equipment installation and factory start-up services. See generally Exh. D (Contract). In October 1988, Iraq gave the necessary approval for the Contract to become binding. See id. at ¶¶ 12-13, Exh. D (Contract) at § 5.1, Exh. E.

To facilitate payment by Iraq to SerVaas pursuant to the Contract, Iraq (by its Central Bank) opened an irrevocable letter of credit (in the amount of $40,602,000 and to SerVaas' favor) in the United States at the Atlanta branch of Banco Del Lavoro. See id. at ¶ 15, Exh. D (Contract) at § 5.2, Exh. F. Iraq also shipped five tons of scrap shell casings to SerVaas in the United States for testing as to the exact process to be implemented to remove the silicon from the brass. See id. at ¶¶ 14, 16-17, Exh. D (Contract) at § 5.4, Exhs. G-H.

Following SerVaas' perfection of the silicon-removal process, SerVaas sent to Iraq the plans for the factory/plant (which it had designed in the United States), the factory machinery and equipment (manufactured and shipped from the United States) and memoranda detailing the silicone-removal process (i.e., a United States corporation's proprietary technology). See id. at ¶¶ 18, 22, Exhs. I-J. Iraq paid millions of dollars to SerVaas in the

United States, via an Atlanta based branch office of Banco Del Lavoro, in partial payment under the Contract. See id. at ¶ 19.

SerVaas' continued performance under the Contract (i.e., the installation of the equipment and start-up of the plant) was delayed because Iraq had not completed the factory structure (see id. at ¶ 20) and later precluded pursuant to United States Executive Orders following Iraq's invasion of Kuwait. See id. at ¶ 21; Exh. A (Cmplt.) at Exh. 2 (Judgment). Based thereon, SerVaas terminated the Contract and sought payment for the value of the materials and equipment that it had shipped to Iraq. See id. at ¶ 22. Iraq's failure to pay led to the entry of the French Judgment. See id. at Exh. A (Cmplt.) at Exh. 2 (Judgment).

Following the issuance of the Judgment in April 1991, SerVaas undertook to enforce the Judgment in The Netherlands as against Iraqi assets held in Dutch banks, as well as certain goods discharged and seized from a shipping vessel in Middleburg. See id. at ¶ 28, Exh. A (Cmplt.), Exh. 4 at 2. Prior to the auction of the seized goods, Iraq entered into an agreement with SerVaas whereby SerVaas agreed to delay the auction of the goods in exchange for Iraq's payment of $100,000. See id. at ¶ 29, Exh. K (the "Freeze Agreement").

Notably, the Freeze Agreement was entered into between SerVaas and Iraq – not the Ministry (although the Head of the Legal Consultation Bureau of the Ministry of Industry executed the Freeze Agreement on behalf of Iraq). See id. at ¶ 30, Exh. K (the "Freeze Agreement"). By the Freeze Agreement, Iraq specifically recognized that the Judgment was enforceable as against it, and "acknowledge[d] unconditionally" a debt to SerVaas relating to SerVaas' shipment of equipment to Iraq pursuant to the Contract:

WHEREAS

Servaas has obtained a judgment dated 16th April, 1991 against Iraq in France, in which Iraq is ordered to pay to Servaas US $14,152,800 to be

increased with French statutory interest thereover from 5th April 1991 until the day of full settlement (hereinafter the "Claim")[.]

Notwithstanding the fact that Iraq denies that it is in anyway in breach of the contract to which the Claim relates … **Iraq herewith acknowledges unconditionally that it owes Servaas an amount of $7,500,000, of the Claim** [as defined above]…, **which amount relates to the last shipment of the equipment delivered by Servaas pursuant to the contract between the Ministry of Industry of Iraq and Servaas.**

Id. at ¶ 31, Exh. K (Freeze Agreement) at 1-3 (emphasis added).  Although the parties entered into the Freeze Agreement with hopes that an amicable compromise could be reached, no such compromise or settlement was ever consummated.  Id. at ¶ 32.

Notwithstanding that Iraq has been operating the silicon-removal plant for well over 20 years with the machinery, equipment, and technology provided by SerVaas, Iraq has failed to satisfy the Judgment.  See id. at ¶¶ 22, 33 and Exh. I-J.

## ARGUMENT

### I.    This Court Has Subject Matter Jurisdiction Pursuant to the FSIA[4]

As a threshold matter, the "foreign sovereign" Defendants challenge the subject matter jurisdiction of this Court.  This is an issue that is governed by the statutory prescriptions of the Foreign Sovereign Immunities Act ("FSIA").  See, e.g., Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (Berman, J., sitting by designation) ("The FSIA ... provides the sole basis for obtaining [subject matter] jurisdiction over a foreign sovereign in the United States.") (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992)).

Under the FSIA, a foreign state is immune from the jurisdiction of the courts of the United States, subject to certain statutory exceptions.  See 28 U.S.C. § 1604; 28 U.S.C. § 1330(a) (providing that federal district courts have "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity under sections 1605-1607 of [28 U.S.C.] or under any applicable international agreement."); see also Virtual Countries, 300 F.3d at 236; Emarat Maritime LLC v. Shandong Yantai Marine Shipping, 2009 WL 1024317 at *1 (S.D.N.Y. April 15, 2009) (Berman, J.); Empresa Generadora de Electricidad Itabo, S.A. v. Corporacion Dominicana de Empresas Electricas Estateles, 2005 WL 1705080 at *4 (S.D.N.Y. July 18, 2005) (Berman, J.).

---

[4]    In the event that the Ministry denied that it was a political subdivision of the Iraqi government, Plaintiff's Complaint alleged, in the alternative, that this Court had diversity jurisdiction. Because the Defendants admit that the Ministry is a political subdivision of the Iraqi government, the FSIA is applicable and the Court need not consider any alternatively plead grounds to establish subject matter jurisdiction.

Here, Defendants claim that SerVaas' Complaint fails to adequately allege the "commercial activity" exception to foreign sovereign immunity, and that Defendants have not otherwise "waived" immunity. Defendants are wrong on both counts.

## A.    The Complaint Adequately Alleges the "Commercial Activity" Exception to Foreign Sovereign Immunity

Defendants do not – and cannot – factually dispute the validity of the Judgment, or that the Judgment was based upon Defendants' commercial activities. Rather, Defendants wrongly argue that subject matter jurisdiction is lacking (Rule 12(b)(1)) because the Complaint purportedly does not adequately allege that the "commercial activity" exception to foreign sovereign immunity applies here. Defendants' facial challenge to subject matter jurisdiction fails. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002) (reversing dismissal of claims, holding that at the pleading stage, a plaintiff must meet no more rigorous a burden than that found in Fed. R. Civ. P. 8(a) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief;" Complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"). There can be no doubt that SerVaas' Complaint here provided notice to Defendants of the basis of jurisdiction and the "commercial activities" underlying the Judgment.[5]

It is well established that where, as here, Defendants make a mere facial challenge as to "the legal sufficiency of the plaintiff's jurisdictional allegations, … the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."

---

[5]    In the case of the recognition and enforcement of a foreign judgment, Defendants' "commercial activity" is measured by the acts underlying the judgment. See International Housing Ltd. v. Rafidain Bank Iraq, 893 F.2d 8, 11-12 (2d Cir. 1989) (examining the conduct (breach of contract) underlying a foreign judgment to determine whether jurisdiction in the United States existed in a suit to enforce a Bahamian judgment); see also Transatlantic Shiffahrtskontor Gmbh v. Shanghai Foreign Trade Corp., 204 F.3d 384, 389 (2d Cir. 2000).

Robinson v. Government of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001) (internal quotations omitted); see Baglab Ltd. v. Johnson Matthey Bankers Ltd., 665 F. Supp. 289, 294 (S.D.N.Y. 1987) ("If any of the [FSIA] exceptions appears in the pleadings or is not refuted by the foreign state asserting the defense, the motion to dismiss the complaint must be denied."); see also Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38, 42-43 (D.D.C. 2000) ("[A]t this stage [*i.e.*, motion to dismiss] the Court must accept as true all facts alleged by plaintiffs).

Moreover, in resolving Defendants' facial jurisdictional challenge, this Court may consider the documents attached to the Complaint, documents incorporated into the Complaint by reference, as well as documents which are "integral" to the claim alleged.  See Kato v. Ishihara, 239 F. Supp. 2d 359 (S.D.N.Y. 2002) (Berman, J.), *aff'd on other grounds* 360 F.3d. 106 (2d Cir. 2004); Shnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000) (considering agreement and other documents that were "integral" to claim on motion to dismiss); see also Mov. Br. at 3-4 (conceding that the Court must consider the exhibits to the Complaint).

Here, there can be no dispute that the Complaint provides notice of jurisdiction under the "commercial activities" exception as well as the facts underlying Defendants' quintessential "commercial" activities and their direct effect in the United States – *i.e.*, that Defendants contracted for and received goods, services, and proprietary technology from a United States company and that Defendants failed to pay that United States company for such goods, services and technology.  Specifically, as set forth in the Complaint and its supporting documents (detailed more fully in the preceding factual statement):

- "This Court … has original jurisdiction over the subject matter of this action pursuant to the [FSIA], as … the judgment to be recognized and enforced was based upon Defendants' commercial activity which caused a direct effect in the United States.  See SerVaas Decl., Exh. A (Cmplt.) at ¶ 4 and Exh. 2 (Judgment).

- The Judgment – attached as Exhibit 2 to the Complaint – specifically referenced that the parties' contract, the contractual dispute, held "that SERVAAS, Inc. made all of the shipments of material and equipment which the contract required it to do," and awarded SerVaas damages for the Ministry's breach (non-payment). Id., Exh. 2 (Judgment) at 2-3 ("SERVAAS Inc., a company specializing in the manufacture, treatment, and handling of metals, seeks to recover from the Ministry of Industry of the Republic of Iraq, in compensation for the damage it suffered because of the breach of a contract … for the supply of various equipment, machinery, and other ancillary material intended for a copper [sic: brass] refinery plant … for a total price of $40,602,000 United States dollars."); see also id., Exh. 4 (March 16, 1992 Order) at 2 ("… [T]he Presiding Judge of the Commercial Court of Paris ordered the Ministry of Industry of the Republic of Iraq to pay the American Company SERVAAS … the sum of US $14,152,800 with statutory interest from April 5, 1991, following the termination of a contract for the supply of machinery for a copper [sic: brass] scrap refinery in Iraq").

- The Contract – incorporated by reference in the Complaint and the Judgment (see SerVaas Decl. Exh. A at ¶ 6, Exh. 2 (Judgment)) – further details Defendants' commercial activities. Specifically, the Contract documents that Defendants "purchased" machinery, equipment, design plans, proprietary technology, and services from SerVaas (a United States company). The Contract further provided that Defendants were to pay SerVaas in the United States and in U.S.-dollars for the goods, services and technology provided. See SerVaas Decl., Exh. D (Contract).

- Defendants failed to pay SerVaas. See SerVaas Decl., Exh. A (Cmplt.) at ¶¶ 16-18, 23, Exh. 2 (Judgment) ("We note that to date no payment has been made").

The Complaint thus more provides more than adequate "notice" of the facts underlying the applicability of the FSIA "commercial activity" exception.

The "commercial activity" exception of the FSIA provides that:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case:

… (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(2). "An activity is commercial if it is the 'type of action[] by which a private party engage[s] in trade and traffic or commerce.'" Hilaturas v. Republic of Iraq, 573 F. Supp.

2d 781, 793-94 (S.D.N.Y. 2008) (quoting Weltover, 504 U.S. at 614 (concluding that: "a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods").

Defendants do not – and cannot – seriously dispute that their actions – *i.e.*, the purchase from a United States company of machinery and equipment, factory design plans, proprietary technology, and services – constitute "commercial" activity in the United States (and elsewhere) with a direct effect in the United States.[6]  Indeed, just last year, this Court (Sweet, J.) held that Iraq's purchase of yarn (from a Spanish manufacturer) constituted "commercial" activities subject to FSIA exception.  See Hilaturas, 573 F. Supp. 2d at 793-94 ("Here, the Republic of Iraq, as a party to a contract for the purchase of goods, was acting 'in the manner of a private player within the market,' and [plaintiff's] claims are for breach of that contract. [Plaintiff's] claims are thus based on commercial activity undertaken by the Republic of Iraq.").

Simply, the purchase of goods, services, and technology from a United States company is quintessential "commercial" conduct under the FSIA.  See 28 U.S.C. § 1603(d) (defining "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act"); Weltover, 504 U.S. at 614; Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 307-08 (2d Cir. 1981); Aurelius Capital Partners, LP

---

[6]    As discussed in more detail below (Point II.C), subject matter jurisdiction under the FSIA over Iraq is imputed based upon the acts of the Ministry, a political subdivision of Iraq.  See Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation, 361 F.3d 676 (2d Cir. 2004) ("...[N]o meaningful legal distinction can be drawn between a sovereign and one of its political organs."; "The maxim that the acts of an organ of a sovereign's government are attributed to the sovereign have also been regularly applied in international courts and arbitrations."); Aurelius Capital Partners, LP v. Republic of Argentina, 2009 WL 755231 at *10-11 (S.D.N.Y. March 12, 2009) ("The court holds that [the entity] is a political subdivision of the Republic of Argentina, that it is subject to the jurisdiction of this court because the court has jurisdiction over the Republic [pursuant to the FSIA], and that the assets of [the entity] are subject to attachment and execution to the same degree as are the assets of the Republic).

v. Republic of Argentina, 2009 WL 755231 at *12 (S.D.N.Y. March 12, 2009) (Courts have recognized that sovereigns engage in commercial activity when they ... make contracts to purchase goods ....").

Defendants' commercial activities clearly had a "direct effect" in the United States, as (1) all of the machinery, plans, and technology were delivered to Defendants by SerVaas, a United States company; and (2) Defendants failed to pay SerVaas in the United States pursuant to the parties' Agreement. See, e.g., Hilaturas, 573 F. Supp. 2d at 794-95 ("Because the Contract requires [plaintiff] ... to collect the amounts due to it in the United States, the commercial activity had a direct effect in the United States) (citing cases); see also Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238 (2d Cir. 1994) ("The failure of the Iraqi banks to remit funds in New York, as they were contractually bound to do, had a direct effect in the United States under Weltover.").

Because the Complaint (and the materials attached thereto and incorporated by reference) provides adequate notice of the facts establishing the "commercial activities" exception to sovereign immunity, Defendants motion to dismiss for lack of subject matter jurisdiction must be denied.

B.    **The Evidence Submitted Establishes That the "Commercial Activity" Exception to Sovereign Immunity Is Applicable Here**

Defendants' motion to dismiss for lack of subject matter jurisdiction must be denied on the independent ground that the evidence submitted establishes that the "commercial activity" exception to sovereign immunity is applicable. Where, as here, subject matter jurisdiction is challenged, the Court must look beyond the pleadings and consider the factual submissions made by the parties. See Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001) ("[I]n assessing whether a plaintiff has sufficiently alleged or proffered

evidence to support jurisdiction under the FSIA, a district court must review the factual allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and – if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue – resolve disputed issues of fact, with the defendant foreign sovereign shouldering the burden of persuasion."); see also Hamm v. United States, 483 F.3d 135, 137 (S.D.N.Y. 2007); Hilaturas, 573 F. Supp. 2d at 792 (same; holding that Iraq was subject to court's jurisdiction pursuant to FSIA "commercial activity" exception).

Here, the facts set forth in the declaration of Dr. Beurt SerVaas further establish Defendants' commercial activities and their direct effect in the United States. Specifically, Dr. SerVaas' declaration details the contractual relationship between the parties and establishes that, pursuant to the Contract: (1) Iraq sent five tons of scrap shell casings to the United States; (2) SerVaas shipped the machinery, equipment, design plans, and proprietary method for the removal of silicon from brass to Iraq; (3) Iraq made partial payments to SerVaas in the United States via an irrevocable letter of credit that it opened at a bank in Atlanta; and (4) Iraq failed to make full payment of monies due to SerVaas in the United States. Further, the contracts and photographs attached to Dr. SerVaas' declaration further establish the commercial nature of the underlying conduct. Finally, during enforcement proceedings, Iraq entered into a Freeze Agreement in which it acknowledged the Judgment, and "acknowledge[d] unconditionally" a debt to SerVaas arising under the Contract. See SerVaas Decl., Exh. K (Freeze Agreement) (Servaas has obtained a judgment dated 16th April, 1991 against Iraq in France, in which Iraq is ordered to pay to Servaas US $14,152,800 to be increased with French statutory interest ...."; "... Iraq herewith acknowledges unconditionally that it owes Servaas an amount of $7,500,000, of the Claim [as defined above]..., which amount relates to the last shipment of the equipment

delivered by Servaas pursuant to the contract between the Ministry of Industry of Iraq and Servaas.").

  Because the indisputable evidence establishes that Iraq engaged in commercial activities in the United States (and elsewhere), which had a direct effect in the United States, Defendants motion to dismiss for lack of subject matter jurisdiction must be denied.

## II. This Court Has Personal Jurisdiction Over Defendants Pursuant to the FSIA

  Defendants' motion to dismiss for lack of personal jurisdiction (Rule 12(b)(2)) similarly fails.  "Generally, subject matter jurisdiction plus service of process equals personal jurisdiction under the FSIA." Empresa, 2005 WL 1705080 at *5 (Berman, J.) (quoting Texas Trading, 647 F.2d at 300); .see also 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under subsection (a) where service has been made under section 1608 of this title."); First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54-55 (2d Cir. 2002); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd., 241 F.3d 135, 151-52 (2d Cir. 2001); Emarat, 2009 WL 1024317 at *1-2 (Berman, J.) (denying motion to dismiss for lack of subject matter and personal jurisdiction in FSIA action); see generally Mov. Br. at 7-8 ("It is also well settled that personal jurisdiction under the FSIA equals subject matter jurisdiction plus a valid service of process.").

  Defendants do not dispute that they were validly served.  Rather, Defendants wrongly argue that this Court purportedly lacks personal jurisdiction only because the Court purportedly lacks subject matter jurisdiction.  See Mov. Br. at 3-4, 7-8, 16.  As set forth above, this Court has subject matter jurisdiction over this action pursuant to the FSIA's "commercial activities" exception to sovereign immunity.

Because this Court has subject matter jurisdiction under the FSIA, Defendants' motion to dismiss for lack of personal should also be denied.

## III.   SerVaas Has Stated a Claim for Recognition of a Foreign Judgment

### A.   Applicable Standard on Motion to Dismiss Pursuant to Rule 12(b)(6)

It is well established that the Court should not grant a motion made pursuant to Fed. R. Civ. P. 12(b)(6) unless it is satisfied that the complaint cannot state any set of facts that would entitle Plaintiff to relief. See, e.g., Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) ("[It] has been frequently reiterated, the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.").

In addition, the Court must construe the pleadings – including the materials incorporated into the Complaint – "in the light most favorable to the party opposing the motion." The Court must accept the allegations as pleaded in the Complaint as true and should liberally construe the allegations in the favor of SerVaas, drawing all reasonable inferences in its favor. See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007); Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995); see also Fed. R. Civ. P. 8(f); Mov. Br. at 8.

In light of the applicable standard, there can be no doubt that SerVaas adequately stated a cause of action against Defendants for the recognition of a foreign money judgment pursuant to the Uniform Foreign Money-Judgments Recognition Act, New York C.P.L.R. §§ 5301 et seq.

**B.**    **The Allegations of the Complaint State a Cause of Action for Recognition of A Foreign Money Judgment**

To state a cause of action for the recognition of a foreign money-judgment under New York law, a plaintiff need only allege that it is the holder of a foreign money judgment that is "final, conclusive and enforceable where rendered."    <u>Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala</u>, 989 F.2d 572, 583 (2d Cir. 1993) ("Under the laws of the State of New York, a foreign judgment is enforceable if it is 'final, conclusive and enforceable where rendered, even though an appeal therefrom is pending or it is subject to appeal.'"); <u>see</u> <u>also</u> New York C.P.L.R. § 5302 ("Applicability:  This article applies to any foreign country judgment which is final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal.") and § 5303 ("Recognition and enforcement"); <u>see</u> generally <u>Dresden Bank AG v. Haque</u>, 161 F. Supp. 2d 259, 262 (S.D.N.Y. 2001) (granting summary judgment); <u>S.C. Chimexim S.A. v. Velco Enterprises Ltd.</u>, 1999 WL 223513 (S.D.N.Y. March 17, 1999) (granting summary judgment).

SerVaas' Complaint here clearly states a valid cause of action for the recognition of a foreign money judgment, as Plaintiff specifically alleged:

- SerVaas "has at all times remained the owner and holder if the French Judgment, which remains in full force and effect." Piskora Decl., Exh. A (Cmplt.) at ¶ 24.

- The Judgment "is final, conclusive and enforceable." <u>Id</u>. at ¶¶ 11, 21 ("The April 16, 1991 [Judgment] is a final and non-appealable money judgment. At the time it was rendered, the [Judgment] was enforceable for a period of thirty years. In 2008, France amended its laws concerning the enforceability of judgments, and the [Judgment] is now enforceable thru 2017.").

- "[T]he French Judgment is legally recognized and enforceable throughout the European Union." <u>Id</u>. at ¶ 15.

- Iraq has exhausted all appeals of the Judgment. <u>Id</u>. at ¶¶ 8-11, 21.

Because the Complaint more than adequately states a cause of action for the recognition of a foreign money judgment, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

**C.    SerVaas Has Stated A Cause of Action As Against the Republic of Iraq**

The Republic of Iraq also argues that SerVaas has not stated a cause of action as against it because it was not a party to the Contract, the French action or the French Judgment. See Mov. Br. at 2-3, 15-16. Iraq is wrong.

SerVaas has stated a claim as against the Ministry for recognition of the French Judgment. Under well-recognized international law and federal law principles, Iraq can be held liable for that Judgment because – as alleged in the Complaint (SerVaas Decl., Exh. A (Cmplt.) at ¶¶ 1, 3, 4) and as admitted by the Defendants (Mov. Br. at 1, 10)[7] – the Ministry is merely a political subdivision of the government of Iraq (*i.e.*, the Ministry's "core functions" are governmental).

Thus, as a legal matter, Iraq and the Ministry are the same legal entity (*i.e.*, Iraq has no legal personality separate from its government) and/or Iraq must be held liable for the acts and Judgment rendered against the Ministry as its "alter ego." See First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983); Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation, 361 F.3d 676 (2d Cir. 2004) ("…[N]o meaningful legal distinction can be drawn between a sovereign and one of its political organs."; "The maxim that the acts of an organ of a sovereign's government are attributed to the

---

[7]    Indeed, Plaintiff's argument that Iraq should be held liable for the judgments of its individual governmental subdivisions is bolstered by Defendants' claim that the knowledge of the Iraqi government is imputed from and/or to its political subdivisions, including the Ministry. See Mov. Br. at 10.

sovereign have also been regularly applied in international courts and arbitrations."); <u>Aurelius Capital Partners, LP v. Republic of Argentina</u>, 2009 WL 755231 at *10-11 (S.D.N.Y. March 12, 2009) ("The court holds that [the entity] is a political subdivision of the Republic of Argentina, that it is subject to the jurisdiction of this court because the court has jurisdiction over the Republic [pursuant to the FSIA], and that the assets of [the entity] are subject to attachment and execution to the same degree as are the assets of the Republic); <u>see</u> <u>also</u> <u>Roeder v. Islamic Republic of Iran</u>, 333 F.3d 228, 234-35 (D.C. Cir. 2003) ("We adopted a categorical approach: if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state. […] [T]he Ministry of Foreign Affairs must be treated as the state of Iran itself rather than its agent."); <u>Garb v. Republic of Poland</u>, 207 F. Supp. 2d 16, 37-38 (E.D.N.Y. 2002) ("…[T]he Ministry of Treasury can hardly be viewed as an entity separate from the Republic of Poland."), <i>vacated and remanded on other grounds</i>, 72 Fed. Appx. 850 (2d Cir. 2003).

Because there is no dispute here that the Ministry is a <u>political subdivision</u> of Iraq – as compared to a agent or separately existing entity – the Judgment can be recognized and enforced as against Iraq pursuant to binding Supreme Court and Second Circuit precedent. Accordingly the Republic of Iraq's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

In the event the Court were to conclude – notwithstanding Defendants' admission that the Ministry is a political subdivision of the Iraqi government – that a factual issue remained to be determined as to Iraq's liability for the Judgment, SerVaas respectfully requests that the Court grant it leave to take jurisdictional discovery. <u>See</u> <u>First City, Texas-Houston, N.A. v. Rafidain Bank</u>, 150 F.3d 172, 176-177 (2d Cir. 1998) (holding, in FSIA action, that: "We believe

that the [lower] court's failure to [permit jurisdictional discovery], when coupled with the dismissal of the complaint, was an abuse of discretion."); Aurelius Capital Partners, LP v. Republic of Argentina, 2009 WL 910783 at *2 (S.D.N.Y. April 3, 2009) (compelling discovery).

### D. Defendants' Claim That Their Assets Are Immune From Execution Is Premature and Irrelevant to the Issue of Whether Plaintiff Has Stated A Cause of Action For Recognition of a Foreign Money-Judgment

Finally, Defendants dedicate much of their moving papers to the argument that SerVaas' Complaint should be dismissed for failure to state a cause of action for the **recognition** of the Judgment because, in Defendants' view, their U.S.-based assets are "immune" from **enforcement**. Mov. Br. at 4-6, 16-22. Notably, Defendants are unable to cite to any legal authority to support their argument. And there is a simple explanation – Defendants are wrong.[8]

Defendants – who implicitly concede that SerVaas' Judgment should be recognized by this Court – wrongfully attempt to "put the cart before the horse" and address issues of enforcement. Defendants' argument must be rejected because the issue of whether SerVaas can ultimately enforce a United States judgment as against Iraq's assets in the United States is not an element of a cause of action for recognition of a foreign judgment (or any other cause of action). Rather, following recognition, enforcement of the judgment will follow pursuant to Fed. R. Civ. P. 69 by way of discovery and proceedings on and in aid of execution.

As set forth above, to state a cause of action for the recognition of a foreign money judgment under New York law, Plaintiff need only allege that it is the holder of a foreign money judgment that is "final, conclusive and enforceable where rendered." Seetransport, 989

---

[8] Even if Defendants' U.S.-based assets were currently "immune" from execution – which they are not, as the executive orders referred to by Defendants are expressly subject to exception – Defendants cannot establish that such assets will be immune from execution for the life of Plaintiff's Judgment.

F.2d at 583; see also New York C.P.L.R. § 5302. Plaintiff has undoubtedly stated such a cause of action here.

Further, there can be no dispute that SerVaas has not yet been granted recognition of the Judgment in the United States, or attempted to attach or "enforce" the French Judgment in the United States. Accordingly, the issue of enforcement is not a "live controversy" currently before the Court. Thus, pursuant to well-established precedent, this Court cannot render a ruling – in the nature of a premature "advisory opinion" in the guise of a decision on a Fed. R. Civ. P. Rule 12(b)(6) motion – as to whether SerVaas may ultimately be able to execute upon Iraq's (as of yet undisclosed) assets in the United States. See Malkentzos v. DeBuono, 102 F.3d 50, 55 (2d Cir. 1996) ("Without a live controversy, any opinion issued by this Court would violate the long-standing rule against advisory opinions."); Freedom Party of New York v. New York State Board of Elections, 77 F.3d 660, 663 (2d Cir. 1996) (…[T]o render an opinion on the merits of this case would violate the well-settled rule against issuing advisory opinions.").

Because SerVaas has stated a claim for the recognition of a foreign money judgment, and because the enforcement of that judgment is not an element of that claim, nor currently a "live controversy" before this Court, Defendants' motion to dismiss for failure to state a cause of action must be denied.

## IV.    IN THE EVENT ANY ASPECT OF DEFENDANTS' MOTION IS GRANTED, PLAINTIFF SEEKS LEAVE TO AMEND ITS COMPLAINT

Although Plaintiffs respectfully submit that a dismissal is unwarranted because the Complaint more than adequately alleges jurisdiction and states a valid cause of action for the recognition of a foreign money judgment, in the event that this Court concludes otherwise, Plaintiff respectfully seeks leave to amend pursuant to Fed. R. Civ. Pro. 15. Leave to amend

should be freely granted where, as here, there would be no undue delay, bad faith, futility or prejudice to Defendants. See, e.g., E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F. Supp. 2d 273, 282-83 (S.D.N.Y. 2006) (granting leave to file an amended pleading).

Accordingly, should any aspect of Defendants' motion be granted, given the nature and circumstances of this case, as alleged in the Complaint and further detailed in the accompanying declaration of Dr. SerVaas, Plaintiff respectfully seeks leave to amend.

## CONCLUSION

For each and all of the foregoing reasons, the motion to dismiss of Defendants Republic of Iraq and Ministry of Industry of the Republic of Iraq should be denied in all respects.

Dated: New York, New York
     August 13, 2009

LOEB & LOEB LLP

By: _____
    John A. Piskora (JAP-1224)
    345 Park Avenue
    New York, NY 10154
    Main: (212) 407-4000
    Fax: (212) 407-4990

*Attorneys for Plaintiff*
*SerVaas Incorporated*