UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

SERVAAS INCORPORATED,                          :

                                  Plaintiff,   :

                - against -                     :

REPUBLIC OF IRAQ and MINISTRY OF               :
INDUSTRY OF THE REPUBLIC OF IRAQ,              :

                                  Defendants.  :
--------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/19/10

09 Civ. 1862 (RMB) (RLE)

**DECISION & ORDER**

## I.   Introduction

On February 27, 2009, Plaintiff SerVaas Incorporated ("Plaintiff" or "SerVaas Inc.")

filed a Complaint pursuant to New York's Uniform Foreign Country Money-Judgments

Recognition Act, N.Y. C.P.L.R. §§ 5301 et seq., against the Republic of Iraq ("Iraq") and the

Ministry of Industry of the Republic of Iraq ("Ministry of Industry" or "Ministry") (collectively,

"Defendants"), seeking recognition of a final money judgment in the amount of $14,152,800,

dated April 16, 1991, issued in favor of Plaintiff and against the Ministry of Industry by the Paris

Commercial Court in Paris, France ("French Judgment"). (Compl., dated Feb. 27, 2009, ¶¶ 1,

7.)[1]

---

[1]     At some point between August 24, 1990 and November 6, 1990, "arbitration proceedings
were initiated [in Paris] before the ICC [International Chamber of Commerce] by SerVaas Inc."
against the Ministry of Industry based upon the Ministry's failure to pay SerVaas Inc. "sums
which were due to it for deliveries which had been made and services provided," i.e.,
$14,152,800 ("Arbitration"). (Compl. Ex. 2 (French Judgment, dated Apr. 16, 1991 (English
Translation dated Feb. 25, 2009)), at 4; see also pp. 7–9, infra.) SerVaas nominated an arbitrator
but the Ministry, "although advised of [the Arbitration,]" did not nominate an arbitrator or
otherwise respond. (French Judgment at 4 ("[T]he Arbitral Tribunal is not constituted to date,
owing to the default of the Ministry of Industry[.]").) SerVaas Inc. then commenced an action in
Paris Commercial Court "in order to obtain an order for [the Ministry] to pay the sum" allegedly
owed, i.e., the same amount sought in the Arbitration, $14,152,800. (French Judgment at 2.) On
April 16, 1991, the Paris Commercial Court, noting that the Ministry "is not appearing and is not

On August 3, 2009, Defendants moved to dismiss the Complaint pursuant to Rules

12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among

other things, that: (1) "no United States court possesses . . . subject matter . . . jurisdiction" over

either Iraq or the Ministry of Industry "because neither . . . Defendant comes within any . . .

exception to foreign sovereign immunity" set out in the Foreign Sovereign Immunities Act

("FSIA"), 28 U.S.C. §§ 1330, 1601 et seq.; (2) "no United States court possesses [personal]

jurisdiction" over either Iraq or the Ministry of Industry because "personal jurisdiction under the

FSIA equals subject matter jurisdiction plus a valid service of process," and subject matter

jurisdiction does not exist; (3) "the Complaint fails to state any claim upon which this Court can

grant any relief against Iraq," because the French Judgment "exist[s] only against the Ministry of

Industry" and "there exists no French court judgment against Iraq," and (4) Plaintiff cannot

enforce any judgment against Iraqi assets located in the United States because "Executive Order

13364 immunizes all such Iraqi assets 'against any attachment, judgment, decree, lien, execution,

garnishment or other judicial process' of any U.S. Court" and "the Complaint does not identify

any [other] assets of the Ministry of Industry or Iraq that are not immune under either FSIA

§§ 1610 [or] 1611." (Mem. of Law in Supp. of Defs.' Mot. to Dismiss Compl., dated Aug. 3,

2009 ("Defs. MTD"), at 1–5, 7 (quoting Exec. Order No. 13,364, 69 Fed. Reg. 70,177 (Nov. 29,

2004)).)

---

represented," awarded SerVaas Inc. a judgment of "US $14,152,800 together with interest . . . **in respect of an obligation which does not appear to be seriously contestable.**" (French Judgment at 3, 4 (emphasis added); Hr'g Tr. at 4:16-25 ("MR. MILLS: My understanding of the French action was that it was an action to enforce the right to arbitrate, and because there was a default, the French court entered a judgment. THE COURT: Right. So they didn't order that both parties go to arbitration. They actually decided that your client was in the wrong and ordered a judgment in favor of the Plaintiff. Isn't that right? MR. MILLS: That's correct. Against the Ministry of Industry.").)

On August 13, 2009, Plaintiff filed an opposition to Defendants' motion arguing, among other things, that: (1) the Complaint "provides more than adequate 'notice' of the facts underlying the applicability of the FSIA 'commercial activity' exception"; the Ministry "contracted for and received goods, services, and proprietary technology from a United States company" and "Iraq must be held liable for the acts [of] the Ministry as its 'alter ego'"; (2) "Defendants do not dispute that they were validly served"; (3) "[u]nder well-recognized international law and federal law principles, Iraq can be held liable for [the French] Judgment because . . . as a legal matter, Iraq and the Ministry are the same legal entity"; and (4) "the issue of whether SerVaas can ultimately enforce a United States judgment as against Iraq's assets in the United States is not an element of a cause of action for recognition of a foreign judgment (or any other cause of action)."[2]  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, dated Aug. 13, 2009 ("Pl. MTD Opp'n"), at 14, 18, 20–21, 23 (quoting Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., KG v. Navimpex Centrala Navala, 989 F.2d 572, 583 (2d Cir. 1993)) (emphasis in original).)  Along with its opposition, Plaintiff submitted a declaration executed by its owner and principal, Dr. Beurt SerVaas, M.D. ("Dr. SerVaas"), with eleven attached exhibits.  (See Decl. of Dr. Beurt SerVaas in Opp'n to Defs.' Mot. to Dismiss, dated Aug. 13, 2009 ("SerVaas Decl.").)

On September 8, 2009, Defendants filed a reply arguing, among other things, that "[t]he issue of whether [Iraq] is the same legal person as the Ministry of Industry for purpose of the

---

[2]     Plaintiff alleges, alternatively, that the Court has original jurisdiction over this action in diversity pursuant to 28 U.S.C. § 1332.  (See Compl. ¶ 4); but see Virtual Countries Inc. v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (the FSIA "provides the sole basis for obtaining subject matter jurisdiction over a foreign sovereign in the United States" (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992) (internal alterations omitted))); see also Commonwealth of Puerto Rico ex rel. Comm'r of Fin. Insts. v. Euro Pac. Bank Ltd., 661 F. Supp. 1082, 1083 (D.P.R. 1987).

Court's jurisdiction over [Iraq] . . . is not one of Federal law, but instead strictly one of Iraqi law, and is conclusively settled by Iraqi law contrary to Plaintiff's claims." (See Defs.' Reply Mem. in Supp. of Defs.' Mot. to Dismiss the Compl., dated Aug. 28, 2009 ("Defs. MTD Reply"), at 5–9 & n.7.) With their Reply, Defendants submitted a document styled "Notice of Intent to Raise Issue About Law of the Republic of Iraq (Fed. R. Civ. P. 44.1) [and] Request for Judicial Notice & Consideration of Certain Materials Concerning the Laws of the Republic of Iraq Relevant to Issues Raised in the Defendants' Motion to Dismiss" ("Defs. Notice of Intent"), along with supporting declarations (regarding Iraqi law), executed on August 26, 2009 by Fakhri Kadhum, and on August 27, 2009 by Omar Ghassan Jamil Al-Wiswasi.[3] (See Defs. Notice of Intent, dated Aug. 28, 2009; Decl. of Fakhri Kadhum in Supp. of Defs.' Mot. to Dismiss, dated Aug. 26, 2009 ("Kadhum Decl."); Decl. of Omar Ghassan Jamil Al-Wiswasi in Supp. of Defs.' Mot. to Dismiss, dated Aug. 27, 2009 ("Al-Wiswasi Decl.").)

Also on September 8, 2009, Defendants moved pursuant to Fed. R. Civ. P. 56(e) to strike portions of the SerVaas Declaration, arguing that twenty-nine of the Declaration's thirty-three paragraphs are, among other things, based upon a "lack of personal knowledge," "conclusory allegations of purported fact," "improper legal argument," "irrelevant," "immaterial," "inadmissible hearsay," "inadmissible parol evidence," and/or "in violation of the best evidence rule." (See Mem. of Law in Supp. of Defs.' Mot. to Strike Decl. of Beurt SerVaas in Opp'n to Defs.' Mot. to Dismiss, dated Sept. 8, 2009 ("Defs. Mot. to Strike").)

---

[3]     Mr. Kadhum received a law degree in 1972 from the University of Al-Mustanserey in Baghdad, Iraq, and an LL.M. in 1982 from the University of Southampton in England.  He was an attorney with the Iraqi Government from 1986 until his 2005 retirement; from 2003 through 2005, he was Director General of the Legal Department of the Ministry of Justice of the Republic of Iraq. (Kadhum Decl. at 1–3.) Mr. Al-Wiswasi received a law degree in 1994 from Heritage College in Baghdad, Iraq, and was appointed Acting Director General of the Legal Department of the Ministry of Justice of the Republic of Iraq on June 10, 2009. (Al-Wiswasi Decl. at 2.)

On October 6, 2009, Plaintiff filed an opposition to Defendants' motion to strike arguing, among other things, that "Dr. SerVaas state[d] in his declaration that his testimony was based upon personal knowledge" and that Iraq is "wrong" to argue that "Dr. SerVaas'[s] testimony or the documents he introduces into evidence are irrelevant [or] should . . . be stricken on hearsay grounds [or] pursuant to the 'best evidence rule' or the parol[] evidence rule." (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Strike, dated Oct. 6, 2009 ("Pl. Mot. to Strike Opp'n"), at 1–2.)

On October 13, 2009, Defendants filed a reply in support of their motion to strike. (See Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Strike Decl. of Beurt SerVaas in Opp'n to Defs.' Mot. to Dismiss Compl., dated Oct. 13, 2009 ("Defs. Mot. to Strike Reply").)

On February 18, 2010, the Court heard oral arguments.[4]

**For the reasons set forth below, Defendants' motion to dismiss is denied in its entirety. Defendants' motion to strike is also denied.[5]**

## II.    Background

On September 10, 1988, SerVaas Inc., an Indiana corporation, entered into a (preliminary) contract with the "Ministry of Industry, Al-Shaheed Factory, Anbar, Iraq," pursuant to which the Ministry of Industry agreed to pay SerVaas Inc. $40,602,000.00 in exchange for the provision of proprietary "technology, know-how and technical documents" developed by SerVaas Inc. that would enable the Ministry of Industry to remove the silicon from

---

[4]     Included in the oral argument is the following colloquy: "THE COURT: Why do we need all these motions and proceedings and arbitration and courts of appeals and now New York? Why don't business people just get together, pay their debts, work them out? . . . MR. MILLS: . . . It's to defend the dignity of the arbitration clause. THE COURT: But you didn't go to arbitration. How can you stand here and tell me that you are here to defend the dignity of the arbitration clause when you failed to go to arbitration?" (Hr'g Tr. at 6:16–7:9.)

[5]     The Court is not here ruling upon the ultimate merits of Plaintiff's claim.

some 70,000 tons of brass scrap metal, thereby yielding commercial-grade copper.[6] (SerVaas Decl. ¶¶ 4–10 & Ex. B (Contract, dated Sept. 10, 1988 ("Preliminary Contract")), at 1–2, 4.) The Preliminary Contract provided that it would "not become final and binding on either party . . . unless it has been approved by the appropriate governmental authority of Iraq by December 31, 1988." (Preliminary Contract ¶ 5.1.) Final approval was to "be evidenced by a Telex from" the Ministry of Industry to SerVaas, Inc. "stating the date of such approval." (Preliminary Contract ¶ 5.1.)

The contract "became final and binding on both parties . . . upon the approval by the appropriate governmental authority of Iraq" ("Contract"). (SerVaas Decl. Ex. D (Contract, dated Aug. 10, 1989), ¶ 5.1.) Approval was conveyed to Plaintiff by a Telex sent on October 6, 1988, addressed to "SerVaas Incorporated, Dr. Beurt SerVaas" and signed by "Farouk B. Yacoub, Al-Shaheed Factory Director" ("Oct. 6, 1988 Telex"). (See SerVaas Decl. Ex. E (Oct. 6, 1988 Telex) ("We would like to inform you that the contract has been approved by our higher authority and we are proceeding on opening the [letter of credit.]").) According to Plaintiff, the Oct. 6, 1988 Telex demonstrates that "[t]he Republic of Iraq gave the necessary approval for the Contract to become binding." (SerVaas Decl. ¶ 12.) On November 14, 1988, a second Telex, which was addressed to "SerVaas Incorporated, Mr. Clarence Ormsby" and was signed by "Al-Shaheed Factory Director," notified Plaintiff that a letter of credit had been opened in its favor at Banco del Lavoro in Atlanta.[7] (See SerVaas Decl. Ex. F (Telex from Al-Shaheed Factory

---

[6]     The facts as stated in the Complaint are taken as true for the purposes of this motion, except where noted. See Goldberg v. UBS AG, No. 08 Civ. 375, 2009 WL 3077118, at *1 (E.D.N.Y. Sept. 24, 2009). Defendants' motion to strike portions of the SerVaas Declaration is addressed in Part IV.I, infra.

[7]     According to Plaintiff, "Iraq (by its Central Bank) opened an irrevocable letter of credit (in the amount of $40,602,000 and to SerVaas' favor) in the United States at the Atlanta branch

Director to Clarence Ormsby, dated Nov. 14, 1988 ("Nov. 14, 1988 Telex").)  Plaintiff asserts that, through the Nov. 14, 1988 Telex, "Iraq advised that it had opened the requisite irrevocable letter of credit[.]" (SerVaas Decl. ¶ 15.)

Between 1988 and 1990, payments were made to SerVaas Inc. in the United States, "by way of agreed-upon draws on the irrevocable letter of credit the Ministry had established with the Atlanta branch of Banco Del Lavoro." (SerVaas Decl. ¶ 19.)  Plaintiff asserts that "[i]n accordance with the Contract, Iraq made millions of dollars of payments to SerVaas[.]" (Servaas Decl. ¶ 19.)

Plaintiff further asserts that, following Iraq's 1990 invasion of Kuwait, SerVaas Inc.'s "continued performance under the Contract was precluded by United States Executive Orders (dated August 2 and 10, 1990)"; that SerVaas Inc. properly "terminated the Contract pursuant to its terms, and demanded payment then due"; and that "[n]otwithstanding that Iraq received the fruits of the Contract . . . Iraq (and the Ministry) failed to pay SerVaas." (SerVaas Decl. ¶¶ 21–22.)

SerVaas Inc., as noted above, (see n.1, supra), filed an arbitration request with the International Court of Commerce in Paris, as provided under the Contract, and nominated its arbitrator on November 6, 1990. (French Judgment at 4.)[8]  The Ministry was duly advised of the

---

of Banco del Lavoro." (Pl. Opp'n at 8; see also Hr'g Tr. at 17:2-8 ("MR. PISKORA:  I just wanted to correct the factual record.  The Iraqi Central Bank is the one that established a line of credit with the U.S. Banks.  THE COURT:  That's what I thought.  MR. MILLS:  But the Central Bank of Iraq establishes that line of credit based on Ministry [of Industry] funds and it is the only entity – by the way, it is a separate legal entity of itself.").)

[8]    Article 24 of the Contract is captioned "Arbitration" and provides:  "Any dispute arising out of, or in connection with, this Contract which is not amicably resolved between the parties shall be finally settled according to the Rules of Arbitration and Conciliation of the International Chamber of Commerce by three arbitrators in accordance with said rules." (SerVaas Decl. Ex. D at 15.)

arbitration proceedings but did not nominate its own arbitrator or, apparently, respond to the arbitration request. (See French Judgment at 4 ("[T]he Arbitral Tribunal is not constituted to date, owing to the default of the Ministry of Industry[.]"); Hr'g Tr. at 3:22–4:3.) Given the Ministry's failure to respond, SerVaas Inc. commenced an action against the Ministry before the Paris Commercial Court "in order to obtain an order for [the Ministry] to pay" the amount due under the Contract, i.e., $14,152,800 ("French Action"). (French Judgment at 2; see also Compl. ¶ 6.) The Ministry was properly served in the French Action, as "the writ of summons [was] delivered through diplomatic channels and served at the Iraqi Embassy in Paris, which agreed to accept it." (French Judgment at 2–3.) Following a public hearing on April 16, 1991, at which the Ministry did not appear and was not represented, the Paris Commercial Court issued the French Judgment, ruling that "[t]he Ministry of Industry of the Republic of Iraq is ordered to pay by way of interim payment to SerVaas, Inc. the sum of US $14,152,800 together with interest thereon at the legal rate as from April 5, 1991," because the Ministry's "obligation [to pay] does not appear to be seriously contestable." (French Judgment at 4–5; see also Compl. ¶ 7.)

The Ministry of Industry did appear for the purpose of appealing the French Judgment and was unsuccessful in at least three subsequent proceedings in France.[9] (Compl. ¶¶ 8–10 &

---

[9]     See Compl. Exs. 4 (Order of Paris Court of Appeal, dated Mar. 16, 1992 (English Translation, dated Feb. 25, 2009) (denying application of Ministry of Industry "to be relieved of the preclusion from appealing resulting from the expiry of the time limit for appealing")); 6 (Order of Paris Court of Appeal, dated Oct. 20, 1992 (English Translation, dated Feb. 25, 2009) (holding that "service delivered on May 22, 1991" to the Ministry was "valid and regular" and "consequently . . . that the appeal lodged on November 28, 1991, by the Ministry of Industry of Iraq is inadmissible for being out of time")); 8 (Judgment of Paris Court of Appeal, dated Oct. 4, 1996 (English Translation, dated Feb. 25, 2009) (denying leave to appeal)).

As of February 28, 2009, the French Judgment had accrued $23,872,796.64 in interest, bringing to $38,025,596.64 the amount allegedly owed to SerVaas Inc. (Compl. ¶ 18 & Ex. 9.)

8

Exs. 4, 6, 8; SerVaas Decl. ¶ 25; see Hr'g Tr. at 5:24–6:3 ("THE COURT:  [Your client] lost in

each instance in the French courts and courts of appeal, if I understand it correctly.  MR. MILLS:

Yes.  We don't contest there is a final judgment of the French court, yes, your Honor."), 7:20–

21.)  Plaintiff asserts that the French Judgment is enforceable until the year 2017 throughout the

European Union.  (SerVaas Decl. ¶ 27; see also Compl. ¶ 11 ("At the time it was rendered, the

French Judgment was enforceable for a period of thirty years.  In 2008, France amended its laws

concerning the enforceability of judgments, and the French Judgment is now enforceable

[through] 2017.").)

Iraq was not named as a separate party in the Arbitration or the French Action and did not

separately appear at any time during those proceedings, including subsequent appeals.  (SerVaas

Decl. ¶¶ 23–27; Defs. MTD at 14; Compl. Exs. 2, 4, 6, 8.)  The named defendant in the French

Action was "Ministry of Industry of the Republic of Iraq," and all appeals were filed by

"Ministry of Industry of the Republic of Iraq."  (See Compl. Exs. 2, 4, 6, 8.)

On August 27, 1992, Iraq entered into an agreement with SerVaas ("Freeze Agreement")

through which Iraq paid SerVaas $100,000 to postpone SerVaas's "enforc[ing] the [French]

[J]udgment against Iraq in the Netherlands . . . by means of selling at a public auction certain

goods belonging to Iraq and arrested by SerVaas."  (SerVaas Decl. Ex. K (Freeze Agreement,

dated Aug. 27, 1992), at 1, 3.)  The named parties to the Freeze Agreement were "Servaas Inc."

and "The State of Iraq, more in particular the Ministry of Industry of the State of Iraq."  (Freeze

Agreement at 1.)  The Agreement was executed for the "State of Iraq" by Fakhri Kadhum, (see n.

3, supra), and Noori Taih, who are identified as Head of the Legal Consultation Bureau of the

Ministry of Industry of the State of Iraq and General Manager of the Legal Department of the

Ministry of Industry of the State of Iraq, respectively.  (Freeze Agreement at 4.)  **The Freeze**

Agreement provides, among other things, that "SerVaas has obtained a judgment dated 16th April, 1991 against Iraq in France, in which Iraq is ordered to pay to SerVaas US $14,152,800" and that "Iraq herewith acknowledges unconditionally that it owes SerVaas an amount of US $7,500,000 . . . which amount relates to . . . the contract between the Ministry of Industry of Iraq and SerVaas." (Freeze Agreement at 1–3.)

## III.   Legal Standard

### Motion to Strike

Though a court "may not rely on conclusory or hearsay statements contained in . . . affidavits," J.S. ex rel N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004), it need not "conduct a line-by-line analysis" and, instead, may "simply disregard any material that does not comply with" the Federal Rules of Civil Procedure and/or Federal Rules of Evidence. Primmer v. CBS Studios, Inc., No. 08 Civ. 9422, 2009 WL 2876248, at *3 (S.D.N.Y. Sept. 8, 2009) (citing Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Free Sch. Dist., No. 05 Civ. 9087, 2009 U.S. Dist. LEXIS 46196, at *30 (S.D.N.Y. June 2, 2009)).

### Motion to Dismiss

If a defendant presents a prima facie case that it is a foreign state, "the burden shifts to the plaintiff to demonstrate that one of the exceptions articulated in the FSIA applies." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 393 (S.D.N.Y. 2009). For the "commercial activity" exception to apply, see 28 U.S.C. § 1605(a)(2), "the lawsuit for which jurisdiction is sought must be (1) based upon an act outside the territory of the United States; (2) that was taken in connection with a commercial activity of the foreign state outside this country; and (3) that caused a direct effect in the United States." Hilaturas Miel, S.L. v. Republic of Iraq, 573 F.

Supp. 2d 781, 793 (S.D.N.Y. 2008) (internal citations and alterations omitted) (quoting Virtual Countries, 300 F.3d at 236).

"[O]n a Rule 12(b)(1) motion to dismiss involving a foreign state where the Court's jurisdiction over the foreign state is contested, the Court must look beyond the pleadings to the factual record to determine whether to grant the motion to dismiss." U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., No. 97 Civ. 6124, 1999 WL 307666, at *1 (S.D.N.Y. May 17, 1999) (emphasis added) (citing Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990)); see also Robinson v. Gov't of Malay., 269 F.3d 133, 140 (2d Cir. 2001); Antares Aircraft, L.P. v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991). The Court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Braspetro Oil, 1999 WL 307666, at *1.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor." Linzer Prods. Corp. v. Sekar, 499 F. Supp. 2d 540, 547 (S.D.N.Y. 2007). At the same time, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

New York's Uniform Foreign Money-Judgments Recognition Act is the State's codification of the principles of comity. See S.C. Chimexim S.A. v. Velco Enters. Ltd., 36 F. Supp. 2d 206, 211 (S.D.N.Y. 1999); N.Y. C.P.L.R. §§ 5301 et seq. A plaintiff must allege that it

"holds a final, conclusive and enforceable foreign judgment." S.C. Chimexim, 36 F. Supp. 2d at

213; see also id. at 211 ("New York law governs actions brought in New York to enforce foreign

judgments." (citing Canadian Imperial Bank of Commerce v. Saxony Carpet Co., 899 F. Supp

1248, 1252 (S.D.N.Y. 1995))).  The question of "whether the award would be enforced under

New York law . . . and whether the judgment would be recognized under Article 53 [of the

C.P.L.R.] are entirely separate and distinct questions." Island Territory of Curaçao v. Solitron

Devices, Inc. ("Solitron II"), 489 F.2d 1313, 1321 n.8 (2d Cir. 1973) (emphases added).

A plaintiff can overcome the presumption that "duly created instrumentalities of a foreign

state" are "independent of the countries that create them. . . by demonstrating that the

instrumentality is the agent or alter ego of the foreign state." Dale v. Colagiovanni, 443 F.3d

425, 429 (5th Cir. 2006) (internal citations omitted) (citing First Nat'l City Bank v. Banco Para

el Comercio Exterior de Cuba ("Bancec"), 462 U.S. 611, 627 (1983); Hester Int'l Corp. v.

Federal Republic of Nigeria, 879 F.2d 170, 176–79 (5th Cir. 1989)); see also Bancec, 462 U.S. at

623, 627, 632, 634; Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian

Federation ("Noga"), 361 F.3d 676, 682 (2d Cir. 2004).  In deciding "whether a federal court

will confirm a foreign arbitration award against a sovereign nation, where one of the sovereign's

political organs was a party to the arbitration, . . . the fact of an internal separation of some sort

between the sovereign and one or more of its organs has been found to be of no legal

significance." Noga, 361 F.3d at 687.

"'Alter ego' has a clearly defined meaning in law; namely, where one entity exercises

complete domination and control over the day-to-day operations of another entity." Greenpoint

Mortg. Funding Inc. v. Stewart Title Ins. Co., No. 6208-04, 2006 WL 2337967, at *2 (N.Y. Sup.

Ct. Aug. 11, 2006); see also Palestinian Monetary Auth. v. Strachman, 873 N.Y.S.2d 281, 289

(App. Div. 1st Dep't 2009) (citing Bancec, 462 U.S. at 626–27).  Where a party "derived a direct

benefit from the contract containing the arbitration provision," All Metro Health Care Servs.,

Inc. v. Edwards, 884 N.Y.S.2d 648, 652 (N.Y. Sup. 2009), or "so participated in the [arbitration]

proceeding," it will be estopped from "raising any question of being a nonsignatory to the

agreement." Biller v. David, 326 N.Y.S.2d 220, 222 (App. Div. 1st Dep't 1972); see also

Thomson-C.S.F., S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995).

**IV.     Analysis**

   **Motion to Strike**

   Defendants move to strike part or all of twenty-nine (of the thirty-three) paragraphs

contained in the SerVaas Declaration, arguing that Dr. SerVaas "is loose with his representation

of 'facts' through distortions that, among other things, run afoul of the Federal Rules of

Evidence" regarding hearsay, best evidence, parol evidence, relevance, and materiality.  (Defs.

Mot. to Strike at 1.)  Plaintiff responds that Dr. Servaas's declaration "was based upon his

personal knowledge" and "is proper in all respects" and, "even were this Court to disagree, no

part of [Defendants'] motion to strike should be granted where, as here, movants have not

established any prejudice."  (Pl. Mot. to Strike Opp'n at 4, 9.)

   Defendants' motion to strike is denied.  See Primmer, 2009 WL 2876248, at *3.  Dr.

SerVaas's Declaration is based upon his personal knowledge of the relevant facts.  (See SerVaas

Decl. ¶ 1.)  To the extent that Dr. SerVaas's declaration "uses conclusory or argumentative

language, the Court will not make the suggested inferences simply because [Dr. SerVaas] has

suggested them." Primmer, 2009 WL 2876248, at *3.  "The [C]ourt will peruse the documentary

evidence and draw its own conclusions based on that evidence[.]" New York v. Solvent Chem.

Co., 218 F. Supp. 2d 319, 331 (W.D.N.Y. 2002); see also Hollander v. Am. Cyanamid Co., 999 F. Supp. 252, 255–56 (D. Conn. 1998).

**Motion to Dismiss**

**Ministry of Industry**

(1)     **Jurisdiction – Fed. R. Civ. P. 12(b)(1) & (2)**

Defendants argue that "no United States court possesses either subject matter or in personam jurisdiction over the Ministry of Industry" because the Ministry of Industry "did not waive . . . foreign sovereign immunity . . . as to any legal actions or claims [that] conceivably could be brought in any United States court arising from the [C]ontract . . . including enforcement of any French court judgment that might result from such claims." Defendants also "dispute that the activity of either the Republic of Iraq or the Ministry of Industry under the Contract had a sufficient direct effect in the United States to vest the Court with jurisdiction under 28 U.S.C. § 1605(a)(1)." (Defs. MTD at 1, 10–11; Defs. MTD Reply at 12–13 (emphases in original).) Plaintiff responds that "the purchase of goods, services, and technology from a United States company is quintessential 'commercial' conduct under the FSIA" and that "Defendants' commercial activities clearly had a 'direct effect' in the United States, as (1) all of the machinery, plans, and technology were delivered to Defendants by SerVaas, a United States company; and (2) Defendants failed to pay SerVaas in the United States pursuant to the parties' agreement." (Pl. MTD Opp'n at 15–16.)

The "commercial activity" exception to sovereign immunity allows a court to exercise jurisdiction over a claim that is "[i] 'based upon' some [ii] 'commercial activity' by the foreign state that [iii] had 'substantial contact' with the United States." Swarna v. Al-Awadi, 607 F. Supp. 2d 509, 524 (S.D.N.Y. 2009) (internal alterations omitted) (quoting Saudi Arabia v.

Nelson, 507 U.S. 349, 356 (1993)); see Hilaturas Miel, 573 F. Supp. 2d at 793. "A foreign state engaging in 'commercial' activities does not exercise powers peculiar to sovereigns; rather, it exercises only those powers that can also be exercised by private citizens." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (internal citations and alterations omitted) (quoting Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 704 (1976)); see also Tx. Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 310 (2d Cir. 1981), overruled on other grounds by Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic, 583 F.3d 393 (2d Cir. 2009).

    This Court has both subject matter and personal jurisdiction with respect to the Ministry of Industry.  See Tx. Trading, 647 F.3d at 310.  While the Ministry may be considered a foreign state, see 28 U.S.C. §§ 1603(a) ("foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state"), 1607; RSM Prod. Corp., 643 F. Supp. 2d at 393, the "commercial activities" exception applies because there is ample evidence that SerVaas and the Ministry entered into the Contract for the sale and provision of goods outside the United States; the Ministry's entering into such Contract is a "power[] that can also be exercised by private citizens"; and the Contract involved, among other things, "five (5) tons of shell casings" being shipped "to Contractor at a designated address in the U.S.A." (SerVaas Decl. Ex. D ¶ 5.4; see SerVaas Decl. Exs. B–F); Tx. Trading, 647 F.2d at 310 n.27 ("the definition of 'commercial activity' has been . . . expanded to include . . . a contract made by a government for a public purpose"); Reiss v. Société Centrale du Groupe des Assurances Nationales, 235 F.3d 738, 747 (2d Cir. 2000) ("[T]here must be 'a significant nexus . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action.'" (quoting NYSA-ILA Pension Trust Fund v. Garuda Indon., 7 F.3d 35, 38 (2d Cir. 1993))); see also McDonnell

Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 348–49 (8th Cir. 1985); Nat'l Am.

Corp. v. Federal Republic of Nigeria, 448 F. Supp. 622, 641–42 (S.D.N.Y. 1978); H.R. Rep. No.

94-1487, at *17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6615 (definition of "substantial

contacts" includes, among other things, "commercial transactions performed in whole or in part

in the United States, import-export transactions involving sales to, or purchases from, concerns

in the United States").

And, because the Ministry does not dispute that service of process was properly made,

there is personal jurisdiction. (Defs. Mem. at 6–8); see Capital Ventures Int'l v. Republic of

Argentina, 552 F.3d 289, 293 n.3 (2d Cir. 2009) ("[P]ersonal jurisdiction over a foreign state

exists when the FSIA permits a suit against that state and the service of process requirements set

forth in 28 U.S.C. § 1608 have been satisfied[.]").

### Republic of Iraq

#### (1)    Jurisdiction – Fed. R. Civ. P. 12(b)(1) & (2)

Defendants argue that "the Ministry of Industry entered into a . . . contract with SerVaas,

but did so only in its own name, and on its own behalf, and not in the name of or on behalf of

Iraq or any other political subdivision, agency or instrumentality of Iraq"; "SerVaas commenced

arbitration [and received a judgment] only against the Ministry of Industry"; and the Ministry of

Industry "took appeals [of the French Judgment] solely and exclusively in its own name and on

its own behalf, and not in the name of Iraq." (Defs. MTD at 10–14 (emphasis in original).)

Defendants also assert that the "settled law of Iraq . . . conclusively provides and establishes that

the foreign sovereign State of the Republic of Iraq and the Ministry of Industry of the Republic

of Iraq are entirely separate legal (juridical) persons from each other." (Defs. MTD Reply at 6, 8

n.7 (internal quotations omitted).)

Plaintiff counters, among other things, that "the Ministry is merely a political subdivision of the government of Iraq (i.e., the Ministry's 'core functions' are governmental), [so] as a legal matter, Iraq and the Ministry are the same legal entity . . . and/or Iraq must be held liable for the acts [of] and Judgment rendered against the Ministry as its 'alter ego.'" (Pl. MTD Opp'n at 21.)

"[N]o meaningful legal distinction can be drawn between" Iraq and the Ministry of Industry. Noga, 361 F.3d at 688; see Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines, 965 F.2d 1375, 1381, 1384–86 (5th Cir. 1992); see also Noga, 361 F.3d at 687; Figueiredo Ferraz Consultoria e Engenheria de Projeto Ltda. v. Republic of Peru, 655 F. Supp. 2d 361, 371 (S.D.N.Y. 2009) ("Therefore, the Program is the Republic's political organ and there is no meaningful legal distinction between them for confirmation of the Award."). While there is a presumption that a government-created entity should be afforded the juridical status given to it by its government, see Bancec, 462 U.S. at 627; (see also Kadhum Decl. at 5; Al-Wiswasi Decl. at 4, 8 ("[U]nder the applicable Iraqi law[,] only the Ministry that enters into a contract can be held liable by the other party to the contract for breach of contract.")), the presumption is here rebutted. See Noga, 361 F.3d at 687 ("[T]he fact of an internal separation of some sort between the sovereign and one or more of its organs [is] of no legal significance."); O'Connell Mach. Co. v. M.V. "Americana", 734 F.2d 115, 116 (2d Cir. 1984); Garb v. Republic of Poland, 207 F. Supp. 2d 16, 38 (E.D.N.Y. 2002), vac'd and remanded on other grounds, 72 F. App'x 850 (2d Cir. 2003); see also Bancec, 462 U.S. at 629, 633; Bangor Punta Operations, Inc. v. Aroostook R.R. Co., 417 U.S. 703, 713 (1974); Noga, 361 F.3d at 688 nn.11 & 12; Banco Nacional de Cuba v. Chem. Bank N.Y. Trust Co., 782 F.2d 377, 379 (2d Cir. 1986) ("The teaching of the Supreme Court in Bancec is that, while government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such, the

17

determination in each case . . . must be informed by principles of equity and common law."
(internal quotations and citations omitted)).

The factors that rebut the presumption of the Ministry's independence are as follows:
(A) the Preliminary Contract required that the Ministry of Industry receive approval from "the
appropriate governmental authority of Iraq" before the agreement could be finalized, and the
Contract reflects that "approval by the appropriate governmental authority of Iraq" was indeed
given, (Preliminary Contract ¶ 5.1; Contract ¶ 5.1); (B) the Telex confirming such approval was
sent by the Director of the Al Shaheed Factory and states "that the contract has been approved by
our higher authority" – i.e., presumably an authority above the Ministry, (Oct. 6, 1988 Telex; see
Contract ¶ 1.1 ("Customer: Means the Ministry of Industry, Al Shaheed Factory, Ameria-
Falluja, Anbar, Iraq")); (C) the Central Bank of Iraq established the line of credit at an American
bank branch, through which the Ministry paid SerVaas Inc., (see Hr'g Tr. at 17:6-7); and (D) the
Freeze Agreement: (i) provides that debts owed pursuant to the Contract were owed to SerVaas
Inc. by "Iraq," defined as "The State of Iraq, more in particular the Ministry of Industry"; (ii)
provides that the French Judgment obligated the State of Iraq to pay SerVaas Inc., (Freeze
Agreement at 1 ("SerVaas has obtained a judgment dated 16th April, 1991 against Iraq in
France, in which Iraq is ordered to pay SerVaas US $14,152,800 . . . .)); and (iii) was signed in
the name of the "State of Iraq" by lawyers from the Ministry of Industry, indicating that "no
meaningful distinction" can be drawn between the two Defendants here. (Freeze Agreement at
1); see Bridas S.A.P.I.C. v. Gov't of Turkm., 345 F.3d 347, 359 (5th Cir. 2003) (listing factors to
be considered in analyzing alter ego allegations in FSIA context); Noga, 361 F.3d at 688; see
also Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307–
09 (1st Cir. 1998) (considering signatory authority in determining alter ego liability); World Fuel

Servs. Eur. v. Republic of Iraq, No. 09 Civ. 629 (D. Md. Dec. 18, 2009) (entering default judgment "against Defendant the Republic of Iraq and the State Enterprise for Water Transport of the Republic of Iraq, both jointly and severally").[10]

The Court is unpersuaded by Defendants' citation to the holding of the International Court of Arbitration ("I.C.A."), in Greek Powder & Cartridge Co. S.A. (Greece) v. The Ministry of Defence (Iraq) ("Pyrkal"), that "the legal nature of the Ministry [of Defence] was a question to be determined under the laws of Iraq." Case No. 7094/CK/AER/ACS ("Pyrkal Decision"), at *30 (Jan. 31, 2003); (see Kadhum Decl. Ex. 1 (Pyrkal Decision).) As the Bancec Court noted, "the International Court of Justice [has] acknowledged that, as a matter of international law, the separate status of an incorporated entity may be disregarded in certain exceptional circumstances . . . 'for instance, to prevent misuse of the privileges of legal personality . . . or to prevent the evasion of legal requirements or of obligations.'" Bancec, 462 U.S. at 629 n.20 (quoting Case Concerning the Barcelona Traction, Light & Power Co., 1970 I.C.J. 3, 38–39); see also Pyrkal Decision at 17–30. The Supreme Court's decision in Bancec, and not the I.C.A.'s in Pyrkal, is controlling. See The Paquete Habana, 175 U.S. 677, 700 (1900) ("International law is part of our law, [but only] where there is no treaty and no controlling executive or legislative act or judicial decision[.]"); see also Comm. of U.S. Citizens Living in Nicar. v. Reagan, 859 F.2d 929, 939 (D.C. Cir. 1988); Bancec, 462 U.S. at 623, 633–34.

---

[10]     Because the presumption of the Ministry's independence is rebutted, see Noga, 351 F.3d at 687–88; Dale, 443 F.3d at 429, the analysis of the "commercial activities" exception to immunity at pp. 14–15, supra, applies to the Republic of Iraq. See Walter Fuller Aircraft Sales, 965 F.2d at 1381, 1384–86 ("the level of interrelationship evidenced . . . enabled the court to conclude that the [Philippines] and the [government-created entity] were jointly liable for the conduct of each other" and to find jurisdiction proper).

### (2)    Alleged Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

Defendants argue pursuant to Fed. R. Civ. P. 12(b)(6) that Plaintiff cannot state a claim

upon which relief can be granted against Iraq under New York law because:  (1) Iraq "was not a

party to the French [Judgment]" and "was not then and is not now a Contracting Party to the

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 [('New

York Convention')]" and "a non-party cannot be bound by an arbitration award unless it clearly

and unambiguously demonstrates an intent to arbitrate the submitted dispute"; and (2) Plaintiff

would not be able to enforce the French Judgment against Iraq (even if it were to be recognized

by this Court) because Iraqi assets in the United States have been rendered immune against

execution by:  [i] a series of United States Executive Orders; and [ii] the FSIA's general asset

immunity provisions.  (Defs. MTD at 15, 19, 22 (emphasis in original)); see Fed. R. Civ. P.

12(b)(6).

Plaintiff argues that Iraq's motion to dismiss pursuant to Rule 12(b)(6) should be denied

because:  (1) "the [French] Judgment can be recognized and enforced as against Iraq pursuant to

binding Supreme Court and Second Circuit precedent" regarding alter ego liability; and (2) "the

issue of whether SerVaas can ultimately enforce a United States judgment as against Iraq's assets

in the United States is not an element of a cause of action for recognition of a foreign judgment

(or any other cause of action)."  (Pl. Opp'n at 23 (emphasis in original).)

#### Recognition

New York's Uniform Foreign Money-Judgments Recognition Act ("Article 53") applies

to "any foreign country judgment which is final, conclusive and enforceable where rendered

even though an appeal therefrom is pending or it is subject to appeal."  N.Y. C.P.L.R. § 5302.  A

foreign country judgment is considered "conclusive between the parties to the extent that it

grants or denies recovery of a sum of money," id. § 5303, unless (1) "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law"; or (2) "the foreign court did not have personal jurisdiction over the defendant." Id. § 5304; see also CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V., 792 N.E.2d 155, 159 (N.Y. 2003); S.C. Chimexim, 36 F. Supp. 2d at 212. Recognition of a foreign judgment under Article 53 is "entirely separate and distinct" from the enforcement of that judgment. Solitron II, 489 F.2d at 1321 n.8; see also Byblos Bank Eur. S.A. v. Syrketi, 819 N.Y.S.2d 412, 414 (Sup. Ct. 2006) ("Recognition is the process by which a foreign country judgment is 'converted' into a New York judgment. Once converted into a New York judgment . . . the foreign judgment becomes enforcible [sic] like a New York judgment.").

Plaintiff states a claim against the Republic of Iraq under Article 53. See Island Territory of Curaçao v. Solitron Devices, Inc. ("Solitron I"), 356 F. Supp. 1, 14 (S.D.N.Y. 1973). It is not disputed that the French Judgment is both "final" and "enforceable where rendered." (See Hr'g Tr. at 6:2-3 ("MR. MILLS: . . . We don't contest there is a final judgment of the French court, yes, Your Honor.").) Nor is it argued that the International Chamber of Commerce, the Paris Commercial Court, or the Paris Court of Appeal are not "impartial tribunals." And, while Iraq was not a party to the French Judgment, in that the Ministry of Industry was the named party against whom the Judgment was rendered, under New York law the French Judgment can be recognized against Iraq "by ordinary principles of contract and agency." Jefferies & Co., Inc. v. Infinity Equities I, LLC, 887 N.Y.S.2d 81, 82 (App. Div. 1st Dep't 2009); see All Metro, 884 N.Y.S.2d at 652 ("Nonsignatories have thus been held bound by contractual arbitration provisions under 'ordinary principles of contract and agency,' as where it is shown that the nonsignatory assumed the arbitration agreement, or was bound by the agreement under a veil-

piercing/alter ego theory or by estoppel."); see also Thomson-C.S.F., 64 F.3d at 776; In re Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr. ("Monde Re"), 311 F.3d 488, 492 (2d Cir. 2002).  As noted (supra), exercise of personal jurisdiction by the French court over the Ministry extends to Iraq based on principles of alter ego.  See People ex rel. Vacco v. World Interactive Gaming Corp., 714 N.Y.S.2d 844, 849 (Sup. Ct. 1999) ("To establish in personam jurisdiction over [the subsidiary], the [Plaintiff] must show that [the subsidiary] functioned merely as the alter ego of [the parent]."); see also French Judgment at 4.  Iraq is also estopped from "raising any question of being a nonsignatory to the agreement," Biller, 326 N.Y.S.2d at 222, because Iraq "derived a direct benefit from the contract containing the arbitration provision" through its alter ego.  All Metro, 884 N.Y.S.2d at 652.

Furthermore, because the Contract was agreed to by the Ministry, and the Ministry is Iraq's alter ego, Iraq's contention that the award cannot be recognized against it because it never ratified the New York Convention is unavailing.  (See Defs. MTD at 10; see also Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 93–95 (2d Cir. 1999); Jamie Dodge Byrnes & Elizabeth Pollman, Case Comment, "Arbitration, Consent & Contractual Theory:  The Implications of EEOC v. Waffle House," 8 Harv. Negot. L. Rev. 289, 299–304 (2003).

### Enforceability

Plaintiff need not at this time identify assets against which it intends to enforce its judgment.  See Solitron II, 489 F.2d at 1321 n.8; Byblos Bank, 819 N.Y.S.2d at 414.  Iraq's reliance on Executive Order 13,364 is misplaced because, like Executive Order 13,303 (which it modified), Executive Order 13,364 does not create an absolute bar to judgments against Iraq, only a bar to judgments with respect to certain delineated Iraqi assets in the United States.  See

Exec. Order No. 13,364 (Modifying the Protection Granted to the Development Fund for Iraq and Certain Property in Which Iraq Has an Interest and Protecting the Central Bank of Iraq), 69 Fed. Reg. 70,177, 70,177–78 (Nov. 29, 2004); Exec. Order No. 13,303 (Protecting the Development Fund for Iraq and Certain Other Property in Which Iraq Has an Interest), 68 Fed. Reg. 31,931, 31,931 (May 22, 2003).[11]  Plaintiff's future execution of the French Judgment against particular Iraqi assets is not relevant at the motion to dismiss stage. See Solitron II, 489 F.2d at 1321 n.8; (see also Pl. MTD Opp'n at 23 ("[F]ollowing recognition, enforcement of the judgment will follow pursuant to Fed. R. Civ. P. 69 by way of discovery and proceedings on and in aid of execution."); Hr'g Tr. at 8:15-21 ("THE COURT:  But [Plaintiff is] not trying to enforce right now.  If I understand their position, they just want recognition of their judgment. They are not going after any assets yet.  We are not even at that stage.  MR. MILLS:  My understanding from the papers is that they are seeking to have recognition with anticipation of enforcement.").)

---

[11]     In relevant part, Executive Order 13,364 reads:

Section 1. [. . .] [A]ny attachment, judgment, decree, lien, execution, garnishment, or other judicial process is prohibited and shall be deemed null and void with respect to the following:
(i) the Development Fund for Iraq;
(ii) all Iraqi petroleum and petroleum products, and interests therein . . . and proceeds, obligations, or any financial instruments of any nature whatsoever arising from or related to the sale or marketing thereof . . . that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons; and
(iii) any accounts, assets, investments, or any other property of any kind owned by, belonging to, or held by the Central Bank of Iraq, or held, maintained, or otherwise controlled by any financial institution of any kind in the name of, on behalf of, or otherwise for the Central Bank of Iraq.

69 Fed. Reg. at 70,177–78.

## V.    Conclusion

For the reasons stated herein, Defendants' motion to dismiss [#10] and motion to strike [#23] are denied.

The parties (with settlement authority) are directed to appear before the Court for a status and settlement conference on Wednesday, March 3, 2010, at 9:30 a.m., in Courtroom 21B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

**The parties are directed to engage in good faith settlement negotiations prior to the conference.**

Dated: New York, New York
      February 19, 2010

RICHARD M. BERMAN, U.S.D.J.