UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SERVAAS INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CV 1862 (RMB) |
| | ) | |
| v. | ) | |
| | ) | |
| REPUBLIC OF IRAQ and | ) | |
| MINISTRY OF INDUSTRY OF THE | ) | |
| REPUBLIC OF IRAQ, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

_____

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF CROSS MOTION FOR PROTECTIVE ORDER AND OPPOSITION TO MOTION TO COMPEL

_____

MAGGS & MCDERMOTT LLC

Timothy B. Mills (TM-8693)
910 17th Street, N.W., Suite 800
Washington, DC 20006
Telephone: (202) 457-8090
Email: TimothyBMills@aol.com
*Lead Counsel for Defendants*

Tennant D. Magee, Sr. (TM-5871)
800 Old Bridge Road
Brielle, New Jersey
Telephone: (732) 223-9870
Email: tdmagee@yahoo.com
*Co-Counsel for Defendants*

Dated: 8 June 2012

-i-

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................iv

I.     PRELIMINARY STATEMENT ............................................................... 1

II.    FACTUAL BACKGROUND ..............................................................6

III.   ARGUMENT

     A. SerVaas' Post-Judgment Discovery Requests Implicate And Violate
       Defendants' Immunity Provided By The FSIA ...........................................8

     B. The Post-Judgment Immunity Provided By The FSIA Is Broader Than
       The Immunity Provided On Questions Of Liability ……………………………......10

     C. The Second Circuit's Application Of The FSIA To Post-Judgment
       Discovery Requests Bars SerVaas' Discovery Requests …………………………..11

     D. The Seventh Circuit's Application Of The FSIA To Post-Judgment
       Discovery Requests Bars SerVaas' Discovery Requests ……………………………. 15

     E. SerVaas' Discovery Requests For Extraterritorial Discovery Are
       Barred By The FSIA …………………………………………………………………………18

     F. SerVaas' Discovery Requests Upon Non-Party Sovereign Entities
       Are Improper and by Law Not Enforceable ……………………………………………19

     G. SerVaas' Requests Are Overly Broad, Unduly Burdensome, And
       Create Undue Burden And Expense ……………………………………………………20

     H. SerVaas Fails To Comply With The Federal And State Rules
       Regarding Post-Judgment Discovery …………………………………………………...21

     I. Defendants Have Not Waived Their FSIA Immunity Or Other
       Defenses Or Objections To SerVaas' Discovery Requests…………………………....22

IV.     CONCLUSION ……………………………………………………………………25

EXHIBITS

1.      Amicus Curiae Brief on behalf of United States in Rubin v.
        Islamic Republic of Iran, Docket No. 11-431

2.      Declaration of Timothy B. Mills

3.      Declaration of Hasan Nassef

## TABLE OF AUTHORITIES

### Cases

Page

*Aetna Life Ins. Co. v. Licht*, 2005 WL 180873 (S.D.N.Y. Jan. 27, 2005) .......................................................................................24

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080 (9th Cir. 2007) ......................................................................................10

*Ariba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528 (5th Cir. 1992) ................................................12

*Aurelius Capital Partners, LP. v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009) ..............................................................................10, 18

*Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007) ....................................................................10, 15, 18

*Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) ...........................................................3, 4

*Capital Ventures Intern. v. Republic of Argentina*, 552 F.3d 289 (2d Cir. 2009) ......................................................................................24

*Carr v. Queens-Long Island Med. Group, P.C.*, 2003 WL 169793 (S.D.N.Y. Jan. 24, 2003) .................................................................23

*Compania Del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela*, 341 F. App'x 722 (2d Cir. 2009) ...........................................12

*Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y.1984) .......................................12

*Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir. 2002), *cert. denied*, 544 U.S. 962 (2005) ........................................ 4, 9, 10, *passim*

*De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) ........................................10, 11, 19

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d. Cir.), *cert. denied*, 592 U.S. 818 (2007) ...................................................... 3, 10, 11, *passim*

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172 (2d Cir. 1998) ...................................................... 9, 12, 13, *passim*

*First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d
    48 (2d Cir. 2002) ............................................................. 12, 13, 14, *passim*

*First Nat'l City Bank v. Banco Para El Comercio Exterior de
    Cuba*, 462 U.S. 61, 103 S.Ct. 2591 (1983) ...............................19

*Jacoby v. Hartford Life and Accident Ins. Co.*, 254 F.R.D. 477
    (S.D.N.Y. 2009) ............................................................23

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak
    Dan Gas Bumi Negara*, 313 F.3d 70 (2d. Cir. 2002) ..................9

*Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d
    47 (2d Cir. 1982) .........................................................24

*McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372
    U.S. 10 (1963) ...........................................................4

*National City Bank of N.Y. v. Republic of China*, 348 U.S. 356
    (1955) ..................................................................4

*NML Capital, Ltd. v. Banco Central De La Republica Argentina*,
    652 F.3d 172 (2d Cir. 2011) ..............................................12

*Olympic Chartering, S.A. v. Ministry of Industry and Trade of
    Jordan*, 134 F.Supp.2d 528 (S.D.N.Y. 2001) ...................... 8, 9, 19, *passim*

*Persinger v. Islamic Republic of Iraq*, 729 F.2d 841 (D.C. Cir.),
    *cert. denied*, 469 U.S. 881 (1984) .......................................4

*Peterson v. Islamic Republic of Iran*, 627 F.3d 1117
    (9th Cir. 2010) ....................................................3, 4, 10

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ......................4, 10

*Rubin v. The Islamic Republic of Iran*, 637 F.3d 799
    (7th Cir. 2011) ...................................................... 4, 8, 9, *passim*

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's*
  *Democratic Republic*, 2011 WL 4111504
  (S.D.N.Y. Sept. 13, 2011) ...................................................................... 5, 9, 11, *passim*

*The Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116
  (1812) ......................................................................................................................2

*U.S. v. International Business Machines Corp.*, 79 F.R.D. 412
  (S.D.N.Y. 1978) ....................................................................................................23

*Walters v. Industrial and Commercial Bank of China, Ltd.*,
  651 F.3d 280 (2d Cir. 2011) .............................................................. 3, 11, 12, *passim*

<u>Statutes</u>

28 U.S.C. § 1330 ....................................................................................................3

28 U.S.C. § 1603 ....................................................................................................1

28 U.S.C. § 1604 ................................................................................................3, 13

28 U.S.C. § 1605 ...........................................................................................3, 13, 15

28 U.S.C. § 1605A .................................................................................................3

28 U.S.C. § 1607 ....................................................................................................3

28 U.S.C. § 1608 ....................................................................................................5

28 U.S.C. § 1609 ..................................................................................... 1, 2, 3, *passim*

28 U.S.C. § 1610 ..................................................................................... 1, 2, 3, *passim*

28 U.S.C. § 1611 ....................................................................................................3

<u>Rules</u>

CPLR § 5224 ...............................................................................................5, 21, 22

Fed. R. Civ. P. 26 ...................................................................................................................20

Fed. R. Civ. P. 33 ...............................................................................................................5, 22

Fed. R. Civ. P. 34 ...............................................................................................................5, 22

Fed. R. Civ. P. 69 ............................................................................................ 1, 5, 13, *passim*

<u>Miscellaneous</u>

H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976) ........................................................................3

## I.  PRELIMINARY STATEMENT

Defendants Republic of Iraq ("Iraq") and Ministry of Industry of Republic of Iraq ("Ministry") (collectively "Defendants") – each of which has been found by this Court and the Second Circuit to be a "foreign state" as defined in Section 1603(a) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a) (definition of "foreign state"), and as used in FSIA Sections 1609 and 1610(a) – now each assert the "execution immunity" provided to each by FSIA Sections 1609 and 1610 as a complete bar to the "general-asset discovery" requests made by Plaintiff SerVaas Incorporated ("SerVaas") purportedly pursuant to Rule 69 of the Federal Rules of Civil Procedure in aid of enforcement of the Court's 1 February 2012 judgment (as amended on 12 February 2012) ("Plaintiff's Discovery Requests").  Defendants thus respectfully urge the Court to grant Defendants protection against Plaintiff's Discovery Requests on that basis.

Specifically, Plaintiff's Discovery Requests improperly seek: (i) discovery from separate foreign-sovereign juridical entities in contravention of the Federal and New York Rules of Civil Procedure (*i.e.*, Ministry of Trade, Iraqi National Oil Company,[1] all political subdivisions, agencies, and/or instrumentalities of Iraq, all state-owned entities, enterprises, and other commercial entities beneficially owned by Iraq, and all state-owned enterprises, agencies, and/or instrumentalities of Ministry (collectively "Non-Party Sovereign Entities")) that were not parties to the litigation, are not parties to the judgment, without any allegations of alter ego, and who are not represented by counsel for Defendants; (ii) the identity of all persons with knowledge of all commercial transactions by Defendants and Non-Party Sovereign Entities in the United States, the disclosure of all such transactions, and all documents relating thereto; (iii) the identity of all

---

[1]  An entity, which, as set forth in the supporting Declaration of Hasan Nassef and Defendants' responses to SerVaas' discovery requests herewith, no longer exists.

bank, brokerage accounts, and letters of credit in the United States of Defendants and all Non-Party Sovereign Entities; (iv) all documents disclosing all financial activity of Ministry, including all budget documents, balance sheets, income statements, and asset listings; (v) all documents sufficient to identify the source of Ministry's and Ministry of Trade's operating funds; and (vi) all information and documents relating to the property of Defendants and all Non-Party Sovereign Entities in the United States and whether such property has been the subject of commercial transactions, the nature of such transactions, and all persons with knowledge thereof.

Under the FSIA Sections 1609 and 1610, as interpreted by *all* Circuits, Plaintiff's Discovery Requests are fatally defective and therefore are *required by law* to be denied for each of the following reasons:

First, as well put by the Solicitor General of the United States in the Brief for the United States as Amicus Curiae recently presented in respect to the petition for certiorari being considered by the Supreme Court in *Rubin v. Islamic Republic of Iran*, U.S. No. 11-431 (hereinafter "U.S. Amicus Br."),[2] a discovery request and any resulting order requiring a *foreign state* (as opposed to an agency or instrumentality) to produce information concerning all of its assets located in the United States without regard to whether there is any reason to believe that such assets sought to be discovered fall within an exception to immunity from attachment or execution under FSIA Section 1610 is inconsistent with the presumption of immunity established in the FSIA, and, therefore violates Defendants' immunity. *See* U.S. Amicus Br. at 8-14.

As aptly noted by the Solicitor General, the United States:

> has long recognized that foreign sovereigns are generally immune from suit in our courts and *their property is largely immune from execution* (emphasis added). *See The Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 137 (1812). The

---

[2] For the Court's ease of reference, Defendants append the *Rubin* amicus brief at Exhibit 1 to this Memorandum.

> FSIA codifies those principles, with some modifications, by establishing two presumptive rules of immunity.  First a foreign sovereign is immune from suit – and from the jurisdiction of the court – unless an exception enumerated in Section 1605, 1605A or 1607 applies.  *See* 28 U.S.C. 1604 and 1330(a).  Second, the property of a *foreign state* is immune from attachment[,] arrest[,] and execution except as provided in [S]ections 1610 and 1611.  28 U.S.C. 1609.

US Amicus Br. at 9 (internal quotations omitted).  Additionally,

> the execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself.  *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 289 (2d Cir. 2011).  Thus the fact that a foreign state has been held to be subject to *suit* under Sections 1605 through 1607 does not mean that the foreign state's property in the United States is subject to *execution*.  *See id.* at 288-289.  Rather, the property of a foreign state may be executed upon to satisfy a judgment only if the property itself is used for a commercial activity in the United States and certain other conditions are satisfied.  28 U.S.C. 1610(a).  Under the FSIA, then, jurisdictional immunity * * * and execution immunity * * * operate independently from each other.  *Walters*, 651 F.3d at 288.

> Because Section 1609 provides that a foreign state's property shall be immune from execution unless an exception applies, 28 U.S.C. 1609, the property is presumptively immune, whether or not the foreign state appears to assert immunity.  *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127-1128 (9th Cir. 2010).  A judgment creditor seeking to enforce a judgment against the property of a foreign sovereign therefore bears the burden of identifying the property to be executed upon and establishing that it falls within an exception to immunity against execution.  *See e.g., Walters*, 651 F.3d at 297.

U.S. Amicus Br. at 10 (internal quotations omitted).  This, SerVaas has not done.

> Although the FSIA does not expressly address the permissible scope of discovery for the purpose of determining whether assets of a foreign sovereign are immune from execution under Section 1609, . . . *see* [H.R. Rep. No. 1487, 94th Cong., 2d Sess. 23 (1976)], the district court must exercise its discretion consistent with the presumption of immunity established in Section 1609.
>    . . . .

> That immunity exists not only to shield foreign property from seizure, but also to protect against "the costs, in time and expense, and other disruptions attendant to litigation.  *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d. Cir.), *cert. denied*, 592 U.S. 818 (2007).  To permit burdensome discovery without regard to whether that property might fall within an exception to immunity would vitiate the FSIA's protections.  *See Butler v. Sukhoi Co.*, 579

F.3d 1307, 1314 (11th Cir. 2009); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 260 n.10 (5th Cir. 2002), *cert. denied*, 544 U.S. 962 (2005).

U.S. Amicus Br. at 10-11.

Ultimately, it is the position of the United States that:

The execution immunity codified in the FSIA also reflects comity and reciprocity concerns. *See Peterson*, 627 F.3d at 1127-1128; *cf. National City Bank of N.Y. v. Republic of China*, 348 U.S. 356, 362 (1955), both of which are implicated by discovery in aid of execution. This court [the Supreme Court] has long recognized that '[t]he judicial seizure of a foreign state's property "may be regarded as an affront to its dignity and may . . . affect our relations with it" at least to the same extent as subjecting a foreign state to suit. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008). . . . *See Peterson*, 627 F.3d at 1127 ('these policy considerations apply more strongly in the context of immunity from execution); *Connecticut Bank of Commerce*, 209 F.3d at 255-256. Compelling a foreign state to product extensive material in discovery concerning its assets similarly may impose significant burdens and impugn the state's dignity, and may have implications for the United States' foreign relations.

Such discovery may also have reciprocal consequences for the treatment of the United States in foreign courts. The United States maintains extensive overseas holdings as part of its worldwide diplomatic and security missions. Because "some foreign states base their sovereign immunity decisions on reciprocity," *Persinger v. Islamic Republic of Iraq*, 729 F.2d 835, 841 (D.C. Cir.), *cert. denied*, 469 U.S. 881 (1984), a U.S. court's allowance of unduly sweeping discovery concerning a foreign state's assets may cause the United States to be subjected to similar treatment abroad. *Cf. McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963) (construing statute to avoid "invit[ing] retaliatory action from other nations").

U.S. Amicus Br. at 11-12.

Plaintiff's Discovery Requests – which indisputably are general-asset requests that fail to identify a single asset and attempt to require discovery from almost every conceivable Iraqi governmental entity as to worldwide assets – are nearly identical to the discovery requests and discovery order to which the Solicitor General refers to in the Amicus Brief, and which the 7th Circuit found violated the execution immunity of Iran. *See Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011) (cited with approval by the Second Circuit in *Walters*,

-- 4 --

651 F.3d at 289-95 and by this Court in *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 2011 WL 4111504 at *3, 5-6 (S.D.N.Y. Sept. 13, 2011)).  It is no less violative of Defendants' FSIA execution immunity here, and extremely offensive to principles of comity and reciprocity accorded by Iraq to the United State to date.

Second, Servass, by way of Plaintiff's Discovery Requests, and its motion to compel, attempts to compel discovery from literally hundreds of juridical persons that, although existing under the laws of the Republic of Iraq, are separate from the juridical persons that are the judgment debtors in this action: Iraq and the Ministry.  As structured, Plaintiff's Discovery Requests *assume* but offer no basis for a court to find that Iraq is the alter ego of all non-party entities mentioned in Plaintiff's Discovery Requests from which SerVaas seeks discovery.  The record is devoid of any required alter ego *allegation* – in a Complaint that is properly served under the service of process provisions of FSIA Section 1608.  Nor are any of these non-party juridical persons: (a) parties to or liable for the Judgment against Defendants; or (b) before this Court: the *only* defendant parties here before the Court are Defendants Iraq and the Ministry.

Third, Plaintiff's Discovery Requests are overly broad, unduly burdensome, would result in undue cost and expense upon Defendants, and as well fail – in all respects – to comply with Rule 69.  Under Rule 69, and, by way of extension Rules 33 and 34, SerVaas may only seek discovery by way of interrogatories and production of documents against parties to the action. *See* Fed. R. Civ. P. 33 and 34.  Also by way of Rule 69, SerVaas fails to comply with post-judgment discovery requirements of New York law, as Section 5224 of Article 52 of the New York Code provides judgment creditors with the exclusive remedy for seeking post-judgment discovery of judgment debtors and third-parties and is limited to the service of subpoenas seeking information and requires a certain certification by the party seeking such discovery,

which was not provided here.  Additionally, neither Defendant has waived either its FSIA immunities or any other objections to Plaintiff's Discovery Requests.  Each Defendant did not and could not have waived its FSIA immunity as claimed by SerVaas; FSIA immunity is presumptive and continues even when a foreign sovereign fails to appear.  Nor have Defendants engaged in any conduct that constitutes a waiver of any other objections to Plaintiff's Discovery Requests.  Defendants sought to confer with SerVaas regarding its objections, SerVaas was advised as to the nature of Defendants' objections, Defendants sought to and promptly filed their pre-motion conference letter, and provide their responses to SerVaas' discovery requests setting forth their specific objections thereto herewith.

As if all of the foregoing were not enough, there is more: SerVaas' requests are remarkable for their shear overbreadth, burdensomeness, oppressiveness and expense they would cause foreign-sovereign parties and non-parties alike.

## II.  FACTUAL BACKGROUND

A.   SerVaas' Discovery Requests, Attempts To Confer, Objections, And Pre-Motion Conference Letters.

On 8 March 2012, SerVaas propounded post-judgment interrogatories and requests for production of documents upon defendants.  (*See* Exhibit 2 to this Memorandum (Declaration of Timothy B. Mills (hereinafter "Mills Declaration") at ¶ 4).  From 30 March 2012 through 17 April 2012 counsel for the parties conferred, with counsel for Defendants ("Defendants' Counsel") seeking to discuss with counsel for SerVaas ("SerVaas' Counsel") not only Defendants' need for more time to respond (including by way of protective order if the conference process did not reach agreement on the issue of timing of the response and Defendants' concerns about the overbreadth and violation of Defendants' attachment immunities under the FSIA.  (*Id.* at ¶¶ 4-11). (Defendants note that the history of counsel's conferencing is

set forth in detail in the Mills Declaration).  After receiving Servaas Counsel's response on 17 April 2012 advising that SerVaas considered Plaintiff's Discovery Requests to be in compliance with the FSIA, Defendants' counsel commenced additional investigation with the furthering conferring with SerVaas in an effort to avoid having to involve the Court in a discovery dispute as well as to be sufficient informed to provide effective advice and counsel to the clients – foreign sovereign entities in the Middle East – in terms of time frame within which certain discovery responses could be provided.  (*Id.* at ¶¶ 12-13).  However, On 26 April 2012, prior to Defendants' Counsel receiving definitive direction from Defendants, and while continuing legal research of the claims made by SerVaas in an attempt to further confer with SerVaas' Counsel and also to prepare a pre-motion conference letter for an extension of time and for a protective order, SerVaas' Counsel filed a pre-motion conference letter with this Court seeking to compel responses to the discovery requests.  (*Id.* at ¶¶ 13-14).   On 29 April 2012, Defendants' Counsel filed a pre-motion conference letter with this Court seeking an extension of time and setting forth the grounds for Defendants' protective order.  (*Id.* at ¶ 15).   On 30 April 2012, this Court endorsed SerVaas' Counsel's pre-motion conference letter and scheduled a pre-motion conference for 10 May 2012 [No. 73].  (Mills Declaration at ¶ 16).

On 10 May 2012, the parties appeared before this Court and agreed to a motion schedule consisting of a motion to compel by SerVaas and a cross motion for a protective order by Defendants.  (*Id.* at ¶ 17).  On 16 May 2012, this Court entered the final agreed-upon briefing schedule relating to the permitted motions by the parties.  (*Id.*).

B.    <u>Governmental Structure Of Iraq</u>.

Pursuant to Iraqi law, the Ministries of Iraq and the State-Owned Enterprises are each organized as separate juridical persons from one another and from Iraq and the effect precludes

one such juridical person from creating legal responsibilities or liabilities for either Iraq as a
whole or for any other such separate juridical person.[3]  *See* Exhibit 3 to this Memorandum
(Declaration of Hanan Nassef ("Nassef Declaration") at ¶¶ 3, 9, 15-16, 21-22, 26).  Within each
of the Ministries, there are numerous administrative entities and separate juridical persons,
including, in most Ministries, State-Owned Enterprises.  (*Id.* at ¶¶ 15-16).  Each ministry keeps
and maintains its own records, is in charge of its own affairs, makes and administers its own
contracts, has its own budget, is accountable for its own actions but not for the actions of any
other ministry or other Iraqi sovereign juridical person; and may sue and be sued itself in Iraqi
and foreign courts for its own actions or failure to act, but not for the actions or failure to act of
any other juridical person.   (*Id.* at ¶ 16).  In total, there are 34 major Ministries of Iraq and 192
Iraqi State-Owned Enterprises with separate offices that exist following the change of national
government in Iraq in 2003.  (*Id.* at ¶¶ 15-16, 19).  Finally, the Iraqi National Oil Company is an
entity that has not existed since 1987.  (*Id.* at ¶ 13).

IV. ARGUMENT

A.    <u>SerVaas' Post-Judgment Discovery Requests Implicate And Violate Defendants'
      Immunity Provided By The FSIA</u>.

Post-judgment discovery requests made upon foreign sovereign entities in aid of
execution are narrowly limited by the FSIA.  *See Rubin*, 637 F.3d at 795; *EM*, 473 F.3d at 486;
*Olympic Chartering, S.A. v. Ministry of Industry and Trade of Jordan*, 134 F.Supp.2d 528, 530,
535-36 (S.D.N.Y. 2001).  The FSIA "protect[s] foreign sovereigns from the burdens of litigation,
*including the costs and aggravation of discovery*[,]" including post-judgment discovery.  *Rubin*,
637 F.3d at 795-96 (emphasis added) ("joining the identical message" of "[t]he Second, Fifth,

---

[3]  The governmental structure of Iraq is set forth at greater length by the Declaration of Hanan
Nassef, Director General of the Legal Department of the Ministry of Justice of the Republic of
Iraq, submitted herewith in support of Defendants' cross motion and opposition, and, upon
which, Defendants rely as if set forth at length herein.

and Ninth Circuits" by holding that "discovery in the context of attachment proceedings against foreign-state property in the United States under the FSIA" should "be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination") (internal quotations and citations omitted)); *accord EM*, 473 F.3d at 486; *Olympic*, 134 F.Supp.2d at 530, 535-36; *Thai Lao*, 2011 WL 4111504 at *3; *see also First City, Texas-Houston, N.A. v. Rafidain Bank* ("*Rafidain I*"), 150 F.3d 172, 176 (2d Cir. 1998) (under the FSIA, post-judgment discovery is ordered circumspectly and only to verify allegations crucial to an immunity determination).

Specifically, Section 1609 of the FSIA provides a presumptive immunity from discovery and attachment, *Rubin*, 637 F.3d at 785, 796, and sets forth that "property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611. . . ." 28 U.S.C. § 1609.  Relevant here, the Section 1610(a) exception applies to foreign sovereign states and only provides courts with jurisdiction, and, thus, waives sovereign immunity, only for the *property* of a foreign state used for commercial activity in the United States.  In contrast, the Section 1610(b) exception applies to agencies or instrumentalities and provides courts with jurisdiction, and, thus, waives sovereign immunity where such entities *themselves engage in commercial activity* in the United States.  Put another way, "property owned by a foreign state's instrumentalities is generally more amendable to attachment than property owned by the foreign state itself." *Rubin*, 637 F.3d at 794.  "While subsection (b) applies to all property of the agencies and instrumentalities of foreign states, subsection (a) applies only to the property of foreign states that is 'used in commercial activity.'" *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 82 (2d. Cir. 2002) (quoting *Conn. Bank of Commerce* ("*CBC*"), 309 F.3d at 253).

A foreign sovereign state's property, therefore, is immune from attachment and execution unless that property is in the United States and being used for a commercial activity there.  *See* 28 U.S.C. §§ 1609, 1610(a); *Aurelius Capital Partners, LP. v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009).  Because immunity is the rule, a plaintiff seeking post-judgment discovery of a sovereign's assets must identify with specificity the assets being sought and plausibly allege an exception to immunity that applies to that property.  *See EM*, 473 F.3d at 486 ("Because the . . . [f]unds were never an attachable asset of the Republic . . . [plaintiff] was not entitled to any other discovery") (internal quotation marks and citation omitted)); *accord Rubin*, 637 F.3d at 799.

B.   The Post-Judgment Immunity Provided By The FSIA Is Broader Than The Immunity Provided On Questions Of Liability.

The FSIA's limits on post-judgment discovery are derived from the immunity afforded foreign sovereign property under the FSIA, which is broader than the sovereign's jurisdictional immunity.  *Rubin*, 637 F.3d at 796; *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007).  The FSIA was enacted when "the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action."  *CBC*, 309 F.3d at 255-56; *see Pimentel*, 553 U.S. at 866; *Peterson*, 627 F.3d at 1127-28.  "Prior to the enactment of the FSIA, the United States gave absolute immunity to foreign sovereigns from the execution of judgments.  This rule required plaintiffs who successfully obtained a judgment against a foreign sovereign to rely on voluntary repayment by that State."  *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 749 (7th Cir. 2007); *De Letelier v. Republic of Chile*, 748 F.2d 790, 799 (2d Cir. 1984).  The adoption of the FSIA, "modified the rule barring execution against a foreign state's property by *partially* lowering the barrier of immunity from execution, so as to make this

-- 10 --

immunity conform more closely with the provisions on jurisdictional immunity." *CBC*, 309 F.3d at 252 (internal quotations and citations omitted) (emphasis in original); *accord De Letelier*, 748 F.2d at 798-99.

"[T]he asymmetry between jurisdiction and execution immunity in the FSIA reflects a deliberate congressional choice to create a 'right without a remedy' in circumstances where there is jurisdiction over a foreign state for purposes of obtaining a judgment, but its property is immune from attempts to execute judgment." *Walters*, 651 F.3d at 289.

> Congress passed the FSIA on the background of the views of sovereignty expressed in the 1945 charter of the United Nations and the 1972 enactment of the European Convention, which left the availability of execution totally up to the debtor state, and its own understanding as the legislative history demonstrates, that prior to 1976 property of foreign states was absolutely immune from execution.  It is plain that Congress planned to and did lift execution immunity "in part."   Yet, since it was not Congress' purpose to lift execution immunity wholly and completely, a right without a remedy does exist in [some] circumstances[.]

*De Letelier*, 748 F.2d at 799 (citation omitted); *see also Rubin*, 637 F.3d at 796.

Accordingly, post-judgment discovery under the FSIA is limited to assets over which courts could plausibly exercise jurisdiction to order execution to satisfy the judgment, a power narrower than jurisdiction to determine the merits of an action.  *Rubin*, 637 F.3d at 799. Discovery must be directed to assets at least arguably not immune under the FSIA, *i.e.*, property of the foreign state "in the United States" being "used for a commercial activity in the United States."  *EM*, 473 F.3d at 484, 486 ("Because . . . [f]unds were never an attachable asset of the Republic . . . [plaintiff] was not entitled to any other discovery" (internal quotation marks and citation omitted)); *accord Thai Lao*, 2011 WL 4111504, at *3.

C.   The Second Circuit's Application Of The FSIA To Post-Judgment Discovery Requests Bars SerVaas' Discovery Requests.

In the Second Circuit, where the record demonstrates that no exception to immunity under the FSIA applies, a foreign sovereign defendant is immune from post-judgment discovery because it would interfere with a "sovereign's or a sovereign agency's legitimate claim to immunity from discovery." *EM*, 473 F.3d at 486 (quoting *Rafidain I*, 150 F.3d at 176). It is a presumptive immunity, which must be overcome by a plaintiff seeking such discovery. *See NML Capital, Ltd. v. Banco Central De La Republica Argentina*, 652 F.3d 172, 194 (2d Cir. 2011); *Walters*, 651 F.3d at 290:

> Those of our sister circuits that have considered the question have uniformly held that, at least where a judgment creditor seeks to enforce a judgment rendered against a foreign sovereign by attaching or executing upon its property, a district court may apply the FSIA's execution immunity provisions regardless of whether the foreign sovereign enters an appearance (citations omitted)).

And, the burden is on the party seeking the post-judgment discovery. *Walters*, 651 F.3d at 297.

Further, in post-judgment proceedings, "discovery should be ordered circumspectly and only to verify allegations of specific facts crucial and to an immunity determination." *EM*, 473 F.3d at 486 (quoting *Rafidain I*, 150 F.3d at 176 (in turn quoting *Ariba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992))); *see also First City, Texas Houston, N.A. v. Rafidain Bank* ("*Rafidain II*"), 281 F.3d 48 (2d Cir. 2002). The courts are required to conduct a "delicate balancing 'between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery.'" *EM*, 473 F.3d at 486; *Rafidain I*, 150 F.3d at 176 (quoting *Arriba*, 962 F.2d at 534); *see Olympic*, 134 F.Supp.2d at 535; *see also Compania Del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela*, 341 F. App'x 722 (2d Cir. 2009).

Although SerVaas relies upon the Second Circuit's approach to FSIA immunity in the post-judgment context where liability jurisdiction has been previously found in *Rafidain I* and

*Rafidain II*, such reliance here is inapt and misplaced.[4]  *Rafidain I* and *Rafidain II* comport with and are not inconsistent with the holding in *Rubin* that jurisdiction under Section 1605 for liability does not extend to post-judgment discovery under Section 1609.

> *Rafidain I* and *Rafidain II* are consistent with the nuanced and dispositive distinction in Section 1610 between foreign sovereign states and agencies or instrumentalities, *i.e.*, post-judgment jurisdiction and exception to immunity exists over agencies or instrumentalities that engage in commercial conduct in the United States and over foreign sovereign state's *property* that is used in commercial activity in the United States.  *See* 28 U.S.C. § 1610.  As an agency or instrumentality – and not a foreign sovereign state – against whom default judgment had been entered, Rafidain had already been found to have engaged in commercial *activity* in the United States.  *See Rafidain II*, 281 F.3d at 52-54; *Rafidain I*, 150 F.3d at 176-77.  Thus, in *Rafidain I* and *Rafidain II* the Second Circuit did not run afoul of Section 1610 – Rafidain, as an agency or instrumentality, is subject to post-judgment jurisdiction due to the finding that it had engaged in commercial *activity* in the United States, and, therefore, there was no immunity from post-judgment discovery.

> As stated, the analysis *vis-à-vis* agencies and instrumentalities is different from that of foreign states.  Jurisdiction exists and there is no immunity for agencies and instrumentalities under Section 1610(b) where a party establishes that such an entity has engaged in commercial

---

[4] The Second Circuit recently called into question whether jurisdiction in that manner can carry through to post-judgment discovery, stating in response to petitioner's contention as to same, "[w]hether or not that is correct[.]"  *Walters*, 651 F.3d at 295.  The Seventh Circuit, meanwhile, squarely rejects that concept.  *See Rubin*, 637 F.3d at 797 (holding that once a court has exercised jurisdiction over a foreign sovereign and entered judgment against it does not entitle a plaintiff "to the same broad discovery as any other litigant seeking to execute on a judgment under Rule 69(a)" and "[t]he critical error in this argument is that it mixes the scope of liability with the scope of execution" under the FSIA – "the exceptions to § 1609 attachment immunity are drawn more narrowly than the exceptions to § 1604 immunity").

activity in the United States.  Post-judgment discovery is, therefore, properly directed initially at

a judgment-debtor agency's or instrumentality's commercial activity in the United States, and, if

that is established, immunity party may then discover the judgment debtor's assets, and, where

alter ego allegations are made, information from the judgment debtor relating to its relationship

with other foreign sovereign entities alone.  *Rafidain II*, 281 F. 3d at 53-54.  In contrast,

jurisdiction exists and there is no immunity for a foreign sovereign state's property under Section

1610(a) where a party establishes that a state's specific property has been used for commercial

activity in the United States.  Post-judgment discovery is, therefore, properly directed initially at

whether a judgment debtor state's specifically identified property has been used for commercial

activity in the United States, and, if that is established, to the state regarding that property alone.

*See Rubin*, 473 F.3d at 799.

Because "discovery should be ordered circumspectly and only to verify allegations of

specific facts crucial to an immunity determination," *EM*, 473 F.3d at 486 (quoting *Rafidain I*,

150 F.3d at 176), SerVaas' discovery must be limited to the aforesaid and specific statutory

requirements.  Given the circumspect and delicate balancing test required and the Second

Circuit's citation to *Rubin* with approval, Defendants, are, therefore, immune from SerVaas'

requests under the FSIA.  *See Thai Lao*, 2011 WL 4111504 at *6 (quoting *Rubin*, 637 F.3d at

796-98); *Walters*, 651 F.3d at 290-95 (extensively citing *Rubin* with approval).   SerVaas' wide

and far-reaching requests can in no sense of the word be classified as "circumspect" or limited to

specific and identified property.  *See EM*, 473 F. 3d at 486; *Walters*, 651 F.3d at 297 (discovery

of "all funds of the [People's Republic of China] being held within or without the United States

by any or all of [the subpoenaed third-party banks" held improper because it failed to identify

specific assets attachable under the FSIA); Joint Appendix at A-122, *Walters v. Indus. & Commercial Bank of China, Ltd.*, 10-0806-cv (2d Cir. June 1, 2010), Docket No. 47.

D.   The Seventh Circuit's Application Of The FSIA To Post-Judgment Discovery Requests Bars SerVaas' Discovery Requests.

The Seventh Circuit's interpretation of the FSIA also results in the conclusion that Defendants are immune from SerVaas' requests, as SerVaas' fishing expedition fails to identify any property being used for a commercial activity in the United States. *See Rubin*, 637 F.3d at 799.  "[U]nder the FSIA a plaintiff seeking to attach and be provided discovery regarding the property of a foreign state in the United States *must identify the specific property that is subject to attachment and plausibly allege than an exception to § 1609 attachment immunity applies*.  If the plaintiff does so, discovery in aid of execution is limited to the specific property the plaintiff has identified."  *Id*. (emphasis added).  A "*court cannot compel a foreign state to submit to general discovery about all its assets in the United States*."  *Id*. at 785 (emphasis added).

Indeed, "Section 1609 of the Act provides that 'the property in the United States of a foreign state *shall* be immune from attachment' *unless* an enumerated exception applies."  *Id.* at 785 (emphasis supplied by Seventh Circuit).  It is a "presumptive immunity" that must be applied regardless of whether the foreign state appears, and the burden is squarely placed on the party seeking the post-judgment discovery.  *See Id.* at 785-86, 796 (stating that the courts must determine "*sua sponte* if necessary – whether an exception to immunity applies" and "must make this determination regardless of whether the foreign state appears").

Moreover, where a court has exercised jurisdiction over a foreign state in the underlying litigation and a judgment has been entered, such does not entitle plaintiffs to "to the same broad discovery as any other litigant seeking to execute on a judgment under Rule 69(a)[,]" as "the critical error in this argument is that it mixes the scope of *liability* with the scope of *execution*."

*Rubin*, 637 F.3d at 797 (emphasis in original).  Again, "the exceptions to attachment immunity are narrower than the exceptions to jurisdictional immunity[,]" and, therefore, the "options for executing a judgment remain limited."  *Id.* at 796-97.  Jurisdiction pursuant to Section 1605 as to liability does not extend to post-judgment jurisdiction pursuant to Section 1609 and does not constitute a "waiver" for purposes of Section 1610.  *Id.* at 797.  Accordingly, *immunity under Section 1610 is waived by a foreign sovereign state only for specific property*, and, in order to determine whether immunity from execution or attachment has been waived, a plaintiff must identify the specific property upon which it is trying to act.  *Id.* at 785; *Autotech*, 499 F.3d at 750.  Whereas, in contrast, an exception to liability immunity under Section 1605 pursuant to the commercial activities exception applies to the act of a foreign state engaging in commercial activities.  *See* 28 U.S.C. §1605(a)(2); *Rubin*, 637 F. 3d at 796-98.

Correspondingly, because the immunity applies to specific property and not conduct, a court may not grant a "blank check[,]" permitting plaintiffs to discover all of the assets of a foreign sovereign state in the United States, as to do so inverts the statutory scheme.  *Rubin*, 637 F.3d at 795-96.  Discovery in this context is limited to "specific property identified for attachment. . . ."  *Id.* at 798-99.   Although such appears overly restrictive at first blush, as the Seventh Circuit noted in response to that issue in *Rubin*:

> It is true that limiting discovery to the specific property identified for attachment restricts the plaintiff's ability to use the coercive power of the court to identify other attachable foreign-state assets, but that is a consequence of the balance struck by the FSIA.  *Nothing in the statutory scheme prevents judgment creditors from using private means to identify potentially attachable assets of foreign states located n the United States*.  Moreover, the FSIA includes a provision for judgment creditors in certain cases to enlist the assistance of the Secretary of the Treasury and the Secretary of State in identifying and executing against the assets of a foreign state.
>
> . . . .

There is no question that the attachment immunity codified in § 1609 of the FSIA has a cost, *and that cost is borne primarily by Americans who have been injured in tort or contract by foreign states or their agencies or instrumentalities*. The FSIA embodies a judgment that our nation's foreign-policy interests justify this particular allocation of legal burdens and benefits.

*Rubin*, 637 F.3d at 798-99 (emphasis added).

Specifically, in *Rubin*, the plaintiffs demanded, *inter alia*, in post-judgment discovery

that Iran turn over "[a]ll documents, including without limitation any communication or correspondence, concerning any and all tangible and intangible assets, of whatever nature and kind, in which Iran and/or any of Iran's agencies and instrumentalities has any legal and/or equitable interest, that are located within the United States. . . ."

*Rubin*, 637 F.3d at 788.  The Seventh Circuit rejected those request under the FSIA and limited plaintiffs to targeted discovery of specifically identified assets, *i.e.*, plaintiffs are not permitted general, broad discovery of all of the foreign state judgment creditor's assets.  *Id.* at 796-99.

Applied here, Defendants are also immune from SerVaas' discovery requests under the FSIA; the requests in *Rubin* are nearly identical to SerVaas', which fail to identify a single specific asset that could be subject to attachment and execution.  As set forth in *Rubin*, "[d]iscovery orders that are broad in scope and thin in foundation unjustifiably subject foreign states to unwarranted litigation costs and intrusive inquiries about their American-based assets." *Id.* at 796.  SerVaas' requests, therefore, contravene the FSIA and a protective order is required to shield Defendants from SerVaas' post-judgment discovery requests.[5]  *See id.* at 796-97.

---

[5]  As the definition of foreign sovereign states in Section 1610 includes political subdivisions and Ministry has been adjudged by the Second Circuit – for purposes of jurisdiction – and by this Court to be a political subdivision, that provision applies to Ministry and Iraq.  That Defendants are presently appealing this Court's entry of summary judgment as to liability is not inconsistent with the foregoing.  It is Iraq's position on appeal that Ministry is both a political subdivision and a separate and independent juridical entity and its liability pursuant to contract cannot be imputed to Iraq.  (*See* Nassef Declaration).  Further, as the FSIA has no bearing upon questions of substantive liability, the definitions are of no moment in that context.  Accordingly, Section 1610(a) shall be applied to Ministry, and, of course, Iraq herein.

E.    SerVaas' Discovery Requests For Extraterritorial Discovery Are Barred By The FSIA.

        In addition, all discovery requests relating to Defendants' assets located outside the

United States are also barred by the FSIA because such are unquestionably immune.  *See*

*Walters*, 651 F.3d at 297 (assets outside the United States are "categorically immune from

execution under the FSIA").  Sovereign property is immune from attachment and execution

unless it is *both* in the United States *and* used for a commercial activity there.  28 U.S.C. §§

1609, 1610(a); *Aurelius Capital Partners, LP*, 584 F.3d at 130; *Autotech*, 499 F.3d at 750 ("The

FSIA did not purport to authorize execution against a foreign sovereign's property . . . wherever

that property is located around the world.  We would need some hint from Congress before we

felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction.").   Because

extraterritorial sovereign assets are "categorically immune from attachment[,]" such discovery is

not permitted under the Federal Rules.  *See* Fed.  R. Civ. P. 69(a)(2) ("[i]n aid of the judgment or

execution the judgment creditor . . . may obtain discovery . . . as provided in these rules or by the

procedure of the state where the court is located."); *see also Walters*, 651 F.3d at 297.

        As certain discovery requests made by SerVaas are directed at assets located outside the

United States, such information and assets are immune from post-judgment jurisdiction.  *See* 28

U.S.C. § 1610(a).  Discovery that targets such immune property fails, on its face, to satisfy the

requirement that discovery be ordered "circumspectly and only to verify allegations of specific

facts crucial to an immunity determination."  *EM*, 473 F.3d at 486 (internal quotation marks

omitted); *Walters*, 651 F.3d at 297 (assets outside the United States are "categorically immune

from execution under the FSIA"); *Walters*, 672 F. Supp.2d at 575 (same); *see also Autotech*

*Tech*, 499 F.3d at 751 ("If assets exist in another country, the person seeking to reach them must

try to obtain recognition and enforcement of the U.S. judgment in the courts of that country.").

Therefore, SerVaas' interrogatories (3-4) and requests for production (6-7, 11, 16-18) seeking information relating to assets outside of the United States are barred.

F.    SerVaas' Discovery Requests Upon Non-Party Sovereign Entities Are Improper and by
      Law Not Enforceable.

      Further, SerVaas' requests – served upon Defendants alone – improperly seek post-judgment discovery from Non-Party Sovereign Entities. *See Rafidain II*, 281 F.3d at 54 (post-judgment discovery against a non party is limited to the issue of an alter ego relationship and to discovery from the judgment debtor on that issue); *see also De Letelier*, 748 F.2d at 795. SerVaas has not alleged alter ego or any immunity exception with respect to the Non-Party Sovereign Entities, and, because they are separate juridical entities, they are entitled to a presumption of separateness. *See Rafidain I*, 150 F.3d at 176 (requiring the application of the presumption set fort in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 61 (1983), to questions of discovery against a non-party sovereign entity to the judgment); *Olympic*, 134 F.Supp.2d at 530 (rejecting claim by judgment creditor for jurisdictional discovery concerning the Central Bank of Jordan ("CBJ") because "petitioner has made no allegation that CBJ is an alter ego of the judgment debtor nor of 'fraud or injustice' involving CBJ" (quoting *Bancec*, 462 U.S. at 629)).

      Where funds sought to be attached, and, therefore, discovered are owned by a separate juridical entity of a foreign state, they are not available to satisfy a judgment against the foreign state. *See EM*, 473 F.3d at 465-66; *Letelier*, 748 F.2d at 792-95. Restated, a judgment creditor is limited to seeking discovery against a judgment debtor and may not seek discovery against other separate juridical entities, *i.e.*, a central bank, agency, or instrumentality, except where there are allegations of an alter ego relationship and where the discovery is limited to those allegations. *See Rafidain I*, 150 F.3d at 177; *Olympic*, 134 F.Supp.2d at 530, 536 n. 5. Only where a plaintiff

-- 19 --

alleges alter ego liability in support of attachment may the issue of discovery be entertained by the courts (and *Bancec* would apply).  *See EM*, 473 F.3d at 479; *Rafidain II*, 281 F.3d at 54; *Letelier*, 748 F.2d at 792, 799 *Olympic*, 134 F.Supp.2d at 530, 536 n. 5.

Because SerVaas has not alleged alter ego, all discovery requests directed at information and assets of Non-Party Sovereign Entities are barred by the FSIA.  Therefore, SerVaas' interrogatories seeking discovery from Non-Party Sovereign Entities (1-8) and requests seeking the production of documents from Non-Party Sovereign Entities (1-10, 12, 14-15, 19) are barred.

G.    <u>SerVaas' Requests Are Overly Broad, Unduly Burdensome, And Create Undue Burden And Expense</u>.

A court may issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  A protective order is required here because Defendants simply cannot legitimately be required under the FSIA (as set forth *supra*) or in the context of the shear breadth of SerVaas' requests to provide discovery responses on behalf of Defendants and Non-Party Sovereign Entities, which includes at least 34 separate major Ministries and 192 Iraqi State-Owned Enterprises.  (Nassef Declaration at ¶¶ 15, 19).  Certainly, such discovery is overly broad, unduly burdensome, and would burden Defendants with severe costs where Non-Party Sovereign Entities are separate and independent juridical entities who are not parties to the judgment and are not represented by counsel of record, where there are no central repositories for the documents and information requested by SerVaas at Iraq or any of the Ministries or State-Owned Enterprises, where assembling the information and the requirements for communications relating to same and the translation of documents would  take at least four to six months per entity alone, and where each entity has its own office and location.  (*See* Nassef Declaration at ¶¶ 12-25).

In order to reach Defendants' aforesaid conclusion, this Court need only view SerVaas' discovery requests through the lens of such requests being served upon the United States, its Departments, agencies, instrumentalities, and state-owned enterprises in a foreign jurisdiction. Even if such requests were proper in that context, it would take months, incredible expense, and countless hours to assemble and produce that information. Simply put, Defendants are not small, private, commercial enterprises based in the United States, they are foreign sovereign entities located halfway around the globe, with vast bureaucracies, and a large numbers of officials.

H.   <u>SerVaas Fails To Comply With The Federal And State Rules Regarding Post-Judgment Discovery.</u>

Federal Rule of Civil Procedure 69, which governs post-judgment discovery, is limited by the requirements of the FSIA. *See Rubin*, 637 F. 3d at 795 (the FSIA limits Fed. R. Civ. P. 69). Rule 69 provides that "[t]he procedure . . . in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). One such proceeding "[i]n aid of the judgment or execution," as the text and structure of Rule 69 makes clear, is post-judgment asset "discovery." Fed. R. Civ. P. 69(a)(2). Discovery in aid of execution against a foreign state is, therefore, limited by the FSIA.

Nevertheless, pursuant to Fed. R. Civ. P. 69, a judgment creditor may obtain discovery "from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located." SerVaas has failed to comply with either of the aforesaid bases – New York or federal – for obtaining post-judgment discovery upon non-parties. SerVaas' requests upon Non-party Sovereign Entities are completely defective.

As to the applicable New York law, Section 5224 of Article 52 of the New York Code provides judgment creditors with the exclusive remedy for seeking post-judgment discovery of

judgment debtors and third-parties and is limited to the service of subpoenas seeking information.  Where a judgment creditor seeks discovery from a non-party to the judgment, an information subpoena is required to be served on that third-party and "shall contain a certification signed by the judgment creditor or his or her attorney.  *Id.*  The stated purpose of that requirement is "[b]y signing the certification, the judgment creditor or attorney certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the individual or entity receiving the subpoena has relevant information about the debtor."  *Id.*  Failure to comply with the aforesaid requirements relegates the subpoena "null and void." SerVaas has failed to comply with the foregoing.

Whereas, as to the Federal Rules of Civil Procedure, a party may only seek discovery by way of interrogatories and production of documents against a party to the action.  *See* Fed. R. Civ. P. 33 and 34.  Similarly, by serving post-judgment discovery requests upon Non-Party Sovereign Entities, SerVaas has failed to comply with the Federal Rules.

Accordingly, as supported *supra*, in order to have any credible basis upon which to seek discovery from Non-Party Sovereign Entities, SerVaas must either file an action alleging an alter-ego relationship seeking to ascribe liability for the judgment against Non-Party Sovereign Entities or comply with Section 5224 of Article 52 of the New York Code and issue and properly serve subpoenas upon each individual entity in accordance with the Federal and New York Rules.   SerVaas has not done so.

I.    <u>Defendants Have Not Waived Their FSIA Immunity Or Other Defenses Or Objections To SerVaas' Discovery Requests.</u>

Defendants have not engaged in any conduct that constitutes a waiver of their objections to SerVaas' requests.  Defendants sought to confer with SerVaas on a motion to extend discovery, the shear breadth of the requests, and on Defendants' objections to the requests on the

grounds of the FSIA well prior to the date the responses to the requests were due.  SerVaas'

actions, however, delayed Defendants' intention to file its pre-motion conference letter seeking a

motion to extend discovery and a motion for protective order.  (*See* Mills Declaration at ¶¶ 4-14).

The record also establishes that SerVaas has consented to the filing of Defendants' motion for a

protective order on June 8, which implicitly consents to its timeliness and extends the time

within which to answer discovery until June 8 – and, Defendants' responses setting forth

Defendants' specific objections are submitted herewith.  (*Id.* at ¶¶ 4-18).

 Further, this Court has stated, ". . . motions under Rule 26(c) must be served before the

date set for production."  *U.S. v. International Business Machines Corp.*, 79 F.R.D. 412, 414

(S.D.N.Y. 1978).  Thus, this Court's scheduling order and SerVaas' consent permitting

Defendants to file the cross motion for a protective order on or before June 8 implicitly and

effectively extends the time within which Defendants may submit their responses to the requests

– which are submitted herewith and set forth Defendants' specific objections.

Finally, the case law relied upon by SerVaas in support of its argument for waiver is

unsupportive of its position.  First, *Carr v. Queens-Long Island Med. Group, P.C.*, 2003 WL

169793 at *5 (S.D.N.Y. Jan. 24, 2003), is utterly distinguishable and does not address a waiver

of immunity under the FSIA, "the plaintiff did not merely fail to provide responses within thirty

days of being served with the discovery demands[,]" rather "[h]e delayed producing complete

responses until the day before a hearing concerning the failure to comply with court-ordered

deadlines for production."  Second, *Jacoby v. Hartford Life and Accident Ins. Co.*, 254 F.R.D.

477, 478 (S.D.N.Y. 2009), does not address any issues relating to a waiver of objections through

failure to timely respond and states that defendant's actions were a "paradigm of discovery

abuse" – as quoted by SerVaas – because "Defendant responded to plaintiff's two document

requests and interrogatories with boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy."  In further contrast, Defendants could have merely responded to each of SerVaas' requests with objections, but, instead, sought to confer in good faith prior to seeking intervention of this Court.  Third, *Aetna Life Ins. Co. v. Licht*, 2005 WL 180873 at *2 (S.D.N.Y. Jan. 27, 2005), also does not address any issues relating to a waiver of objections through failure to timely respond to discovery.

In fact, no case law in this Circuit or any other Circuit stands for the position that foreign sovereign states, who have demonstrated an intent to confer in good faith regarding immunities and the scope of discovery, waive their objections and FSIA immunity by failing to respond before the expiration of the thirty-day time period.  As set forth at length *supra*, FSIA immunity to post-judgment discovery requests is a presumptive immunity that must be applied even where the party does not appear.  *See Rubin* , 637 F.3d at 785, 796; *NML*, 652 F.3d at 194; *Walters*, 651 F.3d at 290.  Finally, any waiver of immunity under the FSIA must be explicit "to preclude inadvertent, implied, or constructive waiver in cases where the intent of the foreign state is equivocal or ambiguous."  *Capital Ventures Intern. v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir. 2009) (quoting *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d 47, 49 (2d Cir. 1982)).  There is no such waiver here.

V. <u>CONCLUSION</u>

Based upon the foregoing, Defendants respectfully request that their motion for a

protective order be granted and that SerVaas' motion to compel be denied.

Dated:                                    Respectfully Submitted,

                                          MAGGS & MCDERMOTT, LLC

                                          /s/ Timothy B. Mills
                                          Timothy B. Mills (TM-8693)
                                          910 17th Street, N.W., Suite 800
                                          Washington, DC 20006
                                          Telephone: (202) 457-8090
                                          Email: TimothyBMills@aol.com
                                          *Lead Counsel for Defendants*

                                          /s/ Tennant D. Magee, Sr.
                                          Tennant D. Magee, Sr. (TM–5871)
                                          800 Old Bridge Road
                                          Brielle, New Jersey
                                          Telephone: (732) 223-9870
                                          Email: tdmagee@yahoo.com
                                          *Co-Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of June 2012, I electronically transmitted the attached

document:

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF CROSS MOTION
FOR PROTECTIVE ORDER AND OPPOSITION TO MOTION TO COMPEL

to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the

Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant counsel for

Plaintiff:

John A. Piskora (JAP-1224)
Loeb & Loeb
345 Park Avenue
New York, NY 10154
212-407-4000
Email: jpiskora@loeb.com

<u>/s/ Timothy B. Mills</u>