No. 11-431

# In the Supreme Court of the United States

———————

JENNY RUBIN, ET AL., PETITIONERS

*v.*

ISLAMIC REPUBLIC OF IRAN, ET AL.

———————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT*

———————

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

———————

DONALD B. VERRILLI, JR.
  *Solicitor General*
    *Counsel of Record*
STUART F. DELERY
  *Acting Assistant Attorney
    General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
GINGER D. ANDERS
  *Assistant to the Solicitor
    General*
MARK B. STERN
SHARON SWINGLE
JEFFREY E. SANDBERG
  *Attorneys*

HAROLD HONGJU KOH
  *Legal Adviser*
  *Department of State*
  *Washington, D.C. 20520*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

## QUESTION PRESENTED

The Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1330, 1602 *et seq*., provides that the property of a foreign state in the United States is immune from attachment, arrest, and execution, 28 U.S.C. 1609, unless the property is "used for a commercial activity in the United States" and falls within a statutory exception to immunity, 28 U.S.C. 1610(a).  The question presented is:

Whether the court of appeals correctly held that a discovery order requiring a foreign state to produce comprehensive information concerning all of its assets located in the United States, without regard to whether there is any reason to believe that the assets in question may fall within an exception to immunity from attachment or execution, is inconsistent with the presumption of immunity established in the FSIA.

(I)

**TABLE OF CONTENTS**

Page

Interest of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   I.  The court of appeals correctly held that the general-asset discovery ordered by the district court is inconsistent with the FSIA . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.  The court of appeals correctly held that a district court should exercise its discretion over discovery in aid of execution consistent with the presumption of immunity from execution established in the FSIA . . . . . . . . . . . . . . . . . 9

      B.  The court of appeals correctly held that the general-asset discovery ordered by the district court is inconsistent with the presumption of immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   II.  The court of appeals' decision does not conflict with the decision of any other court of appeals . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES**

Cases:

   *Af-Cap, Inc.* v. *Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080 (9th Cir. 2007) . . . . . . . . . . . . . . . . . 7, 10, 19

   *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U.S. 682 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   *Butler* v. *Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

   *Campuzano* v. *Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

(III)

IV

Cases—Continued:                                          Page

*Connecticut Bank of Commerce* v. *Republic of Congo*,
  309 F.3d 240 (5th Cir. 2002), cert. denied, 544 U.S.
  962 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 17, 19

*EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463
  (2d Cir.), cert. denied, 592 U.S. 818
  (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12, 14, 19

*FG Hemisphere Assocs., LLC* v. *Democratic Repub-
  lic of Congo*, 447 F.3d 835 (D.C. Cir. 2006) . . . . . . . . . 18

*Federal Ins. Co.* v. *Richard I. Rubin & Co.*,
  12 F.3d 1270 (3d Cir. 1993), cert. denied, 511 U.S.
  1107 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*First City, Texas-Houston, N.A.* v. *Rafidain Bank*:
  150 F.3d 172 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 19, 20
  281 F.3d 48 (2d Cir.), cert. denied, 534 U.S.
    813 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

*Loomis* v. *Rogers*, 254 F.2d 941 (D.C. Cir. 1958),
  cert. denied, 359 U.S. 928 (1959) . . . . . . . . . . . . . . . . . . . 13

*McCulloch* v. *Sociedad Nacional de Marineros de
  Honduras*, 372 U.S. 10 (1963) . . . . . . . . . . . . . . . . . . . . . 12

*NML Capital, Ltd.* v. *Banco Central de la Republica
  Argentina*, 652 F.3d 172 (2d Cir. 2011) . . . . . . . . . . . . . 13

*National City Bank of N.Y.* v. *Republic of China*,
  348 U.S. 356 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Permanent Mission of India to the United Nations* v.
  *City of N.Y.*, 551 U.S. 193 (2007) . . . . . . . . . . . . . . . . . . . . 2

*Persinger* v. *Islamic Republic of Iran*, 729 F.2d 835
  (D.C. Cir.), cert. denied, 469 U.S. 881 (1984) . . . . . . . . . 12

*Peterson* v. *Islamic Republic of Iran*, 627 F.3d 1117
  (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13, 14

V

Cases—Continued:                                                      Page

*Republic of Mexico* v. *Hoffman*, 324 U.S. 30 (1945) ...... 1

*Republic of Philippines* v. *Pimentel*, 553 U.S. 851
    (2008) .......................................................... 11

*Richmark Corp.* v. *Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir.), cert. dismissed, 506 U.S.
    948 (1992) ........................................................ 21

*Rubin* v. *Islamic Republic of Iran*, 436 F. Supp. 2d
    938 (N.D. Ill. 2006) ................................................ 5

*The Schooner Exch.* v. *McFaddon*, 11 U.S.
    (7 Cranch) 116 (1812) ......................... 1, 2, 9

*Verlinden B.V.* v. *Central Bank of Nigeria*, 461 U.S.
    480 (1983) ......................................................... 2

*Walters* v. *Industrial & Commercial Bank of China,
    Ltd.*, 651 F.3d 280 (2d Cir. 2011) .............. *passim*

Statutes and rules:

Antiterrorism and Effective Death Penalty Act of
    1996, Pub. L. No. 104-132, § 221(a)(1)(C), 110 Stat.
    1241 (28 U.S.C. 1605(a)(7) (Supp. II 1996)) ........... 4

Foreign Sovereign Immunities Act of 1976, 28 U.S.C.
    1330, 1602 *et seq.*:
        28 U.S.C. 1330 ................................. 2
        28 U.S.C. 1330(a) .......................... 9, 20
        28 U.S.C. 1604 ......................... 2, 9, 13, 15
        28 U.S.C. 1605-1607 ........................ 2, 9
        28 U.S.C. 1605 .............................. 9, 13
        28 U.S.C. 1605(a)(2) ....................... 20, 22
        28 U.S.C. 1605(a)(7) ........................ 4, 18
        28 U.S.C. 1606 ............................... 14

VI

Statute and rules—Continued:                                    Page

    28 U.S.C. 1607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

    28 U.S.C. 1608(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    28 U.S.C. 1609 . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

    28 U.S.C. 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 13

    28 U.S.C. 1610(a) . . . . . . . . . . . . . . . . . . . . . . 3, 10, 22

    28 U.S.C. 1610(b) . . . . . . . . . . . . . . . . . . . . . . . 3, 22

    28 U.S.C. 1610(f)(1) . . . . . . . . . . . . . . . . . . . . . . . 18

    28 U.S.C. 1610(f)(2) . . . . . . . . . . . . . . . . . . . . . . . 18

    28 U.S.C. 1610(f)(2)(A) . . . . . . . . . . . . . . . . . . . . . 18

    28 U.S.C. 1610(f)(3) . . . . . . . . . . . . . . . . . . . . . . . 18

    28 U.S.C. 1611 . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 13

National Defense Authorization Act for Fiscal Year
    2008, Pub. L. No. 110-181, 122 Stat. 3:

        § 1083(a), 122 Stat. 338 (28 U.S.C. 1605A

            (Supp. II 2008)) . . . . . . . . . . . . . . . . 4, 9, 13, 18, 22

        § 1083(b)(1)(A)(iii), 122 Stat. 341 . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P.:

    Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Rule 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Rule 62(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    Rule 69(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20

Miscellaneous:

    H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976) . . . *passim*

    Restatement (Third) of Foreign Relations Law (1987) . . 22

# In the Supreme Court of the United States

_____

No. 11-431

JENNY RUBIN, ET AL., PETITIONERS

*v.*

ISLAMIC REPUBLIC OF IRAN, ET AL.

_____

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SEVENTH CIRCUIT*

_____

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

_____

### INTEREST OF THE UNITED STATES

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

### STATEMENT

1. For much of the Nation's history, principles adopted by the Executive Branch, which were binding on the courts, determined the immunity of foreign states in civil suits in courts of the United States. See *Republic of Mexico* v. *Hoffman*, 324 U.S. 30, 34-36 (1945); *The Schooner Exch.* v. *McFaddon*, 11 U.S. (7 Cranch) 116, 137 (1812). Before 1952, the Executive followed a theory of absolute immunity, "under which 'a sovereign cannot,

(1)

2

without his consent, be made a respondent in the courts of another sovereign.'" *Permanent Mission of India to the United Nations* v. *City of N.Y.*, 551 U.S. 193, 199 (2007). This absolute immunity extended to sovereign property, shielding it from judicial seizure. See, *e.g., The Schooner Exch.*, 11 U.S. (7 Cranch) at 144.

In 1952, the State Department adopted the "restrictive" theory of foreign sovereign immunity, under which "the sovereign immunity of foreign states should be 'restricted' to cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform." H.R. Rep. No. 1487, 94th Cong., 2d Sess. 14 (1976) (*House Report*); see *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U.S. 682, 698 (1976) (plurality opinion). With respect to enforcing judgments by executing against a foreign state's property, however, the "traditional view" continued to be that "the property of foreign states [was] absolutely immune from execution." *House Report* 27.

In 1976, Congress enacted the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. 1330, 1602 *et seq.*, to establish "a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities." *Verlinden B.V.* v. *Central Bank of Nigeria*, 461 U.S. 480, 488 (1983). The FSIA provides that a foreign state is "immune from the jurisdiction of the courts," 28 U.S.C. 1604; see 28 U.S.C. 1330, unless a statutory exception to immunity applies, see 28 U.S.C. 1605-1607. These exceptions largely codified the restrictive theory of immunity. *House Report* 14.

3

The FSIA also modified the previous rule of absolute immunity of foreign state property from execution, providing for the first time a limited means of enforcing a judgment against a foreign state through execution upon the state's property.  Under Section 1609, foreign sovereign property in the United States "shall be immune from attachment[,] arrest[,] and execution except as provided in [S]ections 1610 and 1611."  28 U.S.C. 1609.  Section 1610(a) provides that property owned by a foreign state "shall not be immune from attachment in aid of execution, or from execution" if it is "used for a commercial activity in the United States" and certain enumerated conditions are satisfied.  28 U.S.C. 1610(a).  Section 1610(b) provides that the property of an agency or instrumentality of a foreign state is not immune from execution and attachment if the agency or instrumentality is "engaged in commercial activity in the United States" and certain other conditions are satisfied, regardless of whether the property itself is used for commercial activity.  See 28 U.S.C. 1610(b).

2.  Petitioners are American citizens who were injured, or whose relatives were injured, in a terrorist attack orchestrated by Hamas in Jerusalem in 1997.  Pet. App. 2a.  Respondents are the Islamic Republic of Iran (Iran), against which petitioners obtained a default judgment holding it liable on the basis of the material support and training it provided to Hamas; as well as the University of Chicago and the Field Museum of Natural History, both of which hold ancient Persian artifacts against which petitioners seek to execute in order to satisfy their judgment against Iran.

a.  In 2001, petitioners brought suit in the United States District Court for the District of Columbia against Iran, alleging that it was liable for their injuries.

4

Pet. App. 2a.  When Iran did not appear in the action, petitioners sought a default judgment.  In accordance with 28 U.S.C. 1608(e), which governs the entry of default judgments against foreign sovereigns, the district court determined that Iran was subject to suit under the terrorism exception, 28 U.S.C. 1605(a)(7) (1996), and that it was liable for petitioners' injuries.[1]  See *Campuzano* v. *Islamic Republic of Iran*, 281 F. Supp. 2d 258, 269-271 (D.D.C. 2003).  The court awarded petitioners $71.5 million in compensatory damages.  Pet. App. 5a.

b.  In 2003, petitioners registered their judgment in the United States District Court for the Northern District of Illinois.  Petitioners then instituted this proceeding against the University of Chicago's Oriental Institute and the Field Museum of Natural History, seeking to enforce the judgment against Iran by executing upon three collections of Persian artifacts held by the respondent institutions.  Pet. App. 5a-6a.  The parties disputed whether the collections were immune from execution under the FSIA.  *Id*. at 7a-8a.  The United States filed a statement of interest supporting respondents' contention that the collections were immune.  See 03-cv-9370 Docket entry (Docket entry) No. 20 (N.D. Ill. July 28, 2004).

---

[1]  Congress originally enacted a version of the terrorism exception in 1996.  Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a)(1)(C), 110 Stat. 1241 (28 U.S.C. 1605(a)(7) (Supp. II 1996)).  In 2008, Congress repealed that provision and enacted an amended terrorism exception.  National Defense Authorization Act for Fiscal Year 2008 (NDAA), Pub. L. No. 110-181, § 1083(a), 122 Stat. 338 (28 U.S.C. 1605A (Supp. II 2008)); NDAA § 1083(b)(1)(A)(iii), 122 Stat. 341.

5

Rather than deciding whether the collections were immune, the district court held that immunity from execution is an "affirmative defense" that could be asserted only by the sovereign—in this case, Iran, which had not appeared in the action. *Rubin* v. *Islamic Republic of Iran*, 436 F. Supp. 2d 938, 941, 943 (N.D. Ill. 2006). In reaching that conclusion, the court rejected the position taken by the United States in a second statement of interest. See Docket entry No. 145 (Mar. 3, 2006).

c. As a result of the district court's ruling, Iran appeared in the action to assert that the artifacts were immune from execution. Pet. App. 8a-9a. Iran's appearance prompted petitioners to seek additional discovery from Iran in an attempt to uncover any other sovereign assets in the United States that might be subject to execution. *Id.* at 9a. Specifically, petitioners requested "[a]ll documents, including without limitation any communication or correspondence, concerning any and all tangible and intangible assets, of whatever nature and kind, in which Iran and/or any of Iran's agencies and instrumentalities has any legal and/or equitable interest, that are located within the United States." *Ibid.* (brackets in original). Petitioners also sought a Rule 30(b)(6) deposition concerning the nature and location of all Iran-owned assets in the United States. *Ibid.*

Iran sought a protective order shielding it from petitioners' discovery requests and moved for summary judgment on the ground that the FSIA barred execution against the artifacts. Pet. App. 9a-10a. The United States filed a third statement of interest, arguing that the court should "exercise its discretion to control discovery" consistently with the FSIA's presumption of immunity from execution, and should permit only that discovery concerning the collections against which peti-

6

tioners initially sought execution.  Docket entry No. 300 (Nov. 16, 2007).

The district court upheld petitioners' demand for general-asset discovery, *i.e.*, "discovery of all assets owned by [Iran] that are located in the United States." Pet. App. 94a; see *id.* at 10a-11a, 46a, 69a-70a.  The court reasoned that "once Iran filed an appearance in this case in order to assert immunity from execution upon its assets, it also voluntarily obligated itself to comply with requirements imposed on all litigants, including the obligation to respond to requests for discovery."  *Id.* at 94a.

3.  a.  Iran appealed the district court's order permitting general-asset discovery and its earlier ruling that immunity from execution is an affirmative defense that must be asserted by the foreign state.  The University of Chicago and the Field Museum of Natural History intervened.  Pet. App. 11a.  The United States filed a brief as amicus curiae in support of reversal.  U.S. Amicus Br. 2-3 (No. 08-2805).

b.  The court of appeals reversed, holding that both of the district-court rulings at issue were "seriously flawed" and "[could not] be reconciled with the text, structure, and history of the FSIA."  Pet. App. 3a; *id.* at 1a-40a.

The court of appeals first held that the district court's order requiring "general-asset discovery regarding *all* of Iran's assets in the United States" was "incompatible" with the FSIA.  Pet. App. 23a.  The court observed that execution proceedings are governed by Federal Rule of Civil Procedure 69(a), which permits "[d]iscovery requests in aid of execution," and that the FSIA "does not directly address the extent to which a judgment creditor may pursue" such discovery.  *Id.* at 23a-24a.  Nonetheless, the court reasoned, Section 1609 pro-

7

vides that foreign-state property is presumptively immune from execution, and that the purposes of that immunity include "protect[ing] foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery." *Id.* at 23a (citing cases). The court therefore held, adopting the reasoning of the Second, Fifth, and Ninth Circuits, that when a plaintiff seeks discovery in order to determine whether a foreign state's property falls within an exception to immunity under Section 1610, the district court should permit discovery "circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Id.* at 27a (citing *EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 486 (2d Cir.), cert. denied, 592 U.S. 818 (2007); *Connecticut Bank of Commerce* v. *Republic of Congo*, 309 F.3d 240, 260 n.10 (5th Cir. 2002), cert. denied, 544 U.S. 962 (2005); and *Af-Cap, Inc.* v. *Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095-1096 (9th Cir. 2007)).

The court emphasized that "[d]iscovery orders that are broad in scope and thin in foundation unjustifiably subject foreign states to unwarranted litigation costs and intrusive inquiries about their American-based assets." Pet. App. 27a. As a result, the court of appeals held, the district court was wrong to give petitioners a "'blank check' entitlement to discovery regarding *all* Iranian assets in the United States," without regard to whether those assets might be subject to execution. *Id.* at 26a-27a. Instead, "a plaintiff seeking to attach the property of a foreign state in the United States must identify the specific property that is subject to attachment and plausibly allege that an exception to [Section] 1609 attachment immunity applies." *Id.* at 32a.

8

The court of appeals also reversed the district court's ruling that immunity from execution is an "affirmative defense" that must be specially pleaded by the foreign sovereign. Pet. App. 32a-38a.  The court concluded that to give effect to Section 1609's creation of a presumption of immunity from execution, a district court must determine for itself whether an exception to immunity applies, even if the foreign state itself does not appear in the proceeding.[2] *Ibid.*

### DISCUSSION

The court of appeals correctly held that district courts should permit discovery in aid of execution to satisfy a judgment against a foreign state only insofar as that discovery is consistent with Section 1609's presumption of immunity.  The court also correctly concluded that the general-asset discovery ordered by the district court cannot be reconciled with that presumption.  Although the court's statement that judgment creditors must identify specific property before obtaining discovery may in some circumstances unduly limit a district court's discretion to approve discovery that is consistent with the presumption of immunity, the precise content and import of that holding remain to be determined in future cases.  And the court's decision does not conflict with that of any other court of appeals.  The petition for a writ of certiorari should therefore be denied.

---

[2]  Petitioners do not challenge this holding before this Court.  Pet. i.

9

I.  **THE COURT OF APPEALS CORRECTLY HELD THAT THE GENERAL-ASSET DISCOVERY ORDERED BY THE DISTRICT COURT IS INCONSISTENT WITH THE FSIA**

   A.  **The Court Of Appeals Correctly Held That A District Court Should Exercise Its Discretion Over Discovery In Aid Of Execution Consistent With The Presumption Of Immunity From Execution Established In The FSIA**

   1.  a.  The United States has long recognized that foreign sovereigns are generally immune from suit in our courts and their property is largely immune from execution.  See *The Schooner Exch.* v. *McFaddon*, 11 U.S. (7 Cranch) 116, 137 (1812).  The FSIA codifies those principles, with some modifications, by establishing two presumptive rules of immunity.  First, a foreign state is immune from suit—and from the jurisdiction of the court—unless an exception enumerated in Section 1605, 1605A, or 1607 applies.  See 28 U.S.C. 1604 and 1330(a).  Second, the property of a foreign state is "immune from attachment[,] arrest[,] and execution except as provided in [S]ections 1610 and 1611."  28 U.S.C. 1609.

   Consistent with pre-FSIA practice, under which foreign-state property was absolutely immune from execution even if the sovereign had been held to be subject to suit, "the execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself."  *Walters* v. *Industrial & Commercial Bank of China, Ltd.*, 651 F.3d 280, 289 (2d Cir. 2011).  Thus, the fact that a foreign state has been held to be subject to *suit* under Sections 1605 through 1607 does not mean that the foreign state's property in the United States is subject to *execution*.  See *id.* at 288-289.  Rather, the property of a foreign state may be exe-

10

cuted upon to satisfy a judgment only if the property
itself is "used for a commercial activity in the United
States" and certain other conditions are satisfied. 28
U.S.C. 1610(a). Under the FSIA, then, "jurisdictional
immunity * * * and execution immunity * * * oper-
ate independently" of each other. *Walters*, 651 F.3d at
288.

Because Section 1609 provides that a foreign state's
property "shall be immune" from execution unless an
exception applies, 28 U.S.C. 1609, the property is pre-
sumptively immune, whether or not the foreign state
appears to assert immunity. See *Peterson* v. *Islamic
Republic of Iran*, 627 F.3d 1117, 1127-1128 (9th Cir.
2010). A judgment creditor seeking to enforce a judg-
ment against the property of a foreign sovereign there-
fore bears the burden of identifying the property to be
executed against and establishing that it falls within an
exception to immunity from execution. See, *e.g.*,
*Walters*, 651 F.3d at 297; Pet. App. 26a.

b. When immunity from execution turns on factual
issues, a judgment creditor may seek discovery from the
foreign state to develop facts establishing that the prop-
erty is not immune. See, *e.g.*, *Walters*, 651 F.3d at 296-
297; *Af-Cap, Inc.* v. *Chevron Overseas (Congo) Ltd.*, 475
F.3d 1080, 1095-1096 (9th Cir. 2007). Although the
FSIA does not expressly address the permissible scope
of discovery for the purpose of determining whether
assets of a foreign sovereign are immune from execution
under Section 1609, Pet. App. 24a; see *House Report* 23,
the district court must exercise its discretion consistent
with the presumption of immunity established in Section
1609. Pet. App. 23a-25a.

That immunity exists not only to shield foreign state-
owned property from seizure, but also to protect against

11

"the costs, in time and expense, and other disruptions attendant to litigation." *EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 486 (2d Cir.), cert. denied, 592 U.S. 818 (2007).  To permit burdensome discovery into a foreign state's property without regard to whether that property might fall within an exception to immunity would vitiate the FSIA's protections.  See *Butler* v. *Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009); *Connecticut Bank of Commerce* v. *Republic of Congo*, 309 F.3d 240, 260 n.10 (5th Cir. 2002), cert. denied, 544 U.S. 962 (2005).  That is particularly so because Section 1610(a) establishes that immunity from execution is broader than immunity from suit.  A foreign state's assets may thus be immune even though the state has already been held liable for the plaintiffs' claims.

The execution immunity codified in the FSIA also reflects comity and reciprocity concerns, see *Peterson*, 627 F.3d at 1127-1128; cf. *National City Bank of N.Y.* v. *Republic of China*, 348 U.S. 356, 362 (1955), both of which are implicated by discovery in aid of execution. This Court has long recognized that "[t]he judicial seizure" of a foreign state's property "may be regarded as an affront to its dignity and may . . . affect our relations with it" at least to the same extent as subjecting a foreign state to suit.  *Republic of Philippines* v. *Pimentel*, 553 U.S. 851, 866 (2008) (internal quotation marks omitted; brackets in original); see *Peterson*, 627 F.3d at 1127 ("These policy considerations apply more strongly in the context of immunity from execution."); *Connecticut Bank of Commerce*, 309 F.3d at 255-256. Compelling a foreign state to produce extensive material in discovery concerning its assets similarly may impose significant burdens and impugn the state's dignity, and

may have implications for the United States' foreign relations.

Such discovery may also have reciprocal consequences for the treatment of the United States in foreign courts. The United States maintains extensive overseas holdings as part of its worldwide diplomatic and security missions. Because "some foreign states base their sovereign immunity decisions on reciprocity," *Persinger* v. *Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir.), cert. denied, 469 U.S. 881 (1984), a U.S. court's allowance of unduly sweeping discovery concerning a foreign state's assets may cause the United States to be subjected to similar treatment abroad. Cf. *McCulloch* v. *Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963) (construing statute to avoid "invit[ing] retaliatory action from other nations").

2. The court of appeals therefore correctly held that when a plaintiff seeks discovery concerning the property of a foreign state, the district court should not grant unlimited discovery, but instead should permit discovery only insofar as it is consistent with the FSIA's presumption of immunity and the comity and reciprocity concerns embodied therein. Pet. App. 23a, 32a. As the court correctly concluded, a district court should permit discovery "circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Id.* at 27a; *EM Ltd.*, 473 F.3d at 486.

Petitioners contend (Pet. 10-13) that "[o]nce the plaintiff has overcome a foreign state's jurisdictional immunity from suit, * * * the foreign state no longer has any statutory protection from the inconvenience of suit," Pet. 12 (internal quotation marks omitted), and as a result, in execution proceedings a judgment creditor may "obtain discovery regarding any nonprivileged mat-

13

ter that is relevant," Pet. 10 (quoting Fed. R. Civ. P. 26(b)(1)). That argument overlooks the fact that the FSIA expressly provides that even when a foreign state is subject to suit (because that suit falls within an exception to immunity under Sections 1605, 1605A, or 1607), its property remains presumptively immune from attachment or execution except as specifically provided in Sections 1610 and 1611. 28 U.S.C. 1609. Congress thus provided foreign states with an independent entitlement to be free of unreasonable burdens in connection with litigation to enforce judgments, even if they are subject to the court's jurisdiction—and to sometimes extensive discovery—for purposes of adjudicating the merits of the underlying suit. See *Peterson*, 627 F.3d at 1127-1128.

The fact that immunity from execution under the FSIA is not jurisdictional, moreover, does not alter the statutory policy of protecting foreign states from undue burdens in litigating execution proceedings. Section 1609, like Section 1604, creates a presumption of immunity, thereby evidencing Congress's intent to protect foreign states from the burdens of litigation. See *NML Capital, Ltd.* v. *Banco Central de la Republica Argentina*, 652 F.3d 172, 193-194 (2d Cir. 2011). In addition, Section 1609 largely codified the pre-FSIA practice under which foreign-state property enjoyed absolute immunity from execution, even if the state had been held subject to suit, in recognition of the independent comity concerns raised by executing upon foreign-sovereign property. See *Peterson*, 627 F.3d at 1127-1128; *Loomis* v. *Rogers*, 254 F.2d 941, 943 (D.C. Cir. 1958), cert. denied, 359 U.S. 928 (1959). Given that backdrop, and the fact that discovery in aid of execution may also raise comity concerns, there is no reason to think that Con-

14

gress intended Section 1609 immunity to provide foreign states no protection from the burdens of litigating execution proceedings.  See *Peterson*, 627 F.3d at 1127-1128.

In arguing to the contrary, petitioners rely (Pet. 12) on Section 1606, which provides that once a plaintiff establishes that his claims fall within an exception to the foreign state's immunity from suit, the state "shall be liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. 1606.  But that provision addresses only liability; it does not speak to the immunity from execution established in Section 1609.  See Pet. App. 28a.  Even when a foreign state is found liable consistent with Section 1606, in order to enforce the judgment a plaintiff must demonstrate that the foreign state's property is not immune from execution.  See *Walters*, 651 F.3d at 289.

### B.  The Court Of Appeals Correctly Held That The General-Asset Discovery Ordered By The District Court Is Inconsistent With The Presumption Of Immunity

The court of appeals correctly concluded that the "'blank check' entitlement to discovery regarding *all* Iranian assets in the United States" approved by the district court in this case is inconsistent with the presumptive immunity established by the FSIA.  Pet. App. 26a-27a, 32a.

1.  Consistent with the principles discussed above, a district court presented with a discovery request concerning the immunity of foreign-state property must balance the judgment creditor's need for discovery with the foreign state's "legitimate claim to immunity."  *EM Ltd.*, 473 F.3d at 486.  Subjecting a foreign state to the substantial burden of collecting and producing informa-

15

tion on all its assets in the United States, without any reason to think that the assets in question might fall within the statutory exceptions from immunity, would vitiate the presumption of immunity against execution. Before allowing discovery, therefore, the court should require the judgment creditor to demonstrate that the proposed discovery is directed toward assets for which there is a reasonable basis to believe that an exception to immunity applies.  That prerequisite is parallel to the showing that courts have required before permitting discovery by a plaintiff into whether a foreign state is subject to suit under an exception to Section 1604's presumptive immunity.  See, *e.g.*, *Butler*, 579 F.3d at 1314-1315 (in the Section 1604 context, plaintiff must plausibly allege an exception to immunity and discovery must be limited to facts relevant to that issue); *Federal Ins. Co.* v. *Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1284 n.11 (3d Cir. 1993), cert. denied, 511 U.S. 1107 (1994).

Here, the district court ordered Iran to produce all documents concerning *all* assets in the United States in which the state and its agencies and instrumentalities hold an interest—without requiring petitioners to identify any basis for believing that *any* of the assets covered by that capacious discovery order might fall within an exception to immunity.  Pet. App. 9a, 94a.  Indeed, given the exhaustive nature of the order, it is highly likely that complying would entail producing information about properties that indisputably are immune from execution.  To force a foreign state to shoulder the burden of assembling—and producing pursuant to the order of a U.S. court—comprehensive information about potentially extensive assets, divorced from any showing that the assets might not be immune, would be to "unjustifiably subject foreign states to unwarranted litiga-

16

tion costs and intrusive inquiries about [its] American-based assets." *Id.* at 27a.  Because an important purpose of presumptive immunity is to "shield foreign states from these burdens," the court of appeals correctly held that the general-asset discovery order could not be reconciled with the FSIA's presumption of immunity. *Ibid.*

The district court's order was particularly unjustified in view of the fact that Iran appeared in the action only because the court had held that Iran was required to do so in order to assert immunity.  Even had that ruling been correct—it was not, see Pet. App. 36a—the court should not have treated Iran's appearance, which it made for the limited purpose of asserting immunity, see Gov't C.A. Br. 19, as a justification for general discovery concerning property not encompassed within petitioners' initial execution pleadings.

2.  One way for a judgment creditor to make the necessary showing that the discovery sought is directed toward assets for which there is a reasonable basis to believe that an exception to immunity applies is, as the court of appeals held, to "identify the specific property" at issue and "plausibly allege that an exception to § 1609 attachment immunity applies." Pet. App. 32a.  Depending on the circumstances, however—and the assets and immunity exceptions at issue—it may be possible for a judgment creditor to demonstrate that its discovery requests are sufficiently tailored to potentially non-immune assets even though they do not identify specific items of property.  Ultimately, the district court must determine whether the judgment creditor has made a sufficient showing that the discovery concerns potentially non-immune assets in light of the circumstances of the case and the balance between the judgment credi-

17

tor's need for the information and the foreign state's claim to immunity.  See *Connecticut Bank of Commerce*, 309 F.3d at 260 n.10.

To the extent the court of appeals held that identifying *specific items* of property is invariably a required component of demonstrating that the discovery sought is directed toward potentially non-immune assets, its decision may unduly limit the district court's discretion. The scope and import of the court's holding is unclear, however, because the only discovery order before the court was the general-asset order.  The court of appeals correctly held that such an order is irreconcilable with the FSIA's presumption of immunity because, in failing to identify *any* particular assets or categories of assets, the order necessarily required discovery that is untethered to any reasonable basis for asserting an exception to immunity.  Pet. App. 27a.  As a result, the court had no occasion to consider the precise content of its requirement that a judgment creditor identify specific property, or how that requirement might apply in other cases.  In particular, the court will have to determine in future cases whether a judgment holder must invariably identify specific items of property, or whether there are circumstances in which more generalized identification would suffice if the party demonstrates that the discovery requests are otherwise tailored to assets that it has a reasonable basis for concluding may be subject to execution.

3.  The court of appeals' asset-identification holding does not warrant this Court's review.  The import of the decision is unclear, and even assuming that the court held that judgment creditors must invariably identify specific assets that are potentially non-immune before obtaining discovery, the decision does not conflict with

18

that of any other court.  See Part II, *infra*.  This case would be a poor vehicle to consider the showing necessary before a judgment creditor may obtain discovery into a foreign state's assets, moreover, because the general-asset discovery order at issue in this case is completely unmoored from any reasonable and focused claim of non-immunity and would be inappropriate under any standard.

In addition, petitioners overstate (Pet. 22) the implications of the Seventh Circuit's decision for judgment creditors' ability to locate potentially attachable assets. Even a requirement that judgment creditors must always identify specific assets before obtaining discovery would not foreclose all opportunities to uncover attachable assets.  In some cases, the United States may consider engaging in diplomatic efforts on a creditor's behalf to encourage the foreign state to pay the judgments outstanding against it.  See, *e.g.*, *FG Hemisphere Assocs., LLC* v. *Democratic Republic of Congo*, 447 F.3d 835, 838-839 (D.C. Cir. 2006).  In addition, any party who has obtained a judgment concerning a claim for which the foreign state is not immune under Section 1605(a)(7) or 1605A may request that the Secretary of State and the Secretary of the Treasury provide assistance in identifying or locating the property of the foreign state in the United States.  See 28 U.S.C. 1610(f)(2)(A).[3]

---

[3] Petitioners assert (Pet. 23) that the President is permitted to waive, and has waived, Section 1610(f)(2)(A)'s assistance provision. To the contrary, the President's waiver authority extends only to Section 1610(f)(1), not Section 1610(f)(2).  28 U.S.C. 1610(f)(3).

19

## II. THE COURT OF APPEALS' DECISION DOES NOT CON-FLICT WITH THE DECISION OF ANY OTHER COURT OF APPEALS

The court of appeals' holding that discovery in attachment proceedings against a foreign state must be undertaken in accordance with the presumption of immunity embodied in Section 1609, Pet. App. 27a, is consistent with the decisions of every other court of appeals to have considered the issue. See *ibid.* (citing *EM Ltd.*, 473 F.3d at 486 (discovery should be granted "circumspectly" to accommodate the presumption of immunity); *Connecticut Bank of Commerce*, 309 F.3d at 260 n.10; *Af-Cap Inc.*, 475 F.3d at 1095-1096). The same is true of the court's conclusion that the general-asset discovery order is irreconcilable with the presumption of immunity. Nor is there any circuit conflict to the extent that the court of appeals held that a plaintiff must identify specific property as a prerequisite to discovery, because no other court of appeals has addressed that particular issue. Petitioners' arguments to the contrary are mistaken.

Petitioners first rely (Pet. 17-19) on two Second Circuit decisions concerning post-judgment discovery against Rafidain Bank, a state-owned instrumentality of Iraq. See *First City, Texas-Houston, N.A.* v. *Rafidain Bank*, 150 F.3d 172 (1998) (*Rafidain I*); *First City, Texas-Houston, N.A.* v. *Rafidain Bank*, 281 F.3d 48 (*Rafidain II*), cert. denied, 537 U.S. 813 (2002). Neither addressed the questions presented here. In *Rafidain I*, the plaintiffs obtained a default judgment against Rafidain after the district court held that Rafidain was subject to suit under Section 1605(a)(2). 150 F.3d at 174. The plaintiffs subsequently sought discovery against Rafidain in order to determine whether another entity,

20

the Central Bank of Iraq, could be subject to suit as the alter ego of Rafidain.  The court of appeals held that although discovery against the Central Bank would implicate the "comity concerns" embodied in the FSIA because the Central Bank's immunity had not yet been determined, "full discovery" against Rafidain concerning the alter ego question did not raise the same concerns because Rafidain had already been held to be non-immune.  *Id.* at 177.  The court therefore had no occasion to address the appropriate scope of discovery when the discovery is sought against a foreign sovereign for the purpose of determining the immunity of that sovereign's property from execution.

In *Rafidain II*, the Second Circuit rejected Rafidain's argument that the district court's jurisdiction under Sections 1605(a)(2) and 1330(a) ended when the default judgment was entered against it.  Rather, the court held, the district court's jurisdiction continued through post-judgment enforcement proceedings and included the authority to conduct execution proceedings under Rule 69(a).  *Rafidain II*, 281 F.3d at 53-54.  The Second Circuit emphasized that its holding concerned only "the court's subject matter jurisdiction, not its discretion" in ordering discovery, and that "[n]o doubt, courts should proceed with care" in ordering asset-related discovery.[4]

---

[4]  Petitioners argue (Reply Br. 7-8) that a recent decision, *Walters* v. *Industrial & Commercial Bank of China*, *supra*, demonstrates that the Second Circuit would interpret *Rafidain I* and *II* as permitting a general-asset discovery order of the sort at issue here.  Petitioners are incorrect.  In *Walters*, the judgment creditors argued that they were entitled to execute against sovereign assets allegedly held in certain banks without specifically identifying the accounts or demonstrating that they fell within an exception to immunity from execution.  See 651 F.3d at 296.  The court held that "the burden of identifying specific, recoverable assets" and demonstrating their non-immunity rested on

21

*Id.* at 54.  That holding is entirely consistent with the decision below, which concerns the permissible *scope* of discovery. Pet. App. 23a-24a.

Petitioners next rely (Pet. 19-21) on *Richmark Corp.* v. *Timber Falling Consultants*, 959 F.2d 1468 (9th Cir.), cert. dismissed, 506 U.S. 948 (1992), but that decision is also inapposite.  There, the Ninth Circuit held that Beijing Ever Bright Industrial Co., an instrumentality of the People's Republic of China, was required to comply with an asset discovery order even though Ever Bright contended that compliance would violate Chinese state secrecy laws.  *Id.* at 1474, 1478.  Because Ever Bright did not argue that the discovery order was inconsistent with its immunity from execution under the FSIA, the court did not address that issue.  Rather, the court's only mention of the FSIA occurred in the context of its rejection of Ever Bright's argument that Federal Rule of Civil Procedure 62(d)'s requirement that a judgment debtor post a supersedeas bond or letter of credit in order to stay execution proceedings pending appeal was inconsistent with the FSIA.  *Id.* at 1477-1478.  That discussion is inapposite here.  But cf. Pet. 20.

Even if *Richmark* and *Rafidain I* and *II* had addressed the appropriate scope of discovery in aid of execution, they would be distinguishable from the decision below because they concerned enforcement proceedings "against an *instrumentality* of a foreign sovereign, not the foreign sovereign itself."  Pet. App. 30a.  For pur-

---

the judgment creditors, and it observed that in order to carry that burden, the creditors could seek "discovery pertaining to the judgment debtor's assets pursuant to * * * [*Rafidain II*]."  *Id.* at 297.  *Walters* thus merely reaffirmed that a district court has the "power[]" to order discovery, *ibid.*; it did not address the showing necessary to obtain such discovery or suggest that general-asset discovery would be warranted.

22

poses of immunity from execution, the FSIA distinguishes between the property of foreign states and that of their agencies and instrumentalities.  The property of a foreign state may be subject to execution only if it is "used for a commercial activity in the United States" and other specified conditions are met.   28 U.S.C. 1610(a).  In contrast, *all* property of the instrumentality of a foreign state is subject to execution if the instrumentality has been found to be amenable to suit under any of several exceptions, such as the commercial-activity and terrorism exceptions, 28 U.S.C. 1605(a)(2) and 1605A, and the instrumentality is engaged in commercial activity in the United States—regardless of how the property itself is used or whether it has any relation to the plaintiff's claim.  28 U.S.C. 1610(b); see *Walters*, 651 F.3d at 290.

Because "property owned by a foreign state's instrumentalities is generally more amenable to attachment than property owned by the foreign state itself," Pet. App. 21a, it may be appropriate for a court, in the exercise of its discretion over discovery, to permit broader asset discovery against the instrumentality of a foreign state than against the foreign state itself.  Discovery of an instrumentality's assets would not necessarily raise the same concerns about compelling production concerning assets that are indisputably immune from execution. In addition, because "state instrumentalities engaged in commercial activities" may be "akin to commercial enterprises," discovery into a foreign instrumentality's property may be less likely to raise comity and reciprocity concerns than discovery against the foreign state itself.  See Restatement (Third) of Foreign Relations Law § 460, cmt. b (1987).

23

**CONCLUSION**

The petition for a writ of certiorari should be denied.

Respectfully submitted.

|  |  |
|---|---|
|  | DONALD B. VERRILLI, JR.<br>*Solicitor General* |
|  | STUART F. DELERY<br>*Acting Assistant Attorney General* |
|  | EDWIN S. KNEEDLER<br>*Deputy Solicitor General* |
|  | GINGER D. ANDERS<br>*Assistant to the Solicitor General* |
| HAROLD HONGJU KOH<br>*Legal Adviser*<br>*Department of State* | MARK B. STERN<br>SHARON SWINGLE<br>JEFFREY E. SANDBERG<br>*Attorneys* |

MAY 2012