**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SERVAAS INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CV 1862 (RMB) (RLE) |
| | ) | |
| v. | ) | |
| | ) | |
| REPUBLIC OF IRAQ and | ) | |
| MINISTRY OF INDUSTRY OF THE | ) | |
| REPUBLIC OF IRAQ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY**
**POST-JUDGMENT DISCOVERY PENDING APPEALS**

---

**MAGGS & MCDERMOTT, LLC**

Timothy B. Mills (TM-8693)          Tennant D. Magee, Sr. (TM-5871)
910 17th Street, N.W., Suite 800     800 Old Bridge Road
Washington, DC 20006                 Brielle, New Jersey
Telephone: (202) 457-8090            Telephone: (732) 223-9870
Email: TimothyBMills@aol.com         Email: tdmagee@yahoo.com
*Lead Counsel for Defendants*        *Co-Counsel for Defendants*

**LAW OFFICES OF STEPHEN ALBRIGHT**

Stephen Albright (SA-4979)
4 Bay Hills Court
Huntington, New York 11743
Telephone: (631) 425-0511
Email: salbrightesq@gmail.com
*Co-Counsel for Defendants*

Dated: 7 March 2013

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ...................................................................................... vi

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 3

     A.     Governmental Structure of Iraq ................................................................. 3

     B.     SerVaas' Post-Judgment Discovery Requests ........................................... 3

     C.     Third-Party Subpoenas ............................................................................. 4

     D.     District Court Decisions on Appeal ........................................................... 4

ARGUMENT

A STAY OF DEFENDANTS' POST-JUDGMENT DISCOVERY
OBLIGATIONS AND OF ALL OBLIGATIONS BY THIRD-PARTIES
TO RESPOND TO SUBPOEANAS SEEKING DISCOVERY OF THE
ASSETS OF IRAQ AND THE NON-PARTY SOVEREIGN ENTITIES
IS NECESSARY TO PROTECT AGAINST IRREPARABLE HARM ......................... 5

     A.     Standard of Review .................................................................................. 5

     B.     Absent Entry of a Stay, Defendants Will Suffer Irreparable
     .      Injury ....................................................................................................... 6

     C.     Plaintiff Will Not Suffer Any Substantial Injury If a Stay Is
     .      Entered .................................................................................................... 7

     D.     The Important Public and International Comity Interests
     .      Favor a Stay ............................................................................................ 7

     E.     There Is a Substantial Possibility of Success on Both Appeals ................. 8

     .      1.     Appeal of Summary Judgment Decision .................................... 9

i.      The Statutory Language and Purpose of Article 53,
        and the Case Law Do Not Permit Confirmation
        of a Foreign Judgment Against a Non-Party ...................................9

ii.     The Elements of Article 53 Were Not Satisfied ..........................11

iii.    Foreign Law Was Ignored and Defendants Were
        Not Afforded a Presumption of Separate Juridical
        Status ......................................................................................12

iv.     The Second Circuit's Prior Jurisdictional Decision
        Does Not and Cannot Support the Summary
        Judgment Decision .......................................................................14

v.      Legal Conclusions Were Deemed Admitted as Facts,
        Prior Disputed Record Evidence Were Ignored, and
        the Evidence Was Not Weighed In Favor of
        Defendants as Non-Moving Parties Under Rule 56......................15

vi.     *Noga* Supports Defendants' Position ...........................................16

vii.    As a Matter of Summary Judgment Estoppel Was Not
        Proven and Thus Did Not Provide a Basis for Entry of
        Summary Judgment ...................................................................18

viii.   Defendants Were Precluded from Filing Dispositive
        Motions on the Basis of the District Court's
        Individual Practices ...................................................................19

2.      Discovery Decision Appeal .....................................................................19

i.      The Second Circuit Created a Circuit-Split with the
        Seventh, Fifth, And Ninth Circuits That Is Likely
        To Result in a Grant of Certiorari by the Supreme Court ............19

ii.     Reversal of *EM* and Affirmation of *Rubin* Results
        in Reversal of the District Court's Discovery Decision ...............21

iii.    *EM* Fails to Confront Prior Second Circuit
        Jurisprudence that Is At Odds With the *EM* Decision .................21

iv.     *EM* Is Distinguishable .................................................................23

v.      The Discovery Decision Improperly Concludes
        that the Non-Party Sovereign Entities Are

Defendants and Compels Discovery Responses
On Their Behalf By Defendants .....................................................23

vi.     The Discovery Requests Do Not Comply With
        the Federal and New York Rules of Civil
        Procedure ...........................................................................24

CONCLUSION ..................................................................................................... 25

EXHIBITS

1.      Amicus Brief filed by Solicitor General of the United States in *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011), *cert. denied*, 133 S.Ct. 23 (2012), filed on June 8, 2012, by Defendants in support of cross-motion for protective order [79]

2.      Petition for writ of *certiorari* to the Supreme Court of the United States filed by Republic of Argentina to the Supreme Court (U.S. No. 12-842) from the decision of the United States Court of Appeals for the Second Circuit in *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012)

3.      Extract of Declaration of Omar Ghassan Jamil Al-Wiswasi filed on August 28, 2009, in support of Defendants' motion to dismiss and relied upon by Defendants in support of their opposition to Plaintiff's motion for summary judgment and in Defendants' pending appeal of the Summary Judgment decision [18-2 and 57]

4.      Extract of Declaration of Fakhri Kadhum filed on August 28, 2009, in support of Defendants' motion to dismiss and relied upon by Defendants in support of their opposition to Plaintiff's motion for summary judgment and in Defendants' pending appeal of the Summary Judgment decision [18-3 and 57]

5.      Defendant's Fed. R. Civ. P. 44.1 Notice in support of Defendants' Motion to Dismiss dated August 28, 2009, [19]

6.      Extract of Declaration of Hanan Nassef Defendants in Support of Defendants' Opposition to Plaintiff's Motion to Compel and in Support of Defendants' Cross-motion for Protective Order filed June 8, 2012 [79-3]

7.      Plaintiff's discovery requests propounded upon Defendants

8.      Plaintiff's post-judgment third-party subpoena served upon JP Morgan Chase Bank on October 15, 2012

9.      Plaintiff's post-judgment third-party subpoena served upon Bank of New York Mellon on November 14, 2012

10.     Extract of Declaration of John Piskora, Esquire in support of Plaintiff's Motion for Summary Judgment, filed on August 15, 2012 [53]

11.     Extract of Plaintiff Local Civil Rule 56.1 Statement in support of Plaintiff's Motion for Summary Judgment filed on August 15, 2012 Plaintiff [52]

## TABLE OF AUTHORITIES

### Cases

**Page**

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 651 F.3d 280
   (2d Cir. 2011) ..................................................................................................19

*All Metro Health Care Services, Inc. v. Edwards*, 25 Misc.3d 863,
   884 N.Y.S.2d 648 (N.Y. Sup. Ct. 2009) ...................................................18

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 34 (2d Cir. 1999) ........................................................................18

*Barnes v. E-Systems, Inc. Group Hospital Med. & Surgical Ins. Plan*,
   501 U.S. 1301, 112 S.Ct. 1 (1992) ..............................................................6

*CBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215,
   762 N.Y.S.2d 5 (2003) ..............................................................................10

*CDR Crances S.A. v. Euro-American Lodging Corp.*, 7 Misc.3d 1019,
   801 N.Y.S.2d 232 (N.Y. Sup. Ct. 2005) ...................................................10

*CDR Creances S.A. v. Euro-American Lodging Corp.*, 40 A.D.3d 421,
   837 N.Y.S.2d 609 (1st Dep't 2007) ...........................................................10

*Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.*,
   899 F.Supp. 1248 (S.D.N.Y. 1995) ...........................................................11

*Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian
   Federation*, 361 F.3d 676 (2d Cir. 2004) ...................... 12 ,13, 14, *passim*

*Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240
   (5th Cir. 2002) .....................................................................................19, 20

*De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) ....................23

*Dresdner Bank AG v. Haque*, 161 F.Supp.2d 259 (S.D.N.Y. 2001) ............18

*EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012),
  *petition for cert. filed*, 2013 WL 122883 (January 7, 2013)
  (No. 12-842) ......................................................................... 2, 8, 9, *passim*

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611, 103 S.Ct. 2591 (1983) ............................. 12, 13, 14, *passim*

*First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48
  (2d Cir. 2002) ...................................................................... 21, 22, 23, *passim*

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172
  (2d Cir. 1998) ...................................................................................21, 22, 24

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F.Supp.2d 540
  (S.D.N.Y. 2001) ...................................................................................6, 7, 8

*Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 904 N.Y.S.2d 683
  (2010) ........................................................................................................10

*Guinness PLC v. Ward*, 955 F.2d 875 (4th Cir. 1992) ................................12

*Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113 (1987) ..........................6

*Hirschfeld v. Board of Elections*, 984 F.2d 35 (2d Cir. 1992) ......................6

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ................15

*In re Arbitration between Promotora de Navegacion, S.A. and
  Sea Containers, Ltd.*, 131 F.Supp.2d 412 (S.D.N.Y. 2000) ....................11

*Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313
  (2d Cir. 1973) ...........................................................................................12

*McCulloch v. Sociedad Nacional de Marineros de Honduras*,
  372 U.S. 10 (1963) .....................................................................................8

*Monahan v. New York City Dep't of Corrections*, 214 F.3d 275
  (2d Cir. 2000) ...........................................................................................15

*Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91
(2d Cir. 2001) .......................................................................................................9

*Nippon EMO-Trans Co., Ltd. v. EMO-Trans, Inc.*, 744 F.Supp. 1215
(E.D.N.Y. 1990) .................................................................................................11

*Novae v. Corporate Underwriting Ltd. v. Atlantic Mutual Ins. Co.*,
556 F. Supp. 2d 489 (E.D.Pa. 2008) .................................................................10

*Olympic Chartering, S.A. v. Ministry of Industry and Trade of Jordan*,
134 F.Supp.2d 528 (S.D.N.Y. 2001) ............................................................22, 24

*Orion Shipping & Trading Co., Inc. v. Eastern States Petroleum Corp.
of Panama, S.A.*, 312 F.2d 299 (2d Cir. 1963) ................................................10

*Overseas Development Bank in Liquidation v. Nothmann*, 103 A.D.2d
534, 480 N.Y.S.2d 735 (2d Dep't 1984), *order rev'd*, 64 N.Y.2d 927,
488 N.Y.S.2d 632 (1985), *on remand*, 115 A.D.2d 719, 496 N.Y.S.2d
534 (N.Y. A.D. 1985) .......................................................................................12

*Persinger v. Islamic Republic of Iraq*, 729 F.2d 835 (D.C. Cir.),
*cert. denied*, 469 U.S. 881 (1984) ....................................................................8

*Rubin v. The Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011),
*cert. denied*, 133 S.Ct. 23 (2012) ................................... 2, 19, 20, *passim*

*Satori, LLC v. Prodema*, LLS, 2011 WL 4436181
(N.D.N.Y. September 22, 2011) .......................................................................10

*Sawyer v. Wight*, 196 F.Supp.2d 220 (E.D.N.Y. 2002) .......................................15

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,
Kommanditgesellschaft v. Navimpex*, 989 F.2d 572 (2d Cir. 1993) ...............11, 12

*Servaas Inc. v. Republic of Iraq*, 2011 WL 454501
(2d Cir. February 10, 2011) .............................................................................15

*Stumpf AG v. Dynegy Inc.*, 32 A.D.3d 232, 820 N.Y.S.2d 24
(N.Y.A.D. 1 Dept. 2006) ..................................................................................12

*Sung Hwan Co. v. Rite Aid Corp.*, 7 N.Y.3d 78 (2006) .........................................11

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the*
  *Lao People's Democratic Republic*, 2011 WL 4111504
  (S.D.N.Y. Sept. 13, 2011) ..............................................................21

*Thomas and Agnes Carvel Foundation v. Carvel*, 736 F.Supp.2d 730
  (S.D.N.Y. 2010) ..........................................................................12

*Transatlantic Shiff Ahrtskontor v. Shanghai Foreign Trade Corp.*,
  996 F.Supp. 326 (S.D.N.Y. 1998) ....................................................11

*U.S. v. Moats*, 961 F.2d 1198 (5th Cir. 1992) ........................................6

*V. Corp. Ltd. v. Redi Corp.*, 2004 WL 2290491
  (S.D.N.Y. October 9, 2004) ............................................................12

*Walters v. Industrial and Commercial Bank of China, Ltd.*,
  651 F.3d 280 (2d Cir. 2011) ...........................................................21

## **Statutes**

28 U.S.C. §1603 .............................................................................1

28 U.S.C. §1605 ...........................................................................22

28 U.S.C. §1609 ..............................................................1, 8, 19, *passim*

28 U.S.C. §1610 ..............................................................1, 8, 19, *passim*

CPLR §5224 ..................................................................................24

CPLR §5302 ..................................................................................11

CPLR §5303 ....................................................................................9

CPLR §5304 ..................................................................................11

**<u>Rules</u>**

Fed. R. Civ. P. 33 ..................................................................................................25

Fed. R. Civ. P. 34 ..................................................................................................25

Fed. R. Civ. P. 56 ..................................................................................................18

Fed. R. Civ. P. 62 ..................................................................................................5

Fed. R. Civ. P. 69 ..................................................................................................25

## <u>PRELIMINARY STATEMENT</u>

Defendants Republic of Iraq ("Iraq") and Ministry of Industry of Republic of Iraq ("Ministry") (collectively "Defendants") – each of which has been found by the Second Circuit (at this juncture) to be a "foreign state" as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1603(a), and as used in FSIA Sections 1609 and 1610(a) – seek a stay of that portion of the Decision and Order entered on 29 August 2012 ("Discovery Decision") by Hon. Richard M. Berman, U.S.D.J., compelling discovery responses pending the Second Circuit's resolution of Defendants' two appeals.  In addition, on the same grounds, Defendants seek a stay of all discovery obligations of JP Morgan Chase Bank ( "JP Morgan"), Mellon Bank of New York ("Mellon"), and other third-party banking institutions to produce documents and information pertaining to Defendants pursuant to the third-party subpoenas served upon JP Morgan and Mellon by plaintiff SerVaas, Incorporated ("Plaintiff").

Defendants' <u>first pending appeal</u>[1] seeks reversal of the Decision and Order entered on 1 February 2012 ("Summary Judgment Decision") by Judge Berman, which summarily granted a CPLR Article 53 judgment to Plaintiff against Defendants confirming against both the 1991 French judgment ("French Judgment"), which the French Court entered *only* against Ministry (*not* Iraq) because SerVaas had named, joined, and maintained Ministry as the only defendant party to the French proceedings.  Defendants assert that summary judgment was improperly granted and the French Judgment incorrectly confirmed against Iraq, a non-party, and separate and independent juridical entity from Ministry under Iraqi law, and that they were improperly denied the right to bring certain dispositive motions.

---

[1] By agreement of the parties, further briefing of Defendants' appeals before the Second Circuit has been placed in abeyance while the parties pursue settlement discussions.  In lieu of re-setting the briefing dates, the Second Circuit clerk's office directed the parties to enter into joint stipulations of dismissal, without prejudice to reinstatement by way of letter notice from Defendants-Appellants, by not later than March 29, 2013.

Defendants' <u>second pending appeal</u> seeks reversal of the Discovery Decision, which granted Plaintiff's motion to compel post-judgment discovery and denied Defendants' motion for protective order. Defendants assert that Plaintiff's post-judgment discovery requests and the Discovery Decision compelling discovery are improper pursuant to the FSIA.

A stay of all post-judgment discovery obligations pending those appeals is required on the grounds that Plaintiff's discovery requests eviscerate Defendants' immunities under the FSIA. Defendants submit that: (1) the infringement of their rights under the FSIA by compelling responses to expansive discovery requests by Defendants and entities not parties to the French Judgment (at least thirty-four (34) major ministries of Iraq and 192 Iraqi State-Owned Enterprises (collectively "Non-Party Sovereign Entities")) constitutes irreparable injury – absent a stay, sensitive financial information of Defendants and Non-Party Sovereign Entities will be irretrievably disclosed, *i.e.*, once the genie is out of the bottle, it cannot be reinserted; (2) there is no specter of substantial injury to Plaintiff if the stay is granted; (3) as evidenced by the position of the Solicitor General of the United States in the Brief for the U.S. as Amicus Curiae ("U.S. Amicus Br.") presented in respect to the petition for *certiorari* denied by the Supreme Court in *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011), *cert. denied*, 133 S.Ct. 23 (2012), and the positions taken by Argentina in *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012), *petition for cert. filed*, 2013 WL 122883 (January 7, 2013) (No. 12-842),[2] there are important public interests which will be affected if post-judgment discovery against foreign sovereign states is permitted as ordered by the Discovery Decision; and (4) Defendants possess a substantial possibility of success on appeal in the Summary Judgment Decision and the Discovery Decision.

---

[2] Defendants append the U.S. Amicus Br. in *Rubin* at <u>Exhibit 1</u> and the petition for writ of *certiorari* to the Supreme Court of the United States in *EM* at <u>Exhibit 2</u>.

## FACTUAL BACKGROUND

### A.      Governmental Structure of Iraq

Pursuant to Iraqi law, the ministries of Iraq and state-owned enterprises are organized as separate juridical persons from one another and from Iraq, the effect of which precludes one such juridical person from creating legal responsibilities or liabilities for either Iraq as a whole or for any other such separate juridical person.[3]  (*See* Exhibit 3 at ¶¶6-7; Exhibit 4 at ¶6-7; Exhibit 5 at pp. 2-6; Exhibit 6 at ¶¶3, 9, 15-16, 21-22, 26).  Within each of the ministries, there are numerous administrative entities and separate juridical persons, including, in most ministries, state-owned enterprises.  (Exhibit 6 at ¶¶15-16).  Each ministry keeps and maintains its own records, is in charge of its own affairs, makes and administers its own contracts, has its own budget, is accountable for its own actions, but not for the actions of any other ministry or other Iraqi sovereign juridical person, and may sue and be sued itself in Iraqi and foreign courts for its own actions or failure to act, but not for the actions or failure to act of any other juridical person.  (*See* Exhibit 3 at ¶¶6-7; Exhibit 4 at ¶7; Exhibit 5 at pp. 2-6; Exhibit 6 at ¶16).  In total, there are thirty-four (34) major ministries of Iraq and 192 Iraqi state-owned enterprises with separate offices that exist following the change of national government in Iraq in 2003.  (Exhibit 6 at ¶¶15-16, 19).  Finally, the Iraqi National Oil Company has not existed since 1987.  (*Id.* at ¶13).

### B.      SerVaas' Post-Judgment Discovery Requests

SerVaas' discovery requests seek: (i) discovery from separate foreign-sovereign juridical entities in contravention of the Federal and New York Rules of Civil Procedure (*i.e.*, Ministry of Trade, Iraqi National Oil Company, all political subdivisions, agencies, and/or instrumentalities

---

[3]  The governmental structure of Iraq is set forth at greater length by the Declarations of Omar Ghassan Jamil Al-Wiswasi, Acting Director General of the Legal Department of the Ministry of Justice for Iraq, Fakhri Kadhum, head of the Legal Consultation Bureau of the Military Industrialization Board, Director General of the Legal Department of the Council of Ministers and Legal Department of the Ministry of Justice of Iraq, and Hanan Nassef, Director General of the Legal Department of the Ministry of Justice of Iraq, as Exhibit 3, Exhibit 4, and Exhibit 6, and, upon which, Defendants rely as if set forth at length herein.

of Iraq, all state-owned entities, enterprises, and other commercial entities beneficially owned by Iraq, and all state-owned enterprises, agencies, and/or instrumentalities of Ministry (again, "Non-Party Sovereign Entities")) that were not parties to the litigation, are not parties to the judgment, without any allegations of alter ego, and who are not represented by counsel for Defendants; (ii) the identity of all persons with knowledge of all commercial transactions by Defendants and Non-Party Sovereign Entities in the United States, the disclosure of all such transactions, and all documents relating thereto; (iii) the identity of all bank, brokerage accounts, and letters of credit in the United States of Defendants and all Non-Party Sovereign Entities; (iv) all documents disclosing all financial activity of Ministry, including all budget documents, balance sheets, income statements, and asset listings; (v) all documents sufficient to identify the source of Ministry's and Ministry of Trade's operating funds; and (vi) all information and documents relating to the property of Defendants and all Non-Party Sovereign Entities in the United States and whether such property has been the subject of commercial transactions, the nature of such transactions, and all persons with knowledge thereof.  (Exhibit 7).

### C.       Third-Party Subpoenas

On October 15, 2012, Plaintiff served a third-party subpoena upon JP Morgan.  (Exhibit 8).  On November 14, 2012, Plaintiff served a third-party subpoena upon Bank of New York Mellon.  (Exhibit 9).  Those subpoenas are identical and demand the confidential and financial information of Defendants, twenty-seven additional ministries, 192 state-owned enterprises, the Central Bank of Iraq, and all agencies and instrumentalities of Iraq. (Id.).

### D.       District Court Decisions on Appeal

On 1 February 2012, Judge Berman entered the Summary Judgment Decision, thereby confirming the French Judgment against Defendants pursuant to Article 53 of the CPLR.

Memorandum Opinion re Plaintiff's Motion for Summary Judgment dated February 1, 2012 [67].[4]. On 2 March 2012, Defendants filed an Amended Notice of Appeal of the Summary Judgment Decision [71 and 72].

On 29 August 2012, Judge Berman entered the Discovery Decision, thereby denying Defendants' motion for protective order and granting Plaintiff's motion to compel [86]. Memorandum Opinion re Plaintiff's Motion to Compel and Defendants' Cross-Motion for Protective Order dated August 29, 2012 [87].[5] On 17 September 2012, Defendants filed a Notice of Appeal of the Discovery Decision [87].

## ARGUMENT

### A STAY OF DEFENDANTS' POST-JUDGMENT DISCOVERY OBLIGATIONS AND OF ALL OBLIGATIONS BY THIRD-PARTIES TO RESPOND TO SUBPOENAS SEEKING DISCOVERY OF THE ASSETS OF IRAQ AND THE NON-PARTY SOVEREIGN ENTITIES IS NECESSARY TO PROTECT AGAINST IRREPARABLE HARM

A stay of Defendants' discovery obligations and the obligations of third-party financial institutions pending appeals of the Summary Judgment Decision and Discovery Decision is required in order to protect Defendants against irreparable harm. Indeed, if a stay is not entered, sensitive and confidential financial information of Defendants and the Non-Party Sovereign Entities will be disclosed, numerous foreign sovereign entities' immunities provided by the FSIA will be abdicated, significant issues of international comity will be abridged, and Defendants' ultimate success on either appeal cannot unwind any disclosure,.

### A.    Standard of Review

Federal Rule of Civil Procedure 62(c) provides that this Court may "suspend, modify, restore, or grant an injunction during the pendency of the appeal on such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Any decision

---

[4] Hereinafter referred to as "SJ Decision [67] at page."
[5] Hereinafter referred to as "Discovery Decision [67] at page."

to stay during the pendency of an appeal must be based upon the following four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1992) (citations and internal quotations omitted). Application of those factors must be performed by a balancing of the equities in the particular case – no single factor is dispositive and due regard must be provided to the relative harms resulting from entry of a stay and the interests of the public at large. *See Barnes v. E-Systems, Inc. Group Hospital Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1304, 112 S.Ct. 1 (1992); *Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S.Ct. 2113 (1987).

**B.      Absent Entry of a Stay, Defendants Will Suffer Irreparable Injury**

Absent a stay, Defendants will be denied the ability to protect their immunities and the immunities of the Non-Party Sovereign Entities under the FSIA will be abridged. Absent a stay, the disclosure of the private, confidential financial information of Defendants and the Non-Party Sovereign Entities will occur and their immunities under the FSIA would be effectively lost forever as it pertains to this litigation and the information Plaintiff will discover. Put another way, the irreparable injury occurs immediately upon disclosure. *See U.S. v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992) (finding, in the context of the collateral-order doctrine, that the risk of harm in participating in a lawsuit where that obligation is suspect under the FSIA constitutes "irreparable loss"); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F.Supp.2d 540, 543 (S.D.N.Y. 2001) (finding "irreparable harm unless a stay of the discovery . . . is granted" where the argument on appeal is there is no obligation to produce the discovery pursuant to the FSIA).

In fact, the court-compelled disclosure of such information would, in effect, render Defendants' appeal of the Discovery Decision – for which it has a substantial possibility of success – feckless. Plaintiff will discover all assets of Iraq, Ministry, and the Non-Party Sovereign Entities in the United States before Defendants' appeal is decided. Absent a stay,

Defendants' success on appeal of the Discovery Decision would not unwind the discovery Plaintiff would improperly receive in abrogation of Defendants' immunities under the FSIA.

### C.   Plaintiff Will Not Suffer any Substantial Injury if a Stay is Entered

Further, entry of a stay will not visit substantial harm upon Plaintiff.

First, twenty-two (22) years have elapsed from the date of the French Judgment and entry of a stay would merely maintain the status quo.  The Summary Judgment Decision was entered on 1 February 2012 and the Discovery Decisions was entered on 29 August 2012.  Thus, the status quo over the twenty-one (21) of the past twenty-two (22) years has been the absence of any judgment against Defendants in the United States, and, significantly, Defendants do not request a stay of Plaintiff's right to seek enforcement of the French Judgment.  Rather, Defendants limit the requested stay of their post-judgment discovery obligations resulting from the Summary Judgment Decision and the Discovery Decision – including Defendants', the Non-Party Sovereign Entities', and the third-party banks' obligations.

Second, preservation of the status quo pending appeal relating to a money judgment where partial payments have been previously made on the amount allegedly owed (which is the case here [54 at ¶19]) does not and should not equate substantial harm to the party opposing the stay.  See Rafidain, 131 F.Supp.2d at 543 (finding no substantial harm to the party opposing the stay where the appeal was proceeding and partial payments towards the amounts allegedly owed had been made).

### D.   The Important Public And International Comity Interests Favor A Stay

The important public and international comity interests involved strongly favor entry of a stay.  As well put by the Solicitor General of the United States in the U.S. Amicus Br. in Rubin, a discovery request and any resulting order requiring a foreign state to produce information

concerning all of its assets located in the United States involves important public, comity, and reciprocity concerns.  (Exhibit 1 at 11-12).   Specifically,

> . . . Compelling a foreign state to product extensive material in discovery concerning its assets similarly may impose significant burdens and impugn the state's dignity, and may have implications for the United States' foreign relations.
>
> Such discovery may also have reciprocal consequences for the treatment of the United States in foreign courts.  The United States maintains extensive overseas holdings as part of its worldwide diplomatic and security missions.  Because "some foreign states base their sovereign immunity decisions on reciprocity," *Persinger v. Islamic Republic of Iraq*, 729 F.2d 835, 841 (D.C. Cir.), *cert. denied*, 469 U.S. 881 (1984), a U.S. court's allowance of unduly sweeping discovery concerning a foreign state's assets may cause the United States to be subjected to similar treatment abroad.  *Cf. McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963) (construing statute to avoid "invit[ing] retaliatory action from other nations").

(Exhibit 1 at 11-12).

Indeed, questions that implicate the duties of sovereign entities and non-party sovereign entities in litigation, including discovery, have been characterized as issues that are important to the public interest.  *See, e.g.*, *Rafidain*, 131 F.Supp.2d at 543 (the public interest weighs in favor of a stay where "important issues concerning the duty of non-party foreign sovereign instrumentalities" are compelled "to supply discovery in federal litigation").  That is especially true here, where Plaintiff's requests are remarkable for their shear overbreadth, burdensomeness, oppressiveness, and expense they would cause foreign-sovereign parties and non-parties alike.

### E.    There is a Substantial Possibility of Success on Both Appeals

Finally, there is a substantial possibility of success on each of Defendants' appeals.  As to the Summary Judgment Decision, Article 53 does not support the confirmation of a foreign judgment against a non-party and Defendants were wrongfully precluded from filing dispositive motions.  As to the Discovery Decision, *EM* created a Circuit-split that is pending *certiorari* to the Supreme Court between the Second Circuit (favors Plaintiff) and the Seventh, Fifth, and Ninth Circuits (favor Defendants) on the issue as to whether Sections 1609 and 1610 of the FSIA

preclude the post-judgment discovery sought by Plaintiff in this case, and *EM* does not square

with prior Second Circuit precedent that supports Defendants' contentions.

### 1.     Appeal of Summary Judgment Decision

There is a substantial possibility of Defendants' success on appeal of the Summary

Judgment Decision.

#### i.     The Statutory Language and Purpose of Article 53, and the Case Law Do Not Permit Confirmation of a Foreign Judgment Against a Non-Party

The District Court committed reversible error when it exceeded the narrow scope of

Article 53 and confirmed the French Judgment against non-party Iraq.  The plain statutory

language of Article 53, the purpose of Article 53, and the case law preclude confirmation of a

foreign judgment against a non-party to a foreign judgment.

The District Court ignored the unambiguous and plain statutory requirement that

confirmation of a foreign judgment be limited to judgments "*between the parties*."  CPLR §5303

(emphasis added).  Instead, the District Court relied upon the non-recognition grounds set forth

in Section 5304 to conclude that the French Judgment is enforceable against Iraq because

personal jurisdiction existed over Iraq under New York law.  SJ Decision [67] at 5-8.  Those

non-recognition grounds, however, are subject to Section 5303 and are not reached unless a

defendant is a party to the judgment sought to be enforced.  *See Natural Res. Def. Council, Inc.

v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) (statutory construction begins with the text and its

plain meaning).

Even if the statutory language of Article 53 were ambiguous, the purpose of Article 53

requires the same conclusion.  Under Article 53, "the judgment creditor does not seek any new

relief against the judgment debtor, but instead merely asks the court to perform the ministerial

function of recognizing the foreign country money judgment and converting into a New York

judgment." *Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 81, 904 N.Y.S.2d 683, 685 (2010)

(internal citation omitted); *CDR Creances S.A. v. Euro-American Lodging Corp.*, 40 A.D.3d 421,

422, 837 N.Y.S.2d 609 (1st Dep't 2007).  If non-parties to a foreign judgment were subject to

confirmation based upon a finding of personal jurisdiction under New York alone, the purpose of

Section 5303 would be negated and an absurd result would be created.  *See Muszynski*, 268 F.3d

at 98 (where there is ambiguity in a statute, "absurd results are to be avoided").

     In addition, precedent supports Defendants' interpretation of Article 53.  *See Novae v.*

*Corporate Underwriting Ltd. v. Atlantic Mutual Ins. Co.*, 556 F. Supp. 2d 489, 494 (E.D.Pa.

2008) (holding that the language "between the parties" in Pennsylvania's Uniform Foreign

Money Judgment Recognition Act "applies only as between the identical parties to the

judgment" and "the statute does not provide any authority to enter judgment against an entity

that was not named in the foreign country judgment" (internal quotations and citations omitted));

*Satori, LLC v. Prodema*, LLS, 2011 WL 4436181 at *2 (N.D.N.Y. September 22, 2011)

(reaching the identical conclusion as *Novae* under Article 53).  The reasoning employed by both

*Novae* and *Satori* is supported by other Article 53 decisions in the New York courts that declare

Article 53 is a ministerial proceeding which does not include requests for new relief.  *See, e.g.,*

*Galliano*, 15 N.Y.3d at 81; *CBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215,

221-22, 762 N.Y.S.2d 5 (2003); *CDR Crances S.A. v. Euro-American Lodging Corp.*, 7 Misc.3d

1019, 801 N.Y.S.2d 232 (N.Y. Sup. Ct. 2005).  Such reasoning is further supported by decisions

holding that pulling a non-party to an arbitration into a confirmation proceeding prompts queries

that are not "within the four corners of the dispute submitted to the arbitrators" and improperly

requires "a protracted evidentiary hearing . . . to resolve them."  *See Orion Shipping & Trading*

*Co., Inc. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963)

("[A]n action for confirmation is not the proper time for the District Court to 'pierce the corporate veil.'"); *accord In re Arbitration between Promotora de Navegacion, S.A. and Sea Containers, Ltd.*, 131 F.Supp.2d 412, 421-22 (S.D.N.Y. 2000); *Transatlantic Shiff Ahrtskontor v. Shanghai Foreign Trade Corp.*, 996 F.Supp. 326, 332 (S.D.N.Y. 1998).

### ii.  The Elements of Article 53 Were Not Satisfied

Even if application of Article 53 were proper, the District Court committed reversible error when it concluded that Plaintiff met its burden of establishing each of the elements of Article 53 – that the French Judgment is final, conclusive, and enforceable in France against Iraq. SJ Decision [67] at 5-8.  Plaintiff failed to introduce *any* evidence that the French Judgment is enforceable against Iraq in France [52 at ¶25 and 53] and confirmed the French Judgment against Iraq on a factually and legally flawed finding that the judgment was conclusive against Iraq because the Ministry is the alter ego of Iraq [67 at 5-8].[6]  (*See* Exhibit 10; Exhibit 11).

Article 53, however, requires a party seeking confirmation of a foreign judgment to satisfy its burden with proper proofs that the judgment is enforceable in the foreign jurisdiction. *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v.*

---

[6] In order to determine whether a foreign judgment is conclusive under Article 53, the evidence must support that (1) the judgment was rendered by a system that provides impartial tribunals or procedures compatible with due process of law and (2) that the foreign court possessed jurisdiction over the defendant.  CPLR §5304(a); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.*, 899 F.Supp. 1248, 1252 (S.D.N.Y. 1995).  Despite the language in CPLR §5302 providing that a foreign judgment must be "conclusive . . . where rendered[,]" New York courts have interpreted the personal jurisdiction requirement to establish a judgment as "conclusive" to be subject to an analysis under New York law.  *See, e.g., Canadian Imperial*, 899 F.Supp. at 1252-53; *Nippon EMO-Trans Co., Ltd. v. EMO-Trans, Inc.*, 744 F.Supp. 1215, 1219-20 (E.D.N.Y. 1990); *Sung Hwan Co. v. Rite Aid Corp.*, 7 N.Y.3d 78, 82-83 (2006).

No court, however, has ever applied New York law on the question of personal jurisdiction to find conclusiveness over a non-party foreign sovereign entity under Article 53.  The logical and reasonable inference is that no court has because such a decision would subvert the express statutory language and purpose of Article 53 discussed *supra* – it is a ministerial function not intended to permit new relief and limits confirmation of foreign judgments to those between the parties which are final, conclusive, and enforceable where rendered.  Therefore, application of New York law in an Article 53 proceeding is improper where a party seeks to impose liability for a foreign judgment against a non-party.

*Navimpex Central Navala*, 989 F.2d 572, 581-83 (2d Cir. 1993); *Thomas and Agnes Carvel Foundation v. Carvel*, 736 F.Supp.2d 730, 746 (S.D.N.Y. 2010); *Stumpf AG v. Dynegy Inc.*, 32 A.D.3d 232, 233, 820 N.Y.S.2d 24 (N.Y.A.D. 1 Dept. 2006).  As required proof of enforceability, a plaintiff must establish that under foreign law the judgment is enforceable in that jurisdiction against the party it seeks confirmation and a court cannot confirm a judgment absent that evidence.  *See V. Corp. Ltd. v. Redi Corp.*, 2004 WL 2290491 at *2 (S.D.N.Y. October 9, 2004) (under Article 53, "[t]he provision that a foreign judgment be enforceable 'where rendered' requires the court to focus on the law of the foreign country where the decree was issued" (quoting *Guinness PLC v. Ward*, 955 F.2d 875, 888-89 (4th Cir. 1992)); *see also Seetransport*, 989 F.2d at 581-82; *Overseas Development Bank in Liquidation v. Nothmann*, 103 A.D.2d 534, 480 N.Y.S.2d 735 (2d Dep't 1984), *order rev'd*, 64 N.Y.2d 927, 488 N.Y.S.2d 632 (1985), *on remand*, 115 A.D.2d 719, 496 N.Y.S.2d 534 (N.Y. A.D. 1985); *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1323 (2d Cir. 1973) (decree "was conclusive and enforceable in Curacao").  Despite that legal requirement, the record is devoid of evidence that the French Judgment is enforceable against Iraq in France.

### iii.      Foreign Law Was Ignored and Defendants Were Not Afforded a Presumption of Separate Juridical Status

Even if the French Judgment could be confirmed against Iraq under an analysis of conclusiveness against a non-party, the District Court committed reversible error when it declined to apply foreign law and the robust presumption of separate juridical status required by *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 103 S.Ct. 2591 (1983), *and Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation* ("*Noga*"), 361 F.3d 676 (2d Cir. 2004).  The District Court is simply wrong when it declined to apply those cases because they did not involve "New York's Recognition Act, and

[they] serve as persuasive, rather than controlling, authority." SJ Decision [67] at 5-8. New York's statutory scheme does not preclude application of United States Supreme Court precedent on the important question of the enforcement of foreign judgments against foreign sovereign entities.

Instead, *Bancec* mandates that courts adhere to international comity between sovereigns and apply a foreign sovereign's law to determine whether the entity is a separate and independent juridical entity and entitled to a presumption of separateness:

> [d]ue respect for the actions taken by foreign sovereigns and for principles of comity between nations, . . . leads us to conclude – as the courts of Great Britain have concluded in other circumstances – that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.

462 U.S. at 626-27 (citation omitted).

The first and threshold question to be addressed under *Bancec* is whether a foreign entity is a separate juridical entity entitled to a presumption of separate status. That question must be answered by the courts under an analysis of foreign law. *See id.* at 627-28 (a governmental entity's separate juridical status is presumptively determined by the foreign law under which it was organized); *Noga*, 361 F. 3d 685 (applying Russian law to determine juridical status). Logic compels that conclusion and *Bancec* and *Noga* confirm it would be impossible, nay absurd, for courts to determine a foreign sovereign entity's status without first conducting an analysis of that foreign sovereign's law to determine how the entity was formed and structured.

In *Bancec*, the Supreme Court first looked to Cuban law to assess how Bancec was created prior to engaging in its analysis of liability. 462 U.S. at 613-16. After assessing the Cuban statutes creating and dissolving Bancec, the Supreme Court then moved on to "decide which body of law determines the effect to be given to Bancec's separate juridical status." *Id.* at

621 (emphasis added).  Without engaging in that analysis, the Supreme Court could not have assessed the "effect" to be given and would have been precluded from holding that foreign sovereign entities established as distinct and independent juridical entities from the foreign sovereign state "should be normally treated as such."  *Id.* at 626 (emphasis added).

In *Noga*, an assessment of Russian law was also a necessity under this Court's analysis of both federal common law and international law.  361 F.3d at 686-88.  Without first assessing Russian law, this Court would have been unable to reach the conclusion that the Government of Russia was a "political organ[ ]" of the Russian Federation.  *Id.* at 688-89.

The failure to apply foreign law at this stage renders the principles of comity undergirding *Bancec* nugatory.  Courts would be permitted to assess what does or does not constitute a separate juridical entity or "political organ" through the lens of American jurisprudence and disregard the legitimate actions of foreign states.  That result is not contemplated or supported by *Bancec*, is not supported by principles of comity, and would raise the specter of grave consequences for the United States in foreign tribunals. And, here, the District Court's perfunctory and flawed analysis of alter ego under the conclusiveness factor fails to apply the required robust presumption of separate status required by *Bancec* and that omission is fatal to its entry of summary judgment.  *See Bancec*, 462 U.S. at 630-31.

### iv.     The Second Circuit's Prior Jurisdictional Decision Does Not and Cannot Support the Summary Judgment Decision

The District Court also committed reversible error when it relied upon the Second Circuit's prior finding (applicable only with respect to jurisdiction, *not* to the merits) that "there is 'no meaningful legal distinction between [Ministry] and the Republic[,]'" and, therefore, the French Judgment is final, conclusive, and enforceable against Iraq.  SJ Decision [67] at 8. However, the Second Circuit limited its finding to a jurisdictional analysis under the "core-

functions" test of the FSIA [28]. *See Servaas Inc. v. Republic of Iraq*, 2011 WL 454501 at *2-3 (2d Cir. February 10, 2011) (declining to exercise pendent appellate jurisdiction over the issue that Plaintiff failed to state a claim upon which relief could be granted because the question of jurisdiction under the FSIA and of liability are separate). Thus, reliance upon that statement to support the alter-ego analysis of personal jurisdiction improperly applies the "core-functions" to a question of substantive liability.

> **v.  Legal Conclusions Were Deemed Admitted as Facts, Prior Disputed Record Evidence Were Ignored, and the Evidence Was Not Weighed in Favor Of Defendants**

The District Court also committed reversible error by supporting its finding of the purported alter-ego relationship between Defendants upon legal conclusions deemed to be admitted facts, prior record evidence outside of Plaintiff's Local Civil Rule 56.1 Statement previously placed in dispute by Iraq, failing to weigh the disputed record evidence in favor of Iraq, and incorrect legal conclusions on the actual record. SJ Decision [67] at 5-8. Although the District Court was within its authority to exceed the 56.1 Statement to review the entire record, it erred when it limited its view to the evidence submitted by Plaintiff and disregarded the evidence submitted by Iraq. Based upon the record evidence submitted by Iraq, under Iraqi law, and not the inadmissible conjecture and lay testimony regarding Iraqi law submitted by Plaintiff in support of its motion, Ministry and Iraq are two separate and independent juridical entities. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("while a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement" (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)); *Sawyer v. Wight*, 196 F. Supp. 2d 220, 225-27 (E.D.N.Y. 2002)

(where courts elect to do so, they must construe the record evidence in a light most favorable to the non-moving party and consider the record evidence of the opposing party that places such evidence in dispute).  Without those errors, there is insufficient evidence with which to support a finding of and alter-ego relationship between Iraq and Ministry.

### vi.    *Noga* Supports Defendants' Position

Despite the aforesaid, it is expected that Plaintiff will rely upon *Noga* as the basis for urging the Second Circuit to affirm the District Court's finding that Iraq should be exposed to enforcement in the United States of the French Judgment on the basis that Ministry is a "political organ" of Iraq to confirm the French Judgment.  *See* 361 F.3d at 685-88.  *Noga*, however, directly supports the conclusion that Iraq cannot be hauled into this Article 53 proceeding and that the District Court committed reversible error.  In *Noga*, the Circuit recognized that given the *Bancec* decision, had either the Government or the Russian Federation wanted to shield the latter entity from being the subject of the confirmation proceedings, either could have designated a publicly-owned state corporation or instrumentality as the entity to enter into the contract.  *Noga*, 361 F.3d at 685-86 (emphasis added).  The measures identified – designating a publicly-owned corporation or instrumentality as the contracting entity – are precisely the measures implemented by Iraq.  The underlying contract was between SerVaas and the Al Shaheed Factory, under Iraqi law a separate and independent juridical person under Ministry, which is itself a separate and independent juridical person from Iraq.  (*See* Exhibit 3 at ¶¶6-8; Exhibit 4 at ¶¶6-8; Exhibit 5 at pp. 2-6; Exhibit 6 at ¶¶3, 9, 15-16, 21-22, 26).

In fact, *Noga* is so factually distinguishable that its mere comparison to this case support's Iraq argument.  In *Noga*, the Government and Russian Federation constituted two halves of a "bicameral federal executive" and this Court based its decision on the analogy that

"the Government is a political organ of the Russian Federation, analogous to the cabinet of the American president." *Noga*, 361 F. 3d at 685.   Specifically, the President of Russian Federation was the Head of State charged with exercising Federation's executive power: (1) submitting a federal budget; (2) implementing monetary policy; (3) and exercising Constitutional powers. *Id.* Thus, this Court did not need to engage in any meaningful analysis of agency law or alter-ego liability because under Russian law, federal common law, and international law it was beyond cavil that Russian Federation was so clearly part of the foreign state itself that they are "political organs." *See id.* at 685-690.   To reach that conclusion, this Court relied upon a Russian legal scholar who stated that "the Government 'is not a juridical person and enjoys no autonomous legal capacity.'" *Id.* at 685-690 (citations omitted).

In contrast, Defendants are not two halves of a bi-cameral executive branch and Ministry does not possess any of the executive powers wielded by the Russian Federation.  In further contrast, Plaintiff introduced no credible or admissible evidence on the question of Iraqi law, as was the case in *Noga*.  There is no corollary support for Plaintiff from any Iraqi legal scholar. Rather, all admissible evidence of Iraqi law submitted by Iraq supports a finding that Ministry is a separate juridical entity [52 and 53].  (*See* <u>Exhibit 3</u> at ¶¶6-7; <u>Exhibit 4</u> at ¶7; <u>Exhibit 5</u> at pp. 2-6; <u>Exhibit 6</u> at ¶¶3, 9, 15-16, 21-22, 26).

Finally, an important legal distinction between *Noga* and this Article 53 action precludes any finding that the French Judgment can be confirmed against Iraq in the manner that it was or under *Noga*.  Pursuant to the Federal Arbitration Act in *Noga*, the burden was upon Russian Federation to "overcome the presumption in favor of confirm[ation.]" 361 F.3d at 688.  In direct contrast, the burden is upon Plaintiff – pursuant to Federal Rule of Civil Procedure 56, Article 53, and *Bancec* – to overcome the presumption of separate juridical status afforded to Ministry.

*See* Fed. R. Civ. P. 56; *Bancec*, 462 U.S. at 626-27; *Dresdner Bank AG v. Haque*, 161 F.Supp.2d 259, 263 (S.D.N.Y. 2001).  That dispositive distinction should and does further preclude this Court from simply affirming the District Court on the grounds of *Noga*; there is no manner with which to review the actual record under the correct law and find that Plaintiff satisfied its burden.

### vii.    Estoppel Does Not Support the Summary Judgment Decision

The District Court's catch-all reliance upon an estoppel theory to support its finding that "Iraq is estopped from asserting that it was not bound by the French Judgment" is error.  SJ Decision [67] at 8.  The District Court's decision is predicated upon its incorrect conclusion that there is an alter-ego relationship between Ministry and Iraq and is limited to one statement that Iraq benefits from Contract without setting forth how or why.  *Id.* at 8.  Specifically, the District Court speculated that because "Ministry received the benefits of services and materials[,]" Iraq received "a direct benefit" as a result thereof,  and, therefore, "is estopped from asserting that it was not bound by the French Judgment. " *Id.* at 8.  However, Ministry is a separate and independent juridical entity from Iraq and Plaintiff failed to overcome the robust presumption. Therefore, the District Court's estoppel theory of liability and its reliance upon *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 34 (2d Cir. 1999), and *All Metro Health Care Services, Inc. v. Edwards*, 25 Misc.3d 863, 884 N.Y.S.2d 648 (N.Y. Sup. Ct. 2009), is misplaced. Iraq did not receive any such direct benefit.

### viii.    Defendants Were Precluded From Filing Dispositive Motions on the Basis of the District Court's Individual Practices

The District Court committed further reversible error when it precluded Defendants from filing dispositive motions to dismiss for forum *non conveniens*, for partial summary judgment, and to strike.  The District Court barred those motions on the unsupported basis of its individual practices alone and in the absence of an operative scheduling order [64 and 65].

### 2.     Discovery Decision Appeal

The French Judgment was entered against Ministry, Plaintiff's complaint names Defendants, summary judgment was entered against Defendants, and the Seventh, Fifth, and Ninth Circuits have held that Sections 1609 and 1610 of the FSIA apply to and expressly limit post-judgment discovery upon foreign sovereign entities.  Nevertheless, the Discovery Decision compels Defendants to produce discovery responses on behalf of themselves and the Non-Party Sovereign Entities, at least 226 presumptively immune, separate and independent juridical persons.  Discovery Decision [86] at 4-7; (Exhibit 7).  Based upon the following discrete grounds, there is a substantial possibility that Defendants will prevail on appeal of that decision.

### i.     The Second Circuit Created a Circuit-Split With the Seventh, Fifth, and Ninth Circuits That Is Likely to be Granted Certiorari by the United States Supreme Court

A Circuit-split was created by *EM* with the Seventh Circuit's decision in *Rubin* on the question of post-judgment discovery under the FSIA.  Given that the Second Circuit decided *EM* after the Supreme Court denied *certiorari* in *Rubin*, a decision contrary to the *EM* decision, the petition for writ of *certiorari* filed on 7 January 2013 is likely to be granted.

### ii.     Reversal of *EM* and Affirmation of *Rubin* Results in the Reversal of the Discovery Decision

The Seventh Circuit's interpretation (supported by the Fifth and Ninth Circuits) requires the conclusion that Defendants are immune from Plaintiff's requests, a fishing expedition which fails to *a priori* identify property being used for a commercial activity in the United States.  *See Rubin*, 637 F.3d at 799; *see Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 260 n. 10 (5th Cir. 2002).  "[U]nder the FSIA a plaintiff seeking to attach and provided discovery regarding the property of a foreign state in the United States *must identify the specific property that is subject*

*to attachment and plausibly allege than an exception to §1609 attachment immunity applies.*  If the plaintiff does so, discovery in aid of execution is limited to the specific property the plaintiff has identified." *Id.* (emphasis added).  A "*court cannot compel a foreign state to submit to general discovery about all its assets in the United States.*" *Id.* at 785 (emphasis added).

Indeed, "Section 1609 of the Act provides that 'the property in the United States of a foreign state *shall* be immune from attachment' *unless* an enumerated exception applies." *Id.* at 785 (emphasis supplied by Seventh Circuit).  It is a "presumptive immunity" that must be applied regardless of whether the foreign state appears, and the burden is squarely placed on the party seeking the post-judgment discovery. *See Id.* at 785-86, 796 (stating that the courts must determine "*sua sponte* if necessary – whether an exception to immunity applies" and "must make this determination regardless of whether the foreign state appears").

Because the immunity applies to specific property and not conduct, a court may not grant a "blank check[,]" permitting plaintiffs to discover all of the assets of a foreign sovereign state in the United States, as to do so inverts the statutory scheme.  *Rubin*, 637 F.3d at 795-96. Discovery in this context is limited to "specific property identified for attachment. . . ." *Id.* at 798-99.   As the Seventh Circuit noted in *Rubin*:

> It is true that limiting discovery to the specific property identified for attachment restricts the plaintiff's ability to use the coercive power of the court to identify other attachable foreign-state assets, but that is a consequence of the balance struck by the FSIA. *Nothing in the statutory scheme prevents judgment creditors from using private means to identify potentially attachable assets of foreign states located n the United States.*  Moreover, the FSIA includes a provision for judgment creditors in certain cases to enlist the assistance of the Secretary of the Treasury and the Secretary of State in identifying and executing against the assets of a foreign state.
>
> . . . .
>
> There is no question that the attachment immunity codified in §1609 of the FSIA has a cost, *and that cost is borne primarily by Americans who have been*

> *injured in tort or contract by foreign states or their agencies or instrumentalities.*
> The FSIA embodies a judgment that our nation's foreign-policy interests justify
> this particular allocation of legal burdens and benefits.

*Rubin*, 637 F.3d at 798-99 (emphasis added).

> In *Rubin*, plaintiffs demanded, *inter alia*, the following in post-judgment discovery
>
> that Iran turn over "[a]ll documents, including without limitation any
> communication or correspondence, concerning any and all tangible and intangible
> assets, of whatever nature and kind, in which Iran and/or any of Iran's agencies
> and instrumentalities has any legal and/or equitable interest, that are located
> within the United States. . . ."

*Rubin*, 637 F.3d at 788.  The Seventh Circuit rejected those requests under the FSIA and limited

plaintiffs to targeted discovery of specifically identified assets, *i.e.*, plaintiffs are not permitted

general, broad discovery of all of the foreign state judgment creditor's assets.  *Id.* at 796-99.

Here, Plaintiff's discovery requests – which indisputably are general-asset requests that

fail to identify a single asset and attempt to require discovery from almost every conceivable

Iraqi governmental entity as to worldwide assets – are nearly identical to the discovery requests

and discovery order to which the Solicitor General refers to in the Amicus Br., and which the

Seventh Circuit found violated the execution immunity of Iran.  *See Rubin*, 637 F.3d at 799

(cited with approval by the Second Circuit in *Walters v. Industrial and Commercial Bank of*

*China, Ltd.*, 651 F.3d 280, 289-95 (2d Cir. 2011), and by this Court in *Thai Lao Lignite*

*(Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 2011 WL 4111504 at *3,

5-6 (S.D.N.Y. Sept. 13, 2011)); (Exhibit 1; Exhibit 7).

> ### iii.   *EM* **Fails to Confront Prior Second Circuit Jurisprudence That is at Odds With its Decision**

*EM* fails to squarely address Second Circuit jurisprudence that precludes the post-

judgment discovery requests here under the FSIA.  *See Walters*, 651 F.3d at 290, 297; *First City,*

*Texas Houston, N.A. v. Rafidain Bank* ("*Rafidain II*"), 281 F.3d 48, 52-54 (2d Cir. 2002); *First*

*City, Texas-Houston, N.A. v. Rafidain Bank* ("*Rafidain I*"), 150 F.3d 172, 176-77 (2d Cir. 1998);

*Olympic Chartering, S.A. v. Ministry of Industry and Trade of Jordan*, 134 F.Supp.2d 528, 535

(S.D.N.Y. 2001).  Although *EM* relies upon *Rafidain I* and *Rafidain II*, its reliance was

misplaced and misapplied.  *Rafidain I* and *Rafidain II* comport with and are not inconsistent with

the holding in *Rubin* that jurisdiction under Section 1605 for liability does not extend to post-

judgment discovery under Section 1609.

 *Rafidain I* and *Rafidain II* are consistent with the nuanced and dispositive distinction in

Section 1610 between foreign sovereign states and agencies or instrumentalities, *i.e.*, post-

judgment jurisdiction and an exception to immunity exists over agencies or instrumentalities that

engage in commercial conduct in the United States and over a foreign sovereign state's *property*

that is used in commercial activity in the United States.  *See* 28 U.S.C. §1610.  As an agency or

instrumentality – and not a foreign sovereign state – against whom default judgment had been

entered, Rafidain had already been found to have engaged in commercial *activity* in the United

States.  *See Rafidain II*, 281 F.3d at 52-54; *Rafidain I*, 150 F.3d at 176-77.  Thus, in *Rafidain I*

and *Rafidain II* the Second Circuit did not run afoul of Section 1610 – Rafidain, as an agency or

instrumentality, was subject to post-judgment jurisdiction due to the finding that it had engaged

in commercial *activity* in the United States, and, therefore, there was no immunity from post-

judgment discovery.

 The analysis *vis-à-vis* agencies and instrumentalities is different from that of foreign

states.  Jurisdiction exists and there is no immunity for agencies and instrumentalities under

Section 1610(b) where a party establishes that such an entity has engaged in commercial activity

in the United States.  Post-judgment discovery is, therefore, properly directed initially at a

judgment-debtor agency's or instrumentality's commercial activity in the United States, and, if

that is established, a party may then discover the judgment debtor's assets, and, where alter ego allegations are made, information from the judgment debtor relating to its relationship with other foreign sovereign entities alone. *Rafidain II*, 281 F. 3d at 53-54. In contrast, jurisdiction exists and there is no immunity for a foreign sovereign state's property under Section 1610(a) where a party establishes that a state's specific property has been used for commercial activity in the United States. Post-judgment discovery is, therefore, properly directed initially at whether a judgment debtor state's specifically identified property has been used for commercial activity in the United States, and, if that is established, to the state regarding that property alone. *See Rubin*, 473 F.3d at 799.

### iv.   *EM* is Distinguishable

The Discovery Decision is predicated upon the recent Second Circuit decision in *EM*, which is distinguishable from this case. Discovery Decision [86] at 4-5. In *EM*, the post-judgment discovery requests were subpoenas directed to third-party banks and not foreign sovereign states. *Rubin*, 473 F.3d at *5.

### v.   The Discovery Decision Improperly Concludes That the Non-Party Sovereign Entities are Defendants and Compels Discovery Responses on Their Behalf by Defendants

In addition, the Discovery Decision compels Defendants to provide discovery responses on behalf of literally hundreds of separate juridical persons that, although existing under the laws of Iraq, are independent from the juridical persons that are the judgment debtors in this action: Iraq and Ministry Discovery Decision [86] at 4-7; (Exhibit 7). Accordingly, Plaintiff's requests – served upon Defendants alone – improperly seek post-judgment discovery from Non-Party Sovereign Entities. *See Rafidain II*, 281 F.3d at 54 (post-judgment discovery against a non-party

is limited to the issue of an alter ego relationship and to discovery from the judgment debtor on that issue); *see also De Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984).

Plaintiff has not alleged alter ego or any immunity exception with respect to the Non-Party Sovereign Entities, and, because they are separate juridical entities, they are entitled to a presumption of separateness. *See Rafidain I*, 150 F.3d at 176 (requiring the application of the presumption set fort in *Bancec* to questions of discovery against a non-party sovereign entity to the judgment); *Olympic*, 134 F.Supp.2d at 530 (rejecting claim by judgment creditor for jurisdictional discovery concerning the Central Bank of Jordan ("CBJ") because "petitioner has made no allegation that CBJ is an alter ego of the judgment debtor nor of 'fraud or injustice' involving CBJ" (quoting *Bancec*, 462 U.S. at 629)).

Where funds are sought to be attached, and, therefore, discovered are owned by a separate juridical entity of a foreign state, they are not available to satisfy a judgment against the foreign state. *See EM*, 473 F.3d at 465-66; *DeLetelier*, 748 F.2d at 792-95. Restated, a judgment creditor is limited to discovery against a judgment debtor and may not seek discovery against other separate juridical entities, *i.e.*, a central bank, agency, or instrumentality, except where there are allegations of an alter ego relationship and where the discovery is limited to those allegations. *See Rafidain I*, 150 F.3d at 177; *Olympic*, 134 F.Supp.2d at 530, 536 n. 5. Only where a plaintiff alleges alter ego liability in support of attachment may the issue of discovery be entertained by the courts (and *Bancec* would apply). *See EM*, 473 F.3d at 479; *Rafidain II*, 281 F.3d at 54; *DeLetelier*, 748 F.2d at 792, 799 *Olympic*, 134 F.Supp.2d at 530, 536 n. 5.

### vi. The Discovery Requests do Not Comply With the Federal and New York Rules of Civil Procedure

Moreover, Plaintiff has failed to comply with the New York and federal requirements for obtaining post-judgment discovery upon non-parties. As to New York, Section 5224 of the New

York Civil Practice Law and Rules provides judgment creditors with the exclusive remedy for demanding discovery by way of subpoenas upon judgment debtors and third-parties.  Where a judgment creditor seeks discovery from a non-party, an information subpoena is required to be served on that third-party and "shall contain a certification signed by the judgment creditor or his or her attorney. . . ."  *Id.*  The purpose of that requirement is "[b]y signing the certification, the creditor or attorney certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable that the individual or entity receiving the subpoena has relevant information about the debtor."  *Id.*  Failure to comply with the aforesaid requirements relegates the subpoena "null and void."  *Id.*  Plaintiff has failed to comply.

As to the federal requirements, a party may only seek post-judgment discovery by way of interrogatories and production of documents against a party to the action.  *See* Fed. R. Civ. P. 69, 33, and 34.  By attempting to serve post-judgment discovery requests upon Non-Party Sovereign Entities by and through Defendants, Plaintiff has failed to comply.

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that their motion to stay post-judgment discovery pending appeals be granted.

Dated: 7 March 2013

Respectfully Submitted,

MAGGS & MCDERMOTT, LLC

/s/ Timothy B. Mills
Timothy B. Mills (TM-8693)
910 17th Street, N.W., Suite 800
Washington, DC 20006
Telephone: (202) 457-8090
Email: TimothyBMills@aol.com
*Lead Counsel for Defendants*

/s/ Tennant D. Magee, Sr.
Tennant D. Magee, Sr. (TM–5871)
800 Old Bridge Road
Brielle, New Jersey
Telephone: (732) 223-9870
Email: tdmagee@yahoo.com
*Co-Counsel for Defendants*

LAW OFFICES OF STEPHEN ALBRIGHT

/s/ Stephen Albright
Stephen Albright (SA-4979)
4 Bay Hills Court
Huntington, New York 11743
Telephone: (631) 425-0511
Email: salbrightesq@gmail.com
*Co-Counsel for Defendants*

<u>EXHIBIT 1</u>

TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:

Amicus Brief filed by Solicitor General of the United States in *Rubin v. The Islamic Republic of
Iran*, 637 F.3d 783 (7th Cir. 2011), *cert. denied*, 133 S.Ct. 23 (2012), which was previously filed on
June 8, 2012, by Defendants in support of Plaintiff's cross-motion for protective order [79]

EXHIBIT 2

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Petition for writ of certiorari to Supreme Court of the United States filed by Republic of Argentina
to Supreme Court (U.S. No. 12-842) from the decision of the United States Court of Appeals for the
Second Circuit in _EM Ltd. V. Republic of Argentina_, 695 F.3d201 (2d Cir. 2012)**

**EXHIBIT 3**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Extract of Declaration of Omar Ghassan Jamil Al-Wiswasi filed on August 28, 2009, in support of Defendants' motion to dismiss and relied upon by Defendants in support of their opposition to Plaintiff's motion for summary judgment and in Defendants' pending appeal of the Summary Judgment decision [18-2 and 57]**

**EXHIBIT 4**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Extract of Declaration of Fakhri Kadhum filed on August 28, 2009, in support of Defendants' motion to dismiss and relied upon by Defendants in support of their opposition to Plaintiff's motion for summary judgment and in Defendants' pending appeal of the Summary Judgment decision [18-3 and 57]**

**EXHIBIT 5**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Defendant's Fed. R. Civ. P. 44.1 Notice filed on August 28, 2009,
in support of Defendants' Motion to Dismiss [19]**

**EXHIBIT 6**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Extract of Declaration of Hanan Nassef previously filed on June 8, 2012, by Defendants
in support of their opposition to Plaintiff's motion to compel and in Defendants'
cross-motion for protective order [79-3]**

**EXHIBIT 7**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Plaintiff's discovery requests propounded upon Defendants**

**EXHIBIT 8**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Plaintiff's subpoena served upon JP Morgan Chase on October 15, 2012**

EXHIBIT 9

TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:

Plaintiff's subpoena served upon Bank of New York Mellon on November 14, 2012

**EXHIBIT 10**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Extract of Declaration of John Piskora, Esquire, filed on August 15, 2012, by Plaintiff in support of Plaintiff's motion for summary judgment [53]**

**EXHIBIT 11**

**TO DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF INDUSTRY OF THE
REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY POST-JUDGMENT DISCOVERY PENDING APPEALS:**

**Extract of Local Civil Rule 56.1 Statement filed on August 15, 2012, by Plaintiff in support
of Plaintiff's motion for summary judgment [52]**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of March 2013, I electronically transmitted the

attached document and its supporting Exhibits:

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
STAY POST-JUDGMENT DISCOVERY PENDING APPEALS**

to the Clerk of the Court using the ECF System for filing and also caused a copy of the aforesaid

document and its supporting Exhibits to be overnight mailed *via* Federal Express to Magistrate Richard

Ellis.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing

to the following ECF registrant counsel for Plaintiff:

| | |
|---|---|
| John A. Piskora, Esquire (JAP-1224) | Wook Hwang, Esquire |
| Loeb & Loeb | Loeb & Loeb |
| 345 Park Avenue | 345 Park Avenue |
| New York, NY 10154 | New York, NY 10154 |
| (212) 407-4000 | (212) 407-4035 |
| Email: jpiskora@loeb.com | Email: whwang@loeb.com |

Bryan Reyhani, Esquire
Reyhani & Nemirovsky, LLP
200 Park Ave., FL 17
New York, NY 10166
(212) 897-4022
Email: bryan@rnlawfirm.com

and by email on counsel for the Third-Party Banks, JP Morgan Chase Bank N.A. and New York

Bank Mellon:

Steven B. Feigenbaum, Esquire
Levi Lubarsky & Feigenbaum LLP
1185 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 308-6100
sfeigenbaum@llf-law.com

/s/ Tennant D. Magee Sr.